**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

P.B., by and through his next friend,    )
Cassandra Berry, et al.,    )
    )
          Plaintiffs,    )
    )    Civil Case No. 2:10-cv-04049
    )    Section A
   vs.    )    Judge Jay C. Zainey
    )    Magistrate Judge Karen Wells Roby
PAUL PASTOREK, et al.,    )
    )
          Defendants.    )
    )

**ORDER OF PRELIMINARY INJUNCTION**

Plaintiffs, pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq*., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12101, *et seq*., filed a Complaint for injunctive and other relief, and moved for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

The Court, having considered the pleadings, memoranda, declarations, and exhibits filed in connection with the Plaintiffs' motion, as well as argument of counsel and evidence presented by the parties at evidentiary hearings held in connection with the motion, finds that:

1.    This Court has jurisdiction of the subject matter of this case and over all named parties;

2.    Venue lies properly with this Court;

3.    Paul Pastorek, in his official capacity as the Louisiana State Superintendent of Education, the Louisiana Department of Education ("LDE"), and the Louisiana Board of Elementary and Secondary Education ("BESE") (collectively, the "Defendants")

are responsible for ensuring that each local educational agency ("LEA") in New Orleans is monitored for implementation and compliance with the requirements of the IDEA, Section 504, and Title II; that children with disabilities be identified and evaluated; that each student with a disability be provided access to all programs provided to non-disabled students; and that children with disabilities be afforded the procedural safeguards described by the IDEA when disciplinary action is contemplated.

4.    Plaintiffs have established a likelihood of success on the merits of their IDEA, Section 504, and Title II claims by showing that:

   a.    Defendants have failed to ensure that children with disabilities in New Orleans are identified and evaluated to determine their eligibility for services and protection under the IDEA;

   b.    Due to Defendants' lack of training and monitoring of LEAs, New Orleans schools have failed to provide the disciplinary protections afforded to children with disabilities under the IDEA; and

   c.    Due to the Defendants' failures, Plaintiffs have been denied access to essential services and programs available to non-disabled children because of their disabilities.

5.    Plaintiffs have established that they will be irreparably harmed in the absence of a preliminary injunction, that the balance of hardships favors a preliminary injunction, and that the public interest favors a preliminary injunction.

**IT IS THEREFORE ORDERED**:

*New Orleans-based Compliance Officer*

1.      Within 60 days of the signing of this Order, Defendants must appoint a New Orleans-based Compliance Officer who must be charged with ensuring compliance with the terms of this order.

2.      The Compliance Officer must supervise a staff of individuals who have expertise in data analysis and tracking, IDEA administration, and the requirements and procedures of the IDEA, Section 504, and Title II.

3.      Within 90 days of the signing of this Order, the Compliance Officer must develop policies and procedures for comprehensive data tracking that will capture enrollment data from all public schools operating in New Orleans.  Within 90 days of the signing of this Order, the Compliance Officer must develop a master list of all students who are enrolled in New Orleans public schools.

4.      The Compliance Officer must ensure that each LEA reports the following data on a monthly basis:

      a.      The name of each student who is enrolled in each school;

      b.      The name of any student who has withdrawn or dis-enrolled from each school; and

      c.      Data related to disciplinary school removals (i.e. suspensions and expulsions) as described in paragraph 16 of this Order.

5.      Within 90 days of the signing of this Order, the Compliance Officer must implement a data management system that tracks student enrollment across all New Orleans LEAs and automatically alerts the Compliance Officer if a student dis-enrolls from

one LEA and does not subsequently re-enroll in another LEA within 14 days.  Upon notification that the student has failed to re-enroll, the Compliance Officer must then investigate the student's current address, and if the student still resides in New Orleans, the Compliance Officer must undertake all reasonable efforts to enroll the student in an LEA.

    a.    The data management system must also compile the name and address of each New Orleans student with a disability that has an individualized education program ("IEP") pursuant to the IDEA, the type of disability of each student, and the number of students with IEPs that dis-enroll from each school.

### Training

6.    Within 60 days of the signing of this Order, LDE must develop a plan pursuant to which all New Orleans LEA and school administrators, teachers, and special education directors must attend an in-person mandatory technical assistance training session(s) to be held at each LEA or school within 120 days of the signing of this Order ("Technical Training").  At the Technical Training, LDE must explain, among other things as LDE deems necessary and appropriate, each LEA's legal obligations towards children with disabilities under the IDEA, Section 504, Title II, and any relevant state and federal laws or regulations, including their legal obligations to enroll children with disabilities and to provide special education services to such children.

    a.    Prior to the Technical Training, LDE must develop a written training protocol sufficient to show the substance of the Technical Training, which must be provided to counsel for Plaintiffs no less than 10 business days prior to the

Technical Training.  If counsel for Plaintiffs has any objections to the
proposed written training protocol, counsel must notify LDE no later than 5
business days prior to the Technical Training.  If the parties cannot reach
agreement, counsel for Plaintiffs may object to the written training protocol by
order to show cause 3 business days prior to the Technical Training.

7.     Within 120 days of the signing of this Order, LDE must hold an additional in-person
training session for all New Orleans LEA special education directors and any other
administrator, official, or teacher deemed appropriate by LDE ("Special Education
Training").

  a. The curriculum for the Special Education Training must be developed by
LDE's Office of Special Populations, and must utilize the Office of Special
Education Programs' training materials and the "Primers" curriculum
developed by Special Education Technical Assistance for Charter Schools
Project ("SPEDTACS").[1]  LDE personnel conducting the Special Education
Training must be trained by the SPEDTACS officials to ensure that such
personnel understand the SPEDTACS curriculum and are able to effectively
administer the Special Education Training.

  b. Prior to the Special Education Training, LDE must develop a written training
protocol sufficient to show the substance of the Special Education Training,
which must be provided to counsel for Plaintiffs no less than 10 business days
prior to the Special Education Training.  If counsel for Plaintiffs has any

---

[1] *See* National Association of State Directors of Special Education, Inc., *Primers on Implementing Special Education in Charter Schools*, *available at* http://www.uscharterschools.org/cs/spedp/print/uscs_docs/spedp/home.htm.

objections to the proposed written training protocol, counsel must notify LDE
no later than 5 business days prior to the Special Education Training.  If the
parties cannot reach agreement, counsel for Plaintiffs may object to the
written training protocol by order to show cause 3 business days prior to the
Special Education Training.

c.    If an LEA special education director does not attend the Special Education
Training, LDE must hold a replacement Special Education Training
("Replacement Special Education Training") within 15 days of the initial 120
day period.  If an LEA special education director who missed the Special
Education Training does not attend the Replacement Special Education
Training, LDE must inform the Court and counsel for Plaintiffs in writing
within 7 days from the date of the Replacement Special Education Training.

8.    LDE must make available to each LEA in New Orleans technical assistance experts
who will assist New Orleans LEAs with questions, inquiries, and concerns about
compliance with state and federal special education law ("Technical Assistance
Team").  In developing the Technical Assistance Team, LDE must utilize the
technical assistance model developed by the Office of Special Education Programs
and the SPEDTACS Project.

***Access to Services and Programs Available to Non-Disabled Children***

9.    LDE must take the following measures, in addition to any other measure that LDE
deems necessary and proper, to ensure that children with disabilities are provided
equal access as that provided to children without disabilities to the facilities,
programs, and services offered by each New Orleans LEA and that no LEA denies

placement, discourages enrollment, or otherwise recommends that the LEA is not an appropriate placement due a child's disability:

a.     Within 90 days of the signing of this Order, LDE must require the highest ranking official of each LEA to sign a notice that must inform the LEA that: (i) it has a legal obligation to provide all necessary services and accommodations to students with disabilities regardless of whether it currently has such a program in place; (ii) it must accept applications from and enroll children regardless of the child's disabilities, the related services required by the child's disabilities, and the costs associated with their educational needs; and (iii) it must not inform or suggest to the parent(s) of a child with disabilities that the parent(s) should not apply to the LEA because the LEA does not provide the services necessary for the child.

b.     LDE must require the highest ranking official of each LEA to attend a mandatory technical assistance training ("Highest Ranking Official Training"), which must be held within 90 days of the signing of this Order. At the Highest Ranking Official Training, LDE must explain, among other things as LDE deems necessary and appropriate, each LEA's and the Defendants' legal obligations towards children with disabilities under the IDEA, Section 504, Title II, and any relevant state and federal laws or regulations.  If the highest ranking official of an LEA does not attend the Highest Ranking Official Training, LDE must hold a replacement technical assistance training ("Replacement Highest Ranking Official Training") within 15 days of the original 90 day period.  If the highest ranking official of an

LEA does not attend the Replacement Highest Ranking Official Training, LDE must inform the Court and counsel for Plaintiffs in writing within 7 days from the date of the Replacement Highest Ranking Official Training.

c.   Within 90 days of the signing of this Order, LDE must inform each LEA that if a parent inquires whether the LEA provides services for children with disabilities, as required by the IDEA, Section 504, and Title II, and the LEA does not provide the required services at the time of the inquiry, the LEA must inform the parent verbally and in writing as follows: "We do not currently have a program in place to accommodate your child's disability. However, you should not let that dissuade you from applying to our school. If your child decides to attend our school, we will create the necessary program of services and accommodations for your child, to ensure he or she can attend our school."

d.   Within 90 days of the signing of this Order, LDE must establish a telephone "hotline" designed to answer inquiries from New Orleans parents of children with disabilities ("the Hotline"). The Hotline must be staffed during normal business hours (Monday through Friday; 9 a.m. to 5 p.m.) with at least one person who is qualified to answer the parents' inquiries. During the open application periods, the Hotline must be staffed with at least 3 such persons during normal business hours. The Hotline must have a functioning voice mail message system designed to receive messages left during non-business hours. All messages left on the voice mail message system must promptly receive a follow-up from the Compliance Officer. The Hotline staff must

record in an electronic database, among other things deemed necessary and appropriate, the following: (i) the name and contact information of the person making the inquiry; (ii) the nature of the inquiry, comment, or concern; (iii) the date and time of the inquiry; (iv) whether any action should be taken by the Compliance Officer to resolve the inquiry or concern; (v) the date, time, and description of any follow-up action, if any; and (vi) whether the inquiry or concern has been or will be resolved.

e.      Within 90 days of the signing of this Order, LDE must send a notice, written at the eighth-grade reading level, by first-class mail to every New Orleans household with school-age children stating, among other things as deemed necessary and appropriate, the following: (i) all New Orleans school-age children have the right to apply to, enroll in, and attend New Orleans public schools without regard to their disability; (ii) New Orleans schools cannot persuade or advise parents not to apply to a school because the school lacks the necessary services and accommodations required by a child's disability; (iii) parents of children with disabilities can contact the Hotline at a number specified in the written notice if they have any questions regarding enrollment or Defendants' obligations to provide services to children with disabilities; (iv) parents of children with disabilities can also contact Plaintiffs' counsel at a number specified in the written notice if they have questions regarding enrollment or Defendants' obligations to provide services to children with disabilities.

f.    LDE must attach the written notice specified in section 9(e) to the Common Application Form.

g.    Within 60 days of the signing of this order, LDE must develop a plan to distribute the notice specified in section 9(e), which must include dissemination of the notice in New Orleans newspapers, radio stations, and billboards.  LDE must provide Plaintiffs' counsel a copy of this plan prior to any implementation.

***Centralized Admissions Process***

10.   Within 120 days after the signing of this Order, LDE must develop and maintain a centralized admissions process, and LDE must assume responsibility for the enrollment and placement of all New Orleans school-age children.

11.   LDE must require each LEA to utilize a uniform standard application and uniform application deadlines, and must be the sole recipient of applications for New Orleans LEAs.  Within 120 days of the signing of this order, LDE must submit to the Court and Plaintiffs' counsel a plan for admissions procedures that: (i) provides students with disabilities with meaningful school choice; and (ii) prohibits schools from refusing to enroll students on the basis of their disabilities.  If Plaintiffs' counsel has any objections to the admissions plan, counsel must notify LDE no later than 15 business days after the receipt of such plan.  If the parties cannot reach agreement, counsel for Plaintiffs may object to the admissions plan by order to show cause.

***Child Find Mandate***

12.   LDE must take the following measures, among others deemed necessary and appropriate, to identify and evaluate children with disabilities:

a.  Within 60 days of the signing of this Order, formulate a pamphlet, written at the eighth-grade reading level, describing the rights of children with disabilities under state and federal special education law, which must be included with the recruiting materials and applications of each New Orleans school;

b.  Within 120 days of the signing of this Order, complete a review of the policies and procedures of each LEA concerning Section 504 Individualized Accommodation Plans ("504 Plans") to determine whether an LEA is inappropriately utilizing 504 Plans as an alternative, rather than a supplement, to the requirements of the IDEA.  If LDE discovers that an LEA is utilizing 504 Plans in lieu of the requirements of the IDEA for children with disabilities, LDE must review all 504 Plans developed at that LEA, and determine whether these students should be referred for an evaluation to determine eligibility under the IDEA.

c.  Within 120 days of the signing of this Order, determine whether each LEA is properly implementing a Response to Intervention program as described by Louisiana Bulletin 1508.

d.  Within 120 days of the signing of this Order, review records of all students meeting the following criteria:

    i.  Students in grades 1 to 3 who have been retained one grade;

    ii.  Students in grades 4 to 12 who have been retained two grades;

    iii.  Students who have been suspended more than 3 times in a single school year or for more than 10 days in a single school year;

11

iv.      Students who have been recommended for expulsion; or

v.      Students who have scored "Unsatisfactory" on two or more LEAP, I-

LEAP, or GEE exams.

For all students who meet this criteria, LDE must require that the LEA

attended by the student convene the School Building Level Committee

pursuant to Louisiana Bulletin 1508 to determine if the student should be

referred for an initial evaluation to determine eligibility under the IDEA.  If

the student is referred for an initial evaluation, the evaluation by the LEA

must be conducted within 60 days of the date of parental consent.

*Discipline*

13.     Within 60 days of the date of the signing of this Order, LDE must review all New

Orleans LEA student codes of conduct and ensure that the disciplinary provisions in

the student code of conduct do not violate the procedural safeguards guaranteed to

students with disabilities by state and federal law.

14.     Within 30 days of a finding by LDE that a student code of conduct violates state or

federal law, LDE must ensure that the student code of conduct is re-written in a

manner consistent with the requirements of state and federal law.

15.     Within 60 days of the signing of this Order, LDE must provide remedial training to

any LEA found to have a code of conduct contrary to state and federal law.

16.     Within 60 days of the signing of this Order, LDE must track the rate and number of

students with disabilities who are disciplined at each LEA, regardless of the number

of students with disabilities at each LEA.  LDE must release this data at the end of

each fall and spring semester.  Data must consist of rates of in-school suspensions,

out-of-school suspensions, expulsions, transfers (both involuntary and voluntary) to alternative schools, withdrawals (both voluntary and involuntary) from the school, and school-initiated arrests.  If the discipline rate of students with disabilities exceeds that of students without any identified disabilities in a single semester, LDE must notify the LEA and counsel for Plaintiffs of the disproportionality.

17.    If LDE find that an LEA is not in compliance with the procedural safeguards regarding discipline guaranteed by state and federal laws, LDE must train the administrators at the LEA on the topics of conducting functional behavioral assessments, writing effective behavioral intervention plans, conducting appropriate Manifestation Determination Reviews, and reviewing IDEA's basic rules regarding when disciplinary actions constitute removals.  After training, LDE must monitor the LEA by reviewing random instances of disciplinary action against students with disabilities, and ensuring that such students received functional behavioral assessments, behavior intervention plans, and properly administered Manifestation Determination Reviews.

18.    Within 120 days of the signing of this order, LDE must develop a plan for reducing the rate of suspensions, expulsions and school removals in New Orleans public schools by 20 percent.  If counsel for Plaintiffs has any objections to the plan to reduce the rate of suspensions, expulsions, and school removals, counsel must notify LDE no later than 15 business days after the receipt of such plan.  If the parties cannot reach agreement, counsel for Plaintiffs may object to the plan to reduce suspensions, expulsions, and school removals by order to show cause.

**IT IS FURTHER ORDERED** that Defendants, within 5 days of the signing of this Order, must serve a copy of this Order by facsimile transmission, personal or overnight delivery, or U.S. Mail on all LEAs and schools in New Orleans.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.


SO ORDERED, this _____ day of _____, 2011.


_____
Honorable Judge Jay C. Zainey
United States District Court