**Office of the Independent Monitors**
**P.B., et al., v. John White, et al.**
**(Civil Case No. 2:10-cv-04049)**
**Status Report to the Court**
**February 23, 2018**

### A. INTRODUCTION

Pursuant to Section V(9) on page 16 of the Consent Judgment (CJ) filed with the Court on March 25, 2015, the Independent Monitors shall file with the Court and provide the Parties with reports describing the steps taken by the State Defendants and the Defendant-Intervenor to implement the Agreement and evaluate the extent to which the State Defendants and the Defendant-Intervenor have complied with each substantive provision of the Agreement. Pursuant to Section V(9)(a), the Monitor shall issue a status report every 120 days after the first year of implementation of the Agreement. The reports shall be provided to the Parties in draft form for comment at least 14 days prior to their issuance. The Monitor shall consider the Parties' responses and make appropriate changes, if any, before issuing the report. The IMs filed the draft status report with all Parties on January 10, 2018. The IMs then reviewed the responses submitted by the Plaintiffs' counsel on January 26, 2018 as well as the responses received from OPSB counsel on February 2, 2018 and LDOE counsel on February 5, 2018 in order to make final revisions to this status report. In addition, the CJ requires that the status reports are written with due regard for the privacy interests of the students. Pursuant to Section V(9)(b) of the CJ, the Independent Monitors shall evaluate the state of compliance for each relevant provision of the Agreement using the following standards: (1) Substantial Compliance and (2) Noncompliance. In order to assess compliance, the Monitor shall review a sufficient number of pertinent documents to accurately assess compliance and interview any necessary staff or personnel. The Monitor shall be responsible for independently verifying representations from the State Defendants or Defendant-Intervenor regarding progress toward

1

compliance, and examining supporting documentation. Each Monitor report shall describe the steps taken by the Monitor to assess compliance, including documents reviewed and individuals interviewed, and the factual basis for each of the Monitor's findings. Pursuant to Section V(10) of the CJ, reports issued by the Monitor shall not be admissible against the State Defendants and the Defendant-Intervenor in any proceeding other than a proceeding related to the enforcement of this Agreement initiated and handled exclusively by the State Defendants, the Defendant- Intervenor, or the Plaintiff's counsel. The State Defendants shall be released from the terms of the CJ when they have 1) achieved Substantial Compliance with each provision of the Agreement for which they are assigned responsibility; 2) maintained Substantial Compliance for a period of two years; and 3) subject to Court approval (p. 18 of the CJ).

The IM bi-annual status report addresses several activities completed by the State Defendants or Defendant-Intervenor during the 2017-2018 school year as required by the CJ. Specifically, the IMs provide a review and update regarding decisions of "Substantial Compliance" or "Noncompliance" as related the development and dissemination of model documents consistent with the requirements of the CJ for the 2015-2016 school year through the 2017-2018 school year as well as the provision of required professional development and technical assistance from the State Defendants, Defendant-Intervenor and/or approved consultants. Finally, the IMs provide recommendations based on review of the documentation provided by the State Defendants and Defendant-Intervenor and feedback from all Parties. The sequence of information in this IM status report follows the general structure of the CJ. Language from each substantive provision of the Agreement or Addendum A (i.e., monitoring protocols) of the CJ is incorporated into the IM status report when appropriate.

## B. DEVELOPMENT AND DISSEMINATION OF MODEL DOCUMENTS

The LDOE and/or OPSB developed several model documents designed to meet the specific requirements of the CJ (e.g., *Child Find Written Guidance* model template, *Special Education Program Description* model template, *Procedural Safeguards Checklist – Disciplinary Removal of Students with Disabilities* model template, model *Discipline Policy for Students with Disabilities*, *Undocumented Suspension Guidance* model template, *Parent FAQs: Special Education in Charter Schools* model template, *Enrollment Discrimination Policy Guidance* model template, *Disability Discrimination Complaint Procedures* model template). As previously stated in the IM status report to the Court dated June 3, 2016, the parties have approved the content contained within each of these documents. In relation, these model documents were presented to the Court in Appendix A attached to the June 3, 2016 IM Status Report. In addition, related documents (e.g., revised *Child Find Written Guidance Model* document for RSD and OPSB LEAs for the 2016-2017 school year, Office of Civil Rights *Complaint and Investigation* document for the 2016-2017 school year, school links to *Special Education Program Descriptions* documents for LDOE and OPSB LEAs) were presented to the Court in Appendix A attached to the IM Status Report dated November 7, 2016.

The CJ requires that charter LEAs provide evidence that they have reviewed or, when relevant, disseminated this information each school year. The LDOE submitted updated model documents and related website links (e.g., 2017-2018 SY *Special Education Program Description* model document) or attestations from school leaders or administrators regarding the review of model documents (e.g., *Child Find Written Guidance* model template, *Procedural Safeguards Checklist – Disciplinary Removal of Students with Disabilities* model template, model *Discipline Policy for Students with Disabilities*, *Undocumented Suspension Guidance* model template, *Parent FAQs: Special Education in Charter Schools* model template,

*Enrollment Discrimination Policy Guidance* model template, *Disability Discrimination Complaint Procedures* model template) and related documents (e.g., LEA Student Codes of Conduct, LEA Parent Handbooks, LEA Student Handbooks) for fifty-seven charter schools to the IMs for review on July 5, 2017. It is important to note that three schools closed (e.g., Algiers Technology Academy 9-12, Gentilly Terrace PK-8, Milestone Academy K-8) and nine schools transitioned to the OPSB jurisdiction for the 2017-2018 school year (e.g., Choice Foundation: Esperanza PK-8, Lafayette Academy PK-8; Collegiate Academies: Sci-Academy 9-12; First Line Schools: Arthur Ashe K-8, Phillis Wheatley PK-8, Samuel J. Green K-8, Langston Hughes PK-8; Inspire NOLA: McDonogh 42; Non-network Charter: Edgar P Harney K-8). The IMs reviewed all information and provided direct feedback to LDOE legal counsel on August 8, 2017. As a result of the recommendations made by the IMs, LDOE legal counsel provided additional school-based documents (e.g., outstanding attestations from school leaders or administrators, updated information regarding school web-site links) for review on August 18, 2017. In addition, LDOE legal counsel submitted a Power Point presentation entitled "Considerations for Behavior: Implementing Supports for Students with Disabilities" designed to address the discipline professional development requirements outlined in (C)(3) of the CJ for review on September 8, 2017. The IMs provided feedback to this presentation and LDOE legal counsel submitted the final presentation to the IMs on September 19, 2017. This information was presented by LSU School of Allied Health Professions Teams Intervening Early to Reach All Students (TIERS) personnel to New Orleans charter school leaders on September 27-28, 2017 and LDOE legal counsel submitted attendance rosters to the IMs on October 4, 2017. In relation, a make-up session was held for three LEAs on October 26, 2017 by the TIERS personnel and LDOE legal counsel submitted attendance rosters to the IMs on October 30, 2017.

OPSB legal counsel submitted required documents (e.g., attestations for the review of model documents by school leaders or administrators, school website links, PBIS model documents) for thirty-two charter schools under the jurisdiction of OPSB to the IMs for review on July 12, 2017. The IMs reviewed this information and provided feedback to OPSB legal counsel on August 8, 2017. Based on feedback from the IMs, LDOE legal counsel provided additional documentation for review on August 9, 2017. The IMs provided feedback regarding this documentation on August 30, 2017, and OPSB legal counsel submitted final documentation for review on September 5, 2017. As mentioned previously in this status report, several charter schools transitioned to the jurisdiction of OPSB for the 2017-2018 school year including two Choice Foundation schools (e.g., Esperanza PK-8, Lafayette Academy PK-8), one Collegiate Academy school (Sci-Academy 9-12), four First Line schools (e.g., Arthur Ashe K-8, Phillis Wheatley PK-8, Samuel J. Green K-8, Langston Hughes PK-8), one Inspire NOLA school (e.g., McDonogh 42), and one non-network school (e.g., Edgar P, Harney K-8). OPSB legal counsel also submitted the Power Point presentation to address professional development requirements outlined in (C)(4) of the CJ to the IMs on September 5, 2017. OPSB legal counsel provided the workshop to OPSB charter school leaders on September 12, 2017 and attendance rosters were submitted to the IMs on September 27-28, 2017.The following sections provide a status review or update for the State Defendants (LDOE) and Defendant-Intervenor (OPSB).

1. <u>Status Review or Update for the State Defendants</u>

   a. *Child Find Provisions (pp. 6-8 of the CJ)*

As reported on pages 4-6 of the IM status report submitted to the Court on June 3, 2016, the LDOE was judged to be in **Substantial Compliance** with Section IV (A)(1) (a-c) of the CJ for the 2015-2016 school year based on a review of the template entitled, *PB v White - Child*

*Find Written Guidance* and verification of the receipt of the document by the LEAs. In relation, the LDOE was judged to be in **Substantial Compliance** with Section IV (A) (1) (a-c) of the CJ for the 2016-2017 school year as reported on page 8 of the IM status report submitted to the Court on November 7, 2016 based on a review of the revised *PB v White – Child Find Written Guidance* template and receipt of signed attestations from each LEA school principal or school leader. Based on the receipt of signed attestations from each LEA school administrator or school leader, the LDOE is judged to be in **Substantial Compliance** with Section IV (A) (1) (a-c) of the CJ for the 2017-2018 school year.

As reported on page 10 of the IM status report submitted to the Court on June 3, 2016, the LDOE was judged to be in **Substantial Compliance** with Section IV(A)(2) for the 2015-2016 school year as all LEAs provided descriptions, through the *Special Education Program Description* template, of the school's staff and/or outside contractors providing pupil appraisal services. The LDOE was also judged to be in Substantial Compliance with Section IV (A) (2) of the CJ for the 2016-2017 as reported on pages 11-12 of the IM status report submitted to the Court on November 7, 2016. Based on completion of the 2017-2018 version of the S*pecial Education Program Description* template by LEAs under the jurisdiction of RSD and placement of the completed template on each LEA website, LDOE website, and link established from the enrollnola website, the LDOE is judged to be in **Substantial Compliance** with Section IV (A) (2) of the CJ for the 2017-2018 school year.

As reported on page 20 the IM status report submitted to the Court on June 3, 2016, the LDOE was judged to be in **Substantial Compliance** with Section IV(A)(4)(a-e) for the 2015-2016 school year based upon attestation of receipt of the 2015-2016 version of *PB v White - Child Find Written Guidance* document. In relation, the LDOE was also judged to be in **Substantial Compliance** with Section IV(A)(4)(a-e) for the 2016-2017 school year as reported

on page 30 of the IM status report submitted to the Court on November 7, 2016. Based on the receipt of signed attestations from each LEA revealing that each school leader or school administrator reviewed the *PB v White – Child Find Written Guidance* document, the LDOE is judged to be in **Substantial Compliance** with Section IV (A)(4)(a-e) for the 2017-2018 school year.

### b. *Related Services Provisions (pp. 8-9 of the CJ)*

The LDOE was judged to be in **Substantial Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2015-2016 school year as reported on page 26 of the IM status report dated June 3, 2016. The LDOE was also judged to be in **Substantial Compliance** with this section of the CJ for the 2016-2017 school year as reported on page 33 of the IM status report submitted to the Court on November 7, 2016. Based on the submission of the updated *Special Education Program Description* templates to the IMs during the summer 2017 term and placement of the templates on the required websites, the LDOE is judged to be in **Substantial Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2017-2018 school year.

### c. *Discipline Provisions (pp. 9-11 of the CJ)*

The LDOE was judged to be in **Noncompliance** with Section IV(C)(1)(a)(i-ii) of the CJ for the 2015-2016 school year as reported on page 41 of the IM status report dated June 3, 2016. In contrast, the LDOE was judged to be in **Substantial Compliance** with Section IV(C)(1)(a)(i-ii) of the CJ for the 2016-2017 school year as reported on page 49 of the IM status report submitted to the Court on November 7, 2016. Based on the submission of the required documentation related to discipline regulations and safeguards for students with disabilities (e.g., signed attestations regarding no change to approved discipline policies for the 2017-2018 school year, updated Student Handbooks, policies related to school-wide and tiered positive behavior support provisions) the LDOE is judged to be in **Substantial Compliance** with Section

7

IV(C)(1)(a)(i-ii) for the 2017-2018 school year.

As reported on page 47 of the IM status report submitted to the Court on June 3, 2016, the LDOE was judged to be in **Substantial Compliance** with Technical Assistance provisions of Section IV (C)(3)(a-b) for the CJ for the 2015-16 year based on a review of related technical assistance material including the *PB v White – Undocumented Suspension Guidance* template, the *Parent FAQs: Special Education in Charter Schools* template, and verification documents (e.g., signed attestations of dissemination of these documents) provided by each LEA. However, the LDOE was judged to be in **Noncompliance** regarding the annual professional development provisions of Section IV(C)(3) for the CJ for the 2015-16 year, given a number of concerns expressed by the Plaintiff's counsel in relation to the presentation "Discipline of Students with Disabilities". In contrast, the LDOE was judged to be in **Substantial Compliance** with the technical assistance and annual professional development activities required in Section IV(C)(3)(a-b) of the CJ for the 2016-2017 school year. Based on the evidence submitted to the IMs verifying signed attestations from all school principals or school leaders for the *PB v White – Undocumented Suspension Guidance* and *Parent FAQs: Special Education in Charter Schools* and verification that representatives from each LEA attended a half-day professional development workshop entitled "Discipline of Students with Disabilities" on September 27-28, 2017 by the LSU School of Allied Health Professions Teams Intervening Early to Reach All Students (TIERS) personnel, the LDOE is judged to be in **Substantial Compliance** with the technical assistance and annual professional development activities required in Section IV(C)(3)(a-b) of the CJ for the 2017-2018 school year.

d.   *Enrollment Provisions (pp. 11-15 of the CJ)*

As reported in the IM Status Report dated June 3, 2016, the LDOE policy document entitled, *Enrollment Discrimination Policy Guidance*, has been approved by all parties and fully

meets the required guidelines as outlined in Section IV(D)(1)(a-b) of the CJ. However, as previously reported on page 65 of the June 3, 2016 IM status report, the LDOE was judged to be in **Noncompliance** with this requirement of the CJ for the 2015-2016 school year. Specifically, the LDOE failed to comply with all provisions of Section IV(D)(1) of the CJ which requires the State Defendants to disseminate the *Enrollment Discrimination Policy Guidance* document to each principal of NOLA Type 2 and Type 5 charter schools by March 1 annually and request written receipt (i.e., signed attestations) of this guidance (page 12 of CJ). Subsequently, based on submission of the signed attestations (e.g., *Attestation of Review of Enrollment Discrimination Policy Guidance*), the LDOE was judged to be in **Substantial Compliance** with the completion of this implementation activity as required under Section IV (D)(1)(a-b) of the CJ for the 2016- 2017 school year as reported on page 73 of the IM status report submitted to the Court on November 7, 2016. The LDOE is also judged to be in **Substantial Compliance** with Section IV(D)(1)(a-b) of the CJ for the 2017-2018 school year based on the submission of signed attestations indicating that each school leader or school administrator reviewed the *Enrollment Discrimination Policy Guidance* document. In relation, the LDOE submitted this document to the IMs for review again on December 7, 2017 as required by the CJ. The IMs reviewed this document and verified that the content has remained the same as previously approved by all parties.

The LDOE was judged to be in **Substantial Compliance** with the requirements of Section IV(D)(3) for the 2015-2016 school year for submitting the revised *PB v White – Special Education Program Description* template for review and ensuring that all charter LEAs submitted completed program descriptions as reported on page 71 of the IM status report submitted to the Court on June 3, 2016. However, the LDOE was found in **Noncompliance** for the 2015-2016 school year for failure to comply with the dissemination requirements outlined in

Section IV(D)(3) of the CJ. However, the LDOE was judged to be in **Substantial Compliance** with this provision of the CJ for the 2016-2017 school year as previously reported on pages 78-79 of the IM status report submitted to the Court on November 7, 2016. Based on the submission or required documentation and LEA adherence to the dissemination requirements outlined in this section of the CJ, the LDOE is judged to be in **Substantial Compliance** with the requirements of Section IV(D)(3) of the CJ for the 2016-2017 school year.

As reported on pages 77-78 of the IM Status Report dated June 3, 2016, all charter schools have adopted the approved *[LEA] Disability Discrimination Complaint Procedures* template and summary description as required in Section IV(D)(5) and of the CJ. As such, the LDOE was judged to be in **Substantial Compliance** with LEA adoption of the complaint procedures and dissemination requirements outlined in Section IV(D)(5)(a-b) of the CJ for the 2015-2016 school year reported on pages 84-85 of the IM status report dated November 7, 2016. In addition, the LDOE was judged to be in **Substantial Compliance** with all requirements of Section IV(D)(5)(a-b) for the 2016-2017 school year as reported on pages 84-85 of the IM status report submitted to the Court on November 7, 2016. In relation, LDOE legal counsel submitted signed attestations to the IMs on February 1, 2017 and July 7, 2017 certifying that the LDOE has received no allegations of enrollment discrimination arising under Section 504 of the Rehabilitation Act of Title II of the Americans with Disabilities Act. Additionally, on February 22, 2017; June 13, 2017; and August 8, 2017; LDOE legal counsel submitted signed attestations of the review of the *Enrollment Discrimination Policy Guidance* document from charter school leaders or school administrators for the 2017-2018 school year. As such, the LDOE is judged to be in **Substantial Compliance** with Section IV(D)(5)(a-b) for the 2017-2018 school year.

**Summary of the Status of Compliance Determinations for the State Defendants**

The LDOE was judged to be in **Substantial Compliance** with ten of fourteen (71%) substantive provisions of the CJ regarding the development, adoption, and dissemination of model documents and required professional development for the 2015-2016 school year. In relation, the LDOE was judged to be in **Substantial Compliance** with ten of twelve (83%) substantive provisions of the CJ regarding the implementation of targeted monitoring activities for the 2015-2016 school year. The LDOE was judged to be in **Substantial Compliance** with twenty-six of twenty-six (100%) of the substantive provisions in the CJ for which they have assigned responsibility for the 2016-2017 school year. As such, the 2016-2017 school year represented the <u>initial</u> year for attaining **Substantial Compliance** for each provision for which the LDOE has responsibility as defined in Section VIII(3) on page 18 of the CJ.  Finally, LDOE legal counsel submitted model documents for adoption and/or dissemination during the 2017-2018 school year to the IMs for review on February 16, 2017; June 13, 2017; and December 7, 2017; and indicated that the content of each document has not changed from the 2016-2017 school year. A review of the model documents by the IMs verified that the content remained the same for the 2017-2018 school year. However, required revisions were made by each LEA to *Special Education Program Description* document for the 2017-2018 school year and placed on each school's respective website (see Appendix A for updated website links) as well as other required websites (e.g., LDOE website, link established from the enrollnola website). As such, the LDOE was judged to be in **Substantial Compliance** with fourteen of fourteen (100%) of the substantive provisions that pertain to the development, adoption, and dissemination of model documents and provision of professional development consistent with the requirements of the CJ for the 2017- 2018 school year. A review of compliance determinations by the IMs for the 2015-2016 through the 2017-2018 school years is presented in the *Summary of Compliance Status*

document in Appendix A. A review of compliance determinations with each of the four targeted monitoring provisions of the CJ for LEAs selected for initial targeted monitoring during the fall 2017 school term of the 2017-2018 school year will be provided in the next IM status report following timelines outlined in Section V(9) on page 16 of the CJ. In relation, a review of compliance determinations with the targeted monitoring provisions of the CJ for LEAs selected for follow-up, targeted monitoring during the spring 2018 school term of the 2017-2018 school year will be provided in IM status reports following the timelines outlined in the CJ. At this time, the LDOE has achieved <u>initial</u> **Substantial Compliance** with each provision of the Agreement for which they have assigned responsibility. The LDOE is now required to <u>maintain</u> Substantial Compliance across each provision for which they have assigned responsibility for two consecutive years which represents the 2017-2018 and 2018-2019 school years at a minimum. Once the LDOE achieves the two years of maintenance, release from the CJ is then subject to Court approval as outlined in Section VIII(3) on page 18 of the CJ.

2. <u>Status Review or Update for the Defendant-Intervenor</u>

a. *Child Find Provisions (pp. 6-8 of the CJ)*

The OPSB initially adopted the *PB v White – Child Find Written Guidance* document for the 2016-2017 school year. As such, the IMs did not provide a judgment of compliance for the 2015-2016 school year in previous IM status reports. Based on a review of the revised *PB v White - Child Find Written Guidance* document and receipt of signed attestations from each LEA school principal or school leader, the OPSB was judged to be in **Substantial Compliance** with Section IV (A) (1) (a-c) of the CJ for the 2016-2017 school year as reported on page 9 of the IM status reported submitted to the Court on November 7, 2016. In relation, the OPSB is judged to be in **Substantial Compliance** with this section of the CJ for the 2017-2018 school year based on receipt of signed attestations from each charter school principal or school leader.

OPSB updated the *Special Education Program Description* document for the 2016-2017 school year during the summer 2016 school term and the IMs verified on December 13, 2016 that all LEAs under the jurisdiction of OPSB established a link to this document.  As such, OPSB was judged to be in **Substantial Compliance** with IV(A)(2) of the CJ for the 2016-2017 school year. In relation, the OPSB and charter school administrators updated the *Special Education Program Description* documents for the 2017-2018 school year during the summer 2017 school term. The IMs reviewed website links and provided feedback to OPSB legal counsel on August 9, 2017 and August 31, 2017. The IMs then verified that all charter schools under OPSB jurisdiction had established a link to either the OPSB *Special Education Program Description* document or their LEA *Special Education Program Description* document on September 5, 2017. As such, the OPSB is judged to be in **Substantial Compliance** with this section of the CJ for the 2017-2018 school year.

Based on dissemination of the 2016-2017 school year version of the *PB v White Child Find Written Guidance* document and submission of signed attestations from LEAs, OPSB was judged to be in **Substantial Compliance** with Section IV (A) (4) (a-e) of the CJ for the 2016-2017 school year as reported on page 30 of the IM status report submitted to the Court on November 7, 2016. In relation, the OPSB is judged to be in **Substantial Compliance** with this section of the CJ for the 2017-2018 school year based on submission of required documentation (e.g., signed attestations from each school leader or school principal) to the IMs during the fall 2017 school term.

      b.   *Related Services Provisions (pp. 8-9 of the CJ)*

The OPSB was judged by the IMs to be in **Substantial Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2015-2016 school year as reported on pages 26-27 of the IM status report dated June 3, 2016. In relation, the OPSB was judged to be in **Substantial**

**Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2016-2017 school year as reported on page 33 of the IM status report dated November 7, 2016. Based on completion of the required sections of the *Special Education Program Description* template and placement of this information on each charter school website, the OPSB is judged to be in **Substantial Compliance** for the 2017-2018 school year.

> c. *Discipline Provisions (pp. 9-11 of the CJ)*

As reported on page 43 of the IM status report submitted to the Court on June 3, 2016, compliance for Section IV (C) (2)(a)(i-ii) of the CJ could not be evaluated until each charter LEA provided written descriptions of the IDEA's disciplinary procedural protections and procedural safeguards for students with disabilities, and their plan for supporting school behavior and discipline in compliance with the requirements of La. Rev. Stat. § 17:251- 252 (p. 10 of CJ). Therefore, OPSB was judged to be in **Noncompliance** with Section IV (C) (2) for the 2015-2016 school year. Based on adoption of the 2016-2017 school year version of the LDOE *Discipline Policy & Procedures of Students with Disabilities* document and receipt of required documentation (e.g., receipt of signed attestations from all charter school principals under OPSB's jurisdiction, submission of the Student Assistant Team Handbook), the OPSB was judged to be in **Substantial Compliance** with Section IV(C)(2)(a)(i-ii) for the 2016- 2017 school year as reported on page 51 of the IM status report submitted to the Court on November 7, 2016. In relation, the OPSB is judged to be in **Substantial Compliance** with this section of the CJ for the 2017-2018 school year based on continued adoption of the LDOE *Discipline Policy & Procedures of Students with Disabilities* document and receipt of required documentation (e.g., receipt of signed attestations from all charter school principals under OPSB's jurisdiction).

As reported on page 50 of the IM status report submitted to the Court on June 3, 2016, OPSB was judged to be in **Noncompliance** with the technical assistance provisions of Section IV (C) (4)(a-b) for the CJ for the 2015-2016 school year based on a review of submitted documentation. In contrast, OPSB was judged to be in **Substantial Compliance** with the professional development provisions of Section IV (C) (4)(a-b) for the CJ for the 2015-2016 year based on a review of the workshop conducted on "Discipline of Students with Disabilities" and verification that representatives from all of the OPSB LEAs attended the training. Based on receipt of signed attestations regarding the dissemination of the *Parent FAQs: Special Education in Charter Schools* document and review of the *PB v White – Undocumented Suspension Guidance* document and documentation from OPSB counsel verifying that representatives from all of the OPSB LEAs attended the required professional development sessions, the OPSB was judged to be in **Substantial Compliance** with the technical assistance and professional development activities required in Section IV(C)(4)(a-b) of the CJ  for the 2016-2017 school year as reported on page 57 of the IM status report submitted to the Court on November 7, 2016. In relation, the OPSB is judged to be in **Substantial Compliance** with the technical assistance and professional development activities required in this section of the CJ for the 2017-2018 school year based on provision of the required discipline training and submission of required documents (e.g., attendance rosters for discipline training, receipt of signed attestations regarding the dissemination of the *Parent FAQs: Special Education in Charter Schools* document and review of the *PB v White – Undocumented Suspension Guidance* document).

    d. *Enrollment Provisions (pp. 11-15 of the CJ)*

As reported on page 68 of the IM status report dated June 3, 2016, OPSB formally adopted the LDOE *Enrollment Discrimination Policy Guidance* document. However, as noted in

the June 3, 2016, IM status report, the OPSB was judged to be in **Noncompliance** with this
requirement of the CJ for the 2015-2016 school year for failing to disseminate the document to
each charter school administrator under its jurisdiction by March 1 annually and obtaining signed
attestations from each school principal or leader. Based on receipt of signed attestations from all
of OPSB school administrators verifying review of the 2016-2017 school year version of the
*Enrollment Discrimination Policy Guidance* document, the OPSB was judged to be in
**Substantial Compliance** with the provisions required under Section IV(D)(2)(a-b) for the 2016-
2017 school year as reported on page 76 of the IM status report submitted to the Court on
November 7, 2016. The OPSB is also judged to be in **Substantial Compliance** with this section
of the CJ for the 2017-2018 school year based on receipt of require documentation (e.g., signed
attestations from each school administrator verifying review of the *Enrollment Discrimination
Policy Guidance* document for the 2017-2018 school year).

As reported on pages 74-75 of the IM status report dated June 3, 2016, the OPSB adopted
the LDOE *Special Education Program Description* template and submitted a completed program
description template for OPSB for the 2015-2016 school year. As such, OPSB was found to be in
**Substantial Compliance** with the requirements outlined in Section IV (D) (4) of the CJ for
the 2015-2016 school year. However, as a result of OPSB's failure to comply with the
dissemination requirements of this section of the CJ, the OPSB was judged to be in
**Noncompliance** for the 2015-2016 school year. The OPSB was judged to be in **Substantial
Compliance** with this provision of the CJ for the 2016-2017 school year as reported on page 81
of the IM status report dated November 7, 2016 after the IMs verified that the OPSB *Special
Education Program Description* template included all required components and appropriate
documentation and descriptions of service provisions for students with disabilities as required in

Section IV(D)(4) of the CJ. Regarding the dissemination requirements outlined in this section of the CJ, the IMs verified on December 13, 2016 that all OPSB schools had successfully established the required link to the 2016-2017 school year version of the OPSB *Special Education Program Description*. As such, OPSB was judged to be in **Substantial Compliance** for the 2016-2017 school year as OPSB counsel provided evidence of compliance with this provision prior to the December 15, 2016 deadline. In relation, the OPSB is judged to be in **Substantial Compliance** with this section of the CJ for the 2017-2018 school year based on a review of the revised *Special Education Program Description* templates and verification that each charter school under OPSB jurisdiction established the required link to the revised documents.

As reported on page 80 of the IM Status Report dated June 3, 2016, the OPSB was judged to be in **Noncompliance** with fulfilling the required implementation activities as outlined in Section IV(D)(6) of the CJ for the 2015-2016 school term for failing to provide written evidence the OPSB had adopted an approved complaint protocol, (b) provide a plan for dissemination or (c) verify the adopted complaint procedures had been disseminated to parents of students with disabilities. After verifying required complaint policies and procedures (e.g., adoption of the OPSB *Disability Discrimination Complaint Procedures* policy document), as well as, complaint dissemination requirements (e.g., establishment of the required link to the document), the OPSB was judged to be in **Substantial Compliance** with the requirements outlined in Section IV(D)(6) of the CJ for the 2016-2017 school year as reported on pages 88-89 of the IM status report submitted to the Court on November 7, 2016. Based on submission of required documents and verification of website links, the OPSB is judged to be in **Substantial Compliance** with this section of the CJ for the 2017-2018 school year.

**<u>Summary of the Status of Compliance Determinations for the Defendant-Intervenor</u>**

The OPSB was judged to be in **Substantial Compliance** with four of fourteen (29%) substantive provisions of the CJ regarding the development, adoption, and dissemination of model documents and required professional development for the 2015-2016 school year. In relation, the OPSB was judged to be in **Substantial Compliance** with fourteen of fourteen (100%) of the substantive provisions in the CJ for which they have assigned responsibility for the 2016-2017 school year. As such, the 2016-2017 school year represented the <u>initial</u> year for attaining Substantial Compliance for each provision for which the OPSB has responsibility as defined in Section VIII(3) on page 18 of the CJ. Finally, the OPSB was judged to be in **Substantial Compliance** with ten of ten (100%) of the substantive provisions in the CJ that pertain to the development and dissemination of model documents for the 2017-2018 school year. A review of compliance determinations by the IMs for the 2015-2016 through the 2017-2018 school years is presented in the *Summary of Compliance Status* document in Appendix A. At this time, the OPSB has achieved initial **Substantial Compliance** with each provision of the Agreement for which they have assigned responsibility. The OPSB is now required to <u>maintain</u> Substantial Compliance across each provision for which they have assigned responsibility for two consecutive years which represents the 2017-2018 and 2018-2019 school years at a minimum. Once the OPSB achieves the two years of maintenance, release from the CJ is then subject to Court approval as outlined in Section VIII(3) on page 18 of the CJ.

## C. RECOMMENDATIONS

The following recommendations pertain to the development, adoption, and dissemination of model documents and required professional development outlined in the Consent Judgment:

1. The LDOE and OPSB shall submit revisions to any of the approved documents (e.g., *Child Find Written Guidance* model template, *Special Education Program Description* model template, *Procedural Safeguards Checklist – Disciplinary Removal of Students with Disabilities* model template, model *Discipline Policy for Students with Disabilities*, *Undocumented Suspension Guidance* model template, *Parent FAQs: Special Education in Charter Schools* model template, *Enrollment Discrimination Policy Guidance* model template, *Disability Discrimination Complaint Procedures* model template) to the IMs for review each school year by the specific timelines established in each substantive section of the CJ. The IMs will continue to verify that the content of these documents is consistent with the requirements of the CJ.

2. The LDOE and OPSB shall continue to disseminate the required documents to LEAs each school year and require administrators (e.g., school leaders, school principals) to submit the required documentation (e.g., signed attestations for the review of model documents, annual updates to all sections of the *Special Education Program Description* model template, website links to verify placement of model documents on LEA websites, updates to model positive behavior support and discipline policies including Codes of Conduct and Student Handbooks) by August 1st each school year for the duration of the CJ. The IMs will continue to verify that school principals or school leaders have submitted signed attestations indicating that they will adhere to the guidelines established in the CJ and these documents or submitted any revisions to model documents for review prior to final adoption and/or placement on school-based websites.

3. The LDOE and OPSB shall continue to provide technical assistance and annual professional development activities required in Section IV(C)(3)(a-b) and Section IV(C)(4)(a-b) of the CJ. The LDOE and OPSB shall continue to submit evidence of

professional development and technical assistance (e.g., training materials, attendance rosters) to the IMs by October 31st each school year. The IMs will continue to verify that the provision of technical assistance and annual professional development is consistent with the requirements of the CJ.

4. The LDOE shall continue to adhere to the requirements in Section IV(D)(5)(b) addressing formal disability discrimination complaints and provide updates to the IMs regarding the filing of any formal complaints each school year by January 15th (discrimination complaints filed from August 1st through December 31st) and July 15th (discrimination complaints filed from January 1st through June 30th). The IMs will continue to monitor formal disability discrimination complaints filed with the LDOE each school year to verify compliance with this section of the CJ and report these findings in required status reports.

Given the ongoing concerns of systemic noncompliance identified in LEAs selected for initial and/or follow-up onsite targeted monitoring over the past three school years, the following recommendations are provided in relation to the completion of monitoring requirements and corrective actions outlined in the Consent Judgment which are also consistent with recommendations previously provided by the IMs in the status report dated February 22, 2018:

5. The IMs continue to recommend that personnel (e.g., charter management organization directors, school-based administrators, special education directors, special education teachers and related services personnel, contracted service providers, SBLC members) in **all** NOLA charter schools and OPSB LEAs receive professional development and technical assistance from approved personnel (e.g., LDOE monitoring personnel, LDOE legal counsel, OPSB legal counsel, approved

consultants) to address the following information and activities: requirements for on-site targeted monitoring visit activities (i.e. staff interviews, student file reviews, scoring of protocols); determination of systemic and student-specific findings of noncompliance; common observations of noncompliance and concerns identified from targeted monitoring visits occurring during the past three years; and corrective actions required to address areas of noncompliance in any of the four areas of the Consent Judgment. In relation, the IMs continue to recommend that the training materials be placed on the LDOE website and each school website for future access by school personnel.

6. The IMs continue to recommend that **<u>all</u>** NOLA charter schools and OPSB LEAs receive professional development and technical assistance in the area of Child Find to address important information related to Multi-Tiered Systems of Support (MTSS), Response to Intervention (RTI), Section 504 requirements, and IDEA requirements. In relation, the IMs continue to recommend that the training materials be placed on the LDOE website and each school website for future access by school personnel.

7. The IMs continue to recommend that the written Child Find, Pupil Appraisal, Response to Intervention (RTI) Section 504 policies of any NOLA charter school or OPSB LEA selected for initial and/or follow-up, onsite targeted monitoring be reviewed by the LDOE monitoring personnel for the duration of the Consent Judgment to ensure compliance with IDEA. The IMs also recommend that the outcomes of the review of these materials be addressed in LDOE monitoring reports for these schools.

8. The IMs continue to recommend that any CAP or ICAP in the area of Child Find include a provision that the LEA's School Building Level Committee (SBLC) include representation from the Pupil Appraisal Team as defined in Section §107 of Bulletin

1508. This provision should be included for any CAP or ICAP developed on or after February 22, 2018.

9.  The IMs continue to recommend that the LDOE provide information about other corrective actions required for charter schools that have been selected for initial or follow-up targeted monitoring under the Consent Judgment, when the information is necessary to determine a charter school's availability of resources to comply with the requirements imposed upon the school as a result of any corrective action imposed under the Consent Judgment.

10. The IMs continue to recommend that all LEAs conduct internal monitoring activities using required LDOE forms, Consent Judgment protocols and any other approved forms (e.g., LDOE rubrics currently being used to assess outcomes from CAP and/or ICAP activities) prior to selection for targeted monitoring in order to assess the school's level of compliance and to identify any areas where technical assistance may be needed from the LDOE, OPSB and/or other approved technical assistance provider(s).

11. The IMs continue to recommend that Related Services providers for LEAs that have been identified as needing corrective action (both CAPs and ICAPs) in the areas of Related Services and Enrollment Stability complete specified LDOE IEP training modules (e.g., Module 2 on Data-Driven Present Levels of Performance and Module 3 on Measurable Goals). In relation, the IMs continue to recommend that the LDOE incorporate the use of the Consent Judgment Related Services protocol as part of the reviews scheduled in the CAPs or ICAPs in order to assess the fidelity of IEP development. The IMs continue to recommend that the LDOE and OPSB counsel continue to take reasonable steps to address patterns of noncompliance including professional development for school personnel that addresses any identified areas of concern, corrective feedback and

technical assistance offerings throughout the year to specific LEAs based on formative review of their practices and submitted documentation.

12. The IMs continue to recommend that the LDOE shall also review CAPs and ICAPs in the areas of Child Find, Related Services, Discipline, and Enrollment Stability as required by the Consent Judgment. The IMs also recommend that the LDOE provide written updates of the status of compliance and progress for each activity specified in each LEAs CAP and/or ICAP to the IMs on a quarterly basis. The IMs agree to be available as requested by LDOE to further assist in evaluating the status of compliance with the all CAPs and/or ICAPs.

13. The IMs continue to recommend that any NOLA Charter or OPSB LEA placed on a Corrective Action Plan (CAP) due to '*systemic noncompliance*' in the area of Child Find that fails to achieve compliance within a one-year period and which <u>consequently</u> will go on an Intensive Corrective Action Plan (ICAP) be required to secure an independent consultant, as described by La. Bulletin 1922 § 107(F)(4) and Addendum A (G)(2)(e) to the CJ, to assist the LEA with achieving compliance and until annual onsite targeted monitoring reveals no measure of systemic noncompliance. In relation, the IMs also continue to recommend that any NOLA charter or OPSB LEA requiring corrective action (i.e., CAP and/or ICAP) <u>in two or more areas concurrently</u> (e.g., Child Find, Related Services, Discipline and/or Enrollment Stability) also be required to secure an independent consultant, as described by La. Bulletin 1922 § 107(F)(4) and Addendum A (G)(2)(e) to the CJ, to assist the LEA with achieving compliance and until annual onsite targeted monitoring reveals no measure of systemic noncompliance.

Appendix A

1.  Summary of Compliance Status for the Louisiana Department of Education and Orleans

    Parish School Board for the 2015-2016 school year through the 2017-2018 school year

2.  Website Links for the 2017-2018 School Year