**Office of the Independent Monitors**
**P.B., et al., v. John White, et al. (Civil Case No. 2:10-cv-04049)**
**Draft Status Report to the Parties**
**August 9, 2018**

## I.      INTRODUCTION

Pursuant to Section V(9) on page 16 of the Consent Judgment (CJ) filed with the

Court on March 25, 2015, the Independent Monitors shall file with the Court and

provide the Parties with reports describing the steps taken by the State Defendants and

the Defendant-Intervenor to implement the Agreement and evaluate the extent to which

the State Defendants and the Defendant-Intervenor have complied with each substantive

provision of the Agreement. Pursuant to Section V(9)(a), the Monitor shall issue a status

report every 120 days after the first year of implementation of the Agreement. The

reports shall be provided to the Parties in draft form for comment at least 14 days prior

to their issuance. The Monitor shall consider the Parties' responses and make

appropriate changes, if any, before issuing the report. These reports shall be written with

due regard for the privacy interests of the students. Pursuant to Section V(9)(b) of the

CJ, the Independent Monitors shall evaluate the state of compliance for each relevant

provision of the Agreement using the following standards: (1) Substantial Compliance

and (2) Noncompliance. In order to assess compliance, the Monitor shall review a

sufficient number of pertinent documents to accurately assess compliance and interview

any necessary staff or personnel. The Monitor shall also be responsible for

independently verifying representations from the State Defendants or Defendant-

Intervenor regarding progress toward compliance, and examining supporting

documentation. Each Monitor report shall describe the steps taken by the Monitor to

assess compliance, including documents reviewed and individuals interviewed, and the factual basis for each of the Monitor's findings. Pursuant to Section V(10) of the CJ, reports issued by the Monitor shall not be admissible against the State Defendants and the Defendant-Intervenor in any proceeding other than a proceeding related to the enforcement of this Agreement initiated and handled exclusively by the State Defendants, the Defendant- Intervenor, or the Plaintiff's counsel. The State Defendants shall be released from the terms of the CJ when they have 1) achieved Substantial Compliance with each provision of the Agreement for which they are assigned responsibility; 2) maintained Substantial Compliance for a period of two years; and 3) subject to Court approval (p. 18 of the CJ).

The current IM status report addresses activities completed by the State Defendants during the 2017-2018 school year as required by the CJ. First, the IMs provide a summary of findings for targeted, on-site follow-up monitoring activities completed during the spring 2018 semester for LEAs required to implement corrective action plans (i.e., CAPs) during the 2017-2018 school year to address specific areas of identified systemic noncompliance in the areas of Child Find, Related Services, Discipline and Enrollment Stability. Second, the IMs also provide a summary of systemic compliance decisions for all LEAs reviewed as well as a three year comparison of IDEA compliance findings for all LEAs reviewed during the spring semesters of the 2015-2016 school year through the 2017-2018 school year. Finally, the IMs provide a summary of "Substantial Compliance" or "Noncompliance" decisions as related to specific follow-up monitoring activities undertaken by the LDOE (e.g., student selection, completion of staff interviews and student file reviews, development and dissemination of LEA targeted monitoring reports and

development and dissemination of Corrective Action Plans (CAPs), when required). The sequence of information in this IM status report follows the general structure of the CJ. Language from each substantive provision of the Agreement or Addendum A (i.e., monitoring protocols) outlined in the CJ is incorporated into the IM status report, when appropriate.

## II.   TARGETED FOLLOW-UP MONITORING ACTIVITIES FOR THE SPRING 2018 SEMESTER OF THE 2017-2018 SCHOOL YEAR FOR SCHOOLS REQUIRING CORRECTIVE ACTION PLANS

The LDOE engaged in targeted, on-site follow-up monitoring activities for the twelve schools required to implement corrective action plans (i.e., CAPs) during the 2017-2018 school year to address specific findings of systemic noncompliance as identified in the LDOE Monitoring Reports. The IMs report the activities and decisions made by the LDOE as related to the required on-site, follow-up monitoring activities for each relevant provision of the CJ.

All NOLA Charter LEAs placed on a CAP as the result of systemic IDEA noncompliance findings during targeted, on-site monitoring reviews conducted during the Spring 2017 school term were sent a notification email from LDOE Director of State-wide Monitoring on January 8, 2018 (see Appendix B for a copy of each email). This notification provided an overview of the requirements for follow-up, on-site targeted monitoring pursuant to the CJ, the specific areas in which the charter was being monitored, methods of monitoring (e.g., student file selection, staff interviews, student file reviews), LDOE contact personnel, the specific date of interviews with staff, instructions for the on-site monitoring visit, and copies of the staff interview questions and student file review

3

protocols.

LDOE monitoring personnel submitted the targeted, on-site follow-up monitoring schedule for the spring 2018 school term to the IMs on February 1, 2018 and a revised schedule was submitted to the IMs on February 26, 2018. In addition, the LDOE also submitted the rosters of randomly-selected students from each LEA requiring follow-up, on-site targeted monitoring on February 26, 2018. LDOE monitoring personnel and the IMs conducted on-site staff interviews and student file reviews from March 1-13, 2018 using documents required by the CJ. The IMs and LDOE monitoring personnel scored student file review protocols independently during the on-site visits and reconciled any scoring differences during the on-site monitoring visits or during a conference call held on April 11, 2018. As mentioned in other IM status reports, based on agreements among all parties during a meeting held on September 22, 2016, compliance determinations for individual students shall be consistent with the 100% compliance standard outlined in the IDEA. That is, during all targeted monitoring activities, any single finding of noncompliance for any specific IDEA regulation being assessed for an individual student was judged to reflect noncompliance and required immediate individual corrective action (i.e., student-specific areas of noncompliance outlined in the IDEA Monitoring Summary and individual corrective actions as part of the LEA's Corrective Action Plan). Similarly, all parties agreed that systemic noncompliance would be determined when less than 80% of the student sample failed to meet the 100% individual student compliance standard for any IDEA requirement evaluated on the CJ protocol and would result in mandatory systemic corrective actions (i.e., Corrective Action Plan or Intensive Corrective Action Plan) for the LEA.

The LDOE monitoring personnel completed the draft monitoring reports for each

LEA during March 2018 and submitted draft reports to the IMs on March 27, 2018 for
review and feedback. The IMs submitted recommended edits to the draft monitoring
reports on April 6, 2018. The LDOE submitted cover letters and final monitoring reports
to the IMs on April 16, 2018. These documents are in Appendix B for review by all
parties.

In addition to completing the targeted, on-site monitoring follow-up reviews and
monitoring reports, the LDOE submitted an external hard drive to the IMs on March 27, 2018 to
verify the receipt of the documentation required by each LEA's corrective action plan for the
2017-2018 school year. LDOE staff reviewed all documentation submitted and provided
feedback and/or additional technical assistance to school personnel, as needed, based on each
school's ongoing progress with CAP and/or ICAP implementation. In relation, the LDOE
submitted an overview of the technical assistance provided to schools placed on corrective
actions during the 2017-2018 school year to the IMs on May 2, 2018. Specific forms of
professional services provided to school personnel by the LDOE to assist with complying with
the requirements of the CAPs/ICAPs included: 1) initial technical assistance meetings in the
areas of CJ areas of Child Find, Related Services, Discipline, and Enrollment (Related Services)
were held on March 20-23, 2017 and March 29, 2017 for schools initially placed on CAPs during
the fall 2017 school term and May 8-9, 2017 and May 11, 2017 for schools that required ICAPs;
2) professional development, held in New Orleans at the OPSB central office on August 24,
2017, to address policies and procedures related to Child Find regulations; 3) another
professional training, held at the Ascension Parish Library on November 29, 2017, to provide
"hands-on" guidance regarding compliance with Child Find regulations; 4) a minimum of one
on-site technical assistance visit was conducted with all schools placed on CAP or ICAP to

review appropriate Child Find policies, practices and procedures and provide feedback to staff on current practices and/or concerns; 5) additional ongoing technical assistance was provided by the LDOE throughout the school year to schools placed on CAPs and/or ICAPs via various forms of service delivery (e.g., weekly email correspondence, weekly or bi-weekly telephone conferences, face-to-face meetings with school personnel at school sites and/or at the LDOE building) to address topics such as appropriate Child Find activities (e.g., compliance with Child Find policies and procedures; procedures to follow within the SBLC process; Section 504 evaluation process including administration of appropriate assessments, determination of cut-off scores for eligibility, proper documentation of assessment results to support an eligibility determination) and IEP compliance (i.e., writing compliant IEP goals and PLAAF statements, appropriate provision and documentation of related services; appropriate documentation of student progress monitoring results and maintaining updated service logs, etc.).

The IMs review of compliance with the targeted, on-site follow-up monitoring provisions of the CJ for the spring 2018 semester of the 2017-2018 school year consisted of an evaluation of two components of the LDOE's monitoring activities. Specifically, the components being assessed for compliance included: (1) Completion of targeted monitoring activities by the LDOE as required by the CJ and Addendum A to the CJ (e.g., completion of appropriate monitoring activities by the LDOE, completion of staff interviews, appropriate selection of student files, appropriate completion of the monitoring protocols, and correct identification of systemic or individual compliance and/or noncompliance) and (2) the development of appropriate corrective actions "sufficient to remedy the noncompliance and to reasonably ensure that such noncompliance does not reoccur." (pp. 7, 9, 11, 14 of CJ), if warranted. As such, the current IM status report

provides a review of monitoring activities and findings for each LEA requiring targeted

follow-up monitoring under each area of the CJ (e.g., Child Find, Related Services,

Discipline, and Enrollment) along with IM determinations regarding compliance with the

monitoring provisions of the CJ. An overall summary regarding targeted, on-site follow-up

monitoring activities and professional recommendations are provided at the conclusion of

this report.

### A. CHILD FIND

1. <u>Targeted Follow-Up Monitoring Activities for the Child Find Provisions</u>

Three schools were required to undergo targeted, on-site follow-up monitoring

visits during the spring 2018 school semester to assess IDEA compliance after being

place on Corrective Action Plans (CAPs) for the 2017-2018 school year to address

issues of IDEA noncompliance in the area of Child Find regulations. The LEAs

requiring targeted, on-site follow-up monitoring during the spring 2018 semester

included Joseph S. Clark Preparatory High School, Mildred Osborne Charter School

and William J. Fischer Accelerated Academy. A review of findings for each school is

presented below.

a. *Joseph S. Clark Preparatory High School*

The on-site targeted follow-up monitoring visit occurred on March 5, 2018. One

LDOE representative and one IM were present during the entire on-site visit to conduct

staff interviews and review student files. The staff interviews were conducted using a

standard bank of questions with staff members consistent with requirements outlined in

sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members

who participated in the interview process are reported on page 3 of the LDOE monitoring

report. Faculty at Joseph S. Clark Preparatory High School clearly articulated their responses regarding the Child Find process and provided satisfactory answers to all interview questions. No specific areas of concern were identified from the interview as school staff demonstrated comprehensive knowledge of state policies and procedures. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix B.

A representative sample of ten student files for students were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of two students (20% of the sample) who had current Section 504 Accommodation Plans, three students (30% of the sample) who were under consideration by the School Building Level Committee (SBLC), two students (20% of the sample) who were participating in the Response to Intervention (RTI) process, two students (20% of the sample) who were failing 2 or more subjects and one student (10% of the sample) who has been suspended ten or greater school days. It should be noted that one student file was not reviewed as the student had been classified under the IDEA the previous school term.

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 5 of the LDOE monitoring report for Joseph S. Clark Preparatory High School in Appendix B for a list of items that were reviewed to complete the Child Find protocol for the sample of students. A review of student records revealed that ten of ten student files (100% of the sample) were judged to be in compliance regarding required IDEA Child Find regulations. In

sum, no systemic or student-specific findings of noncompliance were identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2018 on-site, follow-up targeted monitoring visit.

       *b. Mildred Osborne Charter School*

       The on-site targeted monitoring visit occurred on March 5, 2018. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Mildred Osborne Charter School clearly articulated their responses regarding the Child Find process and provided satisfactory answers to all interview questions. No specific areas of concern were identified from the interview as school staff demonstrated thorough awareness of state policies and procedures. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix B.

       A representative sample of sixteen student files for students enrolled in Mildred Osborne Charter School were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of three students (20% of the sample) who had current Section 504 Accommodation Plans, five students (33% of the sample) who were participating in the Response to Intervention (RTI process), two students (13% of the sample) who were under consideration by the School Building Level Committee

(SBLC), one student who under consideration by the School Building Level Committee (SBLC) who also had a current Section 504 Accommodation Plan, three students (20% of the sample) who experienced course failures and two students (13% of the sample) who previously received Section 504 accommodations and were currently classified under the IDEA.

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 4 of the LDOE monitoring report for Mildred Osborne Charter School in Appendix B for a list of items that were reviewed to complete the Child Find protocol for the sample of students. A review of student records revealed that sixteen of sixteen files (100% of the sample) were judged to reflect compliance regarding Child Find activities. In sum, there were no systemic or student-specific findings of noncompliance identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2018 on-site, follow-up targeted monitoring visit.

> c. *William J. Fischer Accelerated Academy*

The on-site targeted monitoring visit occurred on March 8, 2018. Three LDOE representative and three IMs were present during the entire on-site visit to conduct staff interviews and review student files. The interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Staff at William J. Fischer Accelerated Academy clearly articulated their responses to interview

questions and indicated a clear understanding of the IDEA and LDOE Child Find regulations. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix B.

A representative sample of eleven student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of three students (27% of the sample) who had Section 504 Accommodation Plans, one student (9% of the sample) who experienced course failures, two students (18% of the sample) who were under consideration by the School Building Level Committee (SBLC), four students (36% of the sample) who were participating in the Response to Intervention process and one student (9% of the sample) who was recently classified under the IDEA. Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 4 of the LDOE monitoring report for William J. Fischer Accelerated Academy in Appendix B for a list of items that were reviewed to complete the Child Find protocol for the sample of students. A review of student records revealed that eleven of eleven student files (100% of the sample) were judged to be in compliance regarding Child Find activities. In sum, no systemic or student- specific findings of noncompliance were identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2018 on-site follow-up targeted monitoring visit.

2. <u>Summary of LEA Compliance for IDEA Child Find Regulations</u>

All LEAs participating in the required targeted monitoring activities demonstrated

systemic compliance for all IDEA Child Find regulations reviewed. In addition, there were no student-specific IDEA violations observed during the targeted (Child Find) monitoring reviews. Therefore, after observing the current status of each LEAs systemic compliance with IDEA Child Find regulations and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email on May 2, 2018 indicating that no further corrective actions were warranted for Joseph S. Clark Preparatory High School, Mildred Osborne Charter School and William J. Fischer Accelerated Academy in the area of Child Find at this time (See Appendix B for a copy of these notifications).

   3. <u>Two Comparison of Compliance for Child Find Provisions for the Fall 2016 and Spring 2018 Semesters</u>

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Child Find Protocol is presented in the tables in Appendix B for each LEA selected for initial, targeted monitoring during the fall 2016 semester and follow-up, targeted monitoring during the spring 2018 semester. In relation, the IMs evaluated the trend in compliance from the fall 2016 semester to the spring 2018 semester and status of compliance based on outcomes from the spring 2018 on- site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

   *a. Joseph S. Clark Preparatory High School*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Child Find Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or

submission of required documentation) was observed for four of four applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all four applicable items. As previously mentioned in this status report, Joseph S. Clark Preparatory High School did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

b.  *Mildred Osborne Charter School*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Child Find Protocol, a stable or positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for ten of ten applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for eleven applicable items. As previously mentioned in this status report, Mildred Osborne Charter School did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

c.  *William J. Fischer Accelerated Academy*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Child Find Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for nine of nine applicable items (100% of the

applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all nine applicable items. As previously mentioned in this status report, William J. Fischer Accelerated Academy did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

4. Status of LDOE Compliance

After participating in the monitoring visits for the charter schools requiring follow-up targeted follow-up monitoring visits in the area of Child Find and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(A)(3)(a-b) and Sections A(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2018 semester of the 2017-2018 school year.

**B. RELATED SERVICES**

1. Targeted Monitoring Activities for the Related Service Provisions

Three schools were required to participate in targeted, on-site follow-up monitoring during the spring 2018 school semester to assess IDEA compliance after being placed on Corrective Action Plans (CAPs) during the 2017-2018 school year to address issues related to IDEA Related Services requirements. The LEAs requiring targeted follow-up monitoring during the spring 2018 semester included Joseph S. Clark

Preparatory High School, New Orleans Military and Maritime Academy and International School of Louisiana. A review of findings for each school is presented below.

>  *a. Joseph S. Clark Preparatory High School*

The targeted, on-site monitoring visit occurred on March 6, 2018. One LDOE representative and one IM were present during the entire on-site follow-up visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B (4)(b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Joseph S. Clark Preparatory High School responded to all interview questions satisfactorily and clearly indicated their understanding of federal and state regulations related to IDEA compliance for Related Service provisions. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities: three students (30% of the sample) with an exceptionality of Autism, one student (10% of the sample) with an exceptionality of Multiple Disabilities, two students (20% of the sample) with an exceptionality of Emotional Disability, two students (20% of the sample) with an exceptionality of Other Health Impaired and two students (20% of the sample) with an

exceptionality of Intellectually Disabled. Related Service provisions included Speech

Therapy only (2 students), Counseling Services only (1 student), Adaptive PE and Speech

Therapy (5 students) and Speech Therapy and Counseling Services (2 students).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a

manner consistent with the requirements outlined in section B(3)(a) on page 3 of

Addendum A of the CJ using the required Related Service protocol. Refer to page 4 of the

LDOE monitoring report for Joseph S. Clark Preparatory High School in Appendix B for

a list of items that were reviewed to complete the Related Service protocol for the sample

of students. A review of student records revealed that nine of ten student files (90% of the

sample) were judged to be in compliance regarding IDEA Related Service provisions

indicating no findings of systemic noncompliance. However, there was a single student-

specific concern observed for one student (i.e., Communication PLAAFP statement on the

IEP failed to include the students' strengths and weaknesses and/or evidence of an

assessment indicating the student's current level of functioning in the area of

Communication). This reflects a student-specific finding of noncompliance for IDEA

§300.320(a)(1)(i)(2)(i)-PLAAFP statements. Student-specific findings of noncompliance are

listed on page 2 of the 2017-2018 IDEA monitoring results summary located in Appendix

B.

   *b. New Orleans Military and Maritime Academy*

The targeted, on-site monitoring visit occurred on March 6, 2018. One LDOE

representative and one IM were present during the entire on-site visit to conduct staff

interviews and review student files. The staff interviews were conducted using a standard

bank of  questions with staff members consistent with requirements outlined in section

B(4)(a) and B(4)(b) of page 3 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at New Orleans Military and Maritime Academy demonstrated an adequate knowledge and understanding of federal and state regulations regarding related services provisions and clearly articulated the LEAs procedures for identifying, providing and monitoring the service delivery for all applicable students. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix B.

A sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included three students (30% of the sample) with an exceptionality of Autism, three students (30% of the sample) with an exceptionality of Emotional Disability and four students (40% of the sample) with an exceptionality of Other Health Impaired. Related Services provided included Speech Therapy only (3 students), Counseling and Speech Services (3 students) and Counseling Services only (4 students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for New Orleans Military and Maritime Academy in Appendix B for a list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged reflect compliance regarding IDEA Related Service provisions. In relation, no student-specific findings of noncompliance were observed during the targeted follow-up monitoring visit.

17

*c. International School of Louisiana*

The targeted, on-site monitoring visit occurred on March 7, 2018. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on page 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at International School of Louisiana clearly articulated the LEA's process for related services provisions for students with disabilities and demonstrated an adequate knowledge of state and federal mandates regarding related service provisions. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included two students (20% of the sample) with an exceptionality of Other Health Impaired, five students (50% of the sample) with an exceptionality of Speech/Language and three students (30% of the sample) with an exceptionality of Specific Learning Disability. Related Service provisions included Speech Therapy (9 students) and Social Work Services (1 student).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for International School of Louisiana in Appendix B for a

list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that seven of ten student files reviewed (70% of the sample) were judged to be in compliance regarding IDEA Related Service provisions. There were student-specific findings of noncompliance for three students observed during the targeted on-site monitoring visit. Student-specific concerns observed included two instances of required staff failing to sign student's IEPs or excusal form (IDEA §300.321(a)-(b)) and one instance of a students' PLAAPF statement in the Social area failing to reflect the students' strengths and weakness, present level of baseline performance and how the student's disability impacts his/her educational progress within the general education curriculum (IDEA §300.320(a)(1)(i)(2)(i)) and the student's annual goal in the Social area failed to be written in measurable terms and include the timeframe for attainment. (IDEA §300.320(a)(2) and 300.160(5a)(b2ii)(c-9)). Student-specific findings of noncompliance are listed on page 2 of the 2017-2018 IDEA monitoring results summary located in Appendix B.

    2.  <u>Summary of LEAs Compliance for IDEA Related Service Regulations</u>

      All LEAs participating in the required targeted monitoring activities demonstrated systemic compliance for all IDEA Related Services regulations reviewed with only minor student-specific IDEA Related Services violations observed for two LEAs. Therefore, after observing the current status of each LEA's systemic compliance with IDEA Related Services regulations, verifying that all student-specific violations were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" charter management officials via email on May 2, 2018 indicating that no further corrective actions were warranted for Joseph S. Clark Preparatory High School, New Orleans Military and Maritime Academy and International

School of Louisiana in the area of Related Services at this time (See Appendix B for a copy of these notifications).

3. <u>Two Year Comparison of Compliance for Related Services Provisions for the Fall 2016 and Spring 2018 Semesters</u>

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Related Services Protocol is presented in the tables in Appendix B for each LEA selected for initial, targeted monitoring during the fall 2016 semester and follow-up, targeted monitoring during the spring 2018 semester. In relation, the IMs evaluated the trend in compliance from the fall 2016 semester to the spring 2017 semester and status of compliance based on outcomes from the spring 2018 on- site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

*a.   Joseph S. Clark Preparatory High School*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a stable or positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eight of eight applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eight applicable items. As previously mentioned in this status report, Joseph S. Clark Preparatory High School did not require corrective actions to address systemic concerns, however, school personnel were

required to address student-specific concerns identified in their IDEA Monitoring Summary Report.

b.   *New Orleans Military and Maritime Academy*

Based on a review of the data obtained during the protocol reviews conducted during the fall 2016 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a stable or positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for seven of seven applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all seven applicable items. As previously mentioned in this status report, New Orleans Military and Maritime Academy did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

c.   *International School of Louisiana*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a stable or positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for six of seven applicable items (86% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all seven applicable items. As previously mentioned in this status report, International School of Louisiana did not require corrective actions to address systemic concerns, however, school personnel were required to

address student-specific concerns identified in their IDEA Monitoring Summary Report.

4. Status of Compliance

After participating in the monitoring visits for the charter schools requiring follow-up targeted follow-up monitoring visits in the area of Related Services and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(B)(2)(a-b) of the CJ and Sections B(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2018 semester of the 2017-2018 school year.

**C.  DISCIPLINE**

1. Targeted Monitoring Activities for the Discipline Provisions

Three schools were required to undergo targeted, on-site follow-up monitoring during the spring 2018 school semester to assess IDEA compliance after being place on Corrective Action Plans (CAPs) during the 2017-2018 school year to address issues related to IDEA Discipline requirements. The LEAs requiring targeted follow-up monitoring during the spring 2018 semester included Arise Academy, G.W. Carver Charter School and Eleanor McMain Secondary Charter School. A review of findings for each school is presented below.

    *a. Arise Academy*

The targeted, on-site monitoring visit occurred on March 7, 2018. One LDOE representative and two IMs were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on pages 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Arise Academy School clearly articulated their responses regarding the policies, procedures, and practices related to the provision of tiered behavioral supports and disciplinary actions for students. In relation, the staff provided thorough and detailed answers to all interview questions. A detailed summary of staff responses is presented on pages 3- 5 of the LDOE monitoring report located in Appendix B.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 5 (a-b) on page 11 of the CJ and section 2(a-b) on page 5 of Addendum A of the CJ. Specifically, the sample consisted of four students (40% of the sample) with an exceptionality of Emotional Disability (ED), five students (50% of the sample) with an exceptionality of Other Health Impaired (OHI), and one student (10% of the sample) with an exceptionality of Specific Learning Disability (SLD). A review of student records revealed that four students (40% of the sample) experienced from one to eight cumulative days of in-school and/or or out-of-school suspension; however, no students met the criteria for a change in placement or required a Manifestation Determination Review (MDR) based on federal or state regulations. Student file reviews were conducted by

LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 5 of Addendum A of the CJ using the required Discipline protocol. Please refer to page 5 of the LDOE monitoring report for Arise Academy in Appendix B for a list of items that were reviewed to complete the Discipline protocol for the sample of students. A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged to be in compliance regarding IDEA Discipline provisions. In relation, there were also no student- specific findings of noncompliance observed during the on-site targeted monitoring visit.

*b. G. W. Carver Collegiate Academy*

The on-site targeted monitoring visit occurred on March 5, 2018. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on pages 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at G. W. Carver Collegiate Academy provided comprehensive information regarding the policies, procedures, and practices related to the provision of tiered behavioral supports and disciplinary actions for students. In relation, the staff provided thorough and detailed answers to all interview questions. A detailed summary of staff responses is presented on pages 3- 4 of the LDOE monitoring report located in Appendix B.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in

section 5(a-b) on page 11 of the CJ and section 2(a-b) on page 5 of Addendum A of the CJ. Specifically, the sample consisted of five students (50% of the sample) with an exceptionality of Specific Learning Disability (SLD), two students (20% of the sample) with an exceptionality of Emotional Disability (ED), two students (20% of the sample) with an exceptionality of Other Health Impairment (OHI), and one with student with an exceptionality of Intellectually Disabled (ID). Ten of ten students (100% of the sample) experienced five to twelve cumulative days of in-school suspension (ISS) and/or out-of-school suspension (OSS). However, only two students (20% of the sample) experienced ten or greater cumulative days of exclusionary removals and required a Manifestation Determination Review (MDR) as the result of a change in placement. Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 5 of Addendum A of the CJ using the required Discipline protocol. Please refer to page 4 of the LDOE monitoring report for G. W. Carver Charter School in Appendix B for a list of items that were reviewed to complete the Discipline protocol for the sample of students. A review of student records revealed that nine of ten applicable student files (90% of the sample) were judged to be in compliance regarding the provision of disciplinary procedures and/or other IDEA requirements. Although no systemic concerns were observed; there was, however, a single student-specific finding of noncompliance observed for one student. Specifically, the LEA failed to schedule a MDR meeting after the 10th cumulative day of suspension. As such, the student was not provided with services until returning to school after the 12th cumulative day of disciplinary removal and, consequently, failed to receive IDEA services for two school days. This constitutes a student-specific violation under IDEA §300.530(d). As such, the LEA was required to (a) immediately provide compensatory

time to the student for the two days of lost instructional time and (b) develop a written

procedure for gathering suspension data to ensure that suspension trends toward meeting

the criterion for Change in Placement are observed in a timely manner well before the 10

day timeline is reached and/or when any disciplinary actions occur that leads to a Change

in Placement. Student-specific findings of noncompliance are listed on page 2 of the

2017-2018 IDEA monitoring results summary located in Appendix B.

     *c. Eleanor McMain Secondary Charter School*

     The on-site targeted monitoring visit occurred on March 6, 2018. One LDOE

representative and two IMs were present during the entire on-site visit to conduct staff

interviews and review student files. The staff interviews were conducted using a standard

bank of questions with staff members consistent with requirements outlined in sections

4(a) and 4(b) on pages 4-5 of Addendum A of the CJ. The specific staff members who

participated in the interview process are reported on page 3 of the LDOE monitoring

report. Faculty at Eleanor McMain Secondary Charter School clearly articulated their

responses regarding the policies, procedures, and practices related to the provision of

tiered behavioral supports and disciplinary actions for students. The staff provided

satisfactory answers to all interview questions. A detailed summary of staff responses is

presented on page 3 of the LDOE monitoring report located in Appendix B.

     A representative sample of ten student files were reviewed by the LDOE monitoring

personnel and IMs in a manner consistent with the requirements outlined in section 5 (a-

b) on page 11 of the CJ and section 2(a-b) on page 5 of Addendum A of the CJ.

Specifically, the sample consisted of four students (40% of the sample) with an

exceptionality of Specific Learning Disability (SLD), three students (30% of the sample)

with an exceptionality of Other Health Impairment (OHI) and three students (30% of the

sample) with an exceptionality of Emotional Disability (ED). Ten of ten students (100% of the sample) experienced two to six cumulative days of in-school suspension (ISS) and/or out-of-school suspension (OSS). However, no students in the sample reviewed experienced any disciplinary actions that required a Manifestation Determination Review (MDR) as the result of a change in placement.

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 5 of Addendum A of the CJ using the required Discipline protocol. Please refer to pages 4 of the LDOE monitoring report for McMain Secondary Charter School in Appendix B for a list of items that were reviewed to complete the Discipline protocol for the sample of students. A review of student records revealed that ten of tem student files reviewed (100% of the sample) were judged to be in compliance regarding the provision of disciplinary procedures and/or other IDEA requirements. In relation, no student-specific findings of noncompliance were observed during the on-site follow-up review.

2. Summary of LEAs Compliance for IDEA Discipline Regulations

All LEAs participating in the required targeted monitoring activities demonstrated systemic compliance for all IDEA Discipline regulations reviewed with a single student-specific IDEA Discipline violation observed for one LEA. Therefore, after observing the current status of each LEAs systemic compliance with IDEA Discipline regulations, verifying the single student-specific violation was corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email on May 2, 2018 indicating that no further corrective actions were warranted for Arise Academy, G.W. Carver

Collegiate Academy and Eleanor McMain Secondary Charter School in the area of Discipline at this time (See Appendix B).

3. <u>Two Year Comparison of Compliance Findings  for IDEA Discipline Regulations  of Compliance for Discipline Provisions for the Fall 2016 and Spring 2018  Semesters</u>

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Discipline Protocol is presented in the tables in Appendix B for each LEA selected for initial, targeted monitoring during the fall 2016 semester and follow-up, targeted monitoring during the spring 2018 semester. In relation, the IMs evaluated the trend in compliance from the fall 2016 semester to the spring 2017 semester and status of compliance based on outcomes from the spring 2018 on- site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

*a. Arise Academy*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Discipline Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for one of one applicable item (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for this applicable item. As previously mentioned in this status report, Arise Academy did not require corrective actions due to experiencing no systemic or student- specific findings of noncompliance.

### b. *G. W. Carver Collegiate Academy*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Discipline Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for five of six applicable items (83% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all six applicable items. As previously mentioned in this status report, G. W. Carver Collegiate Academy did not require corrective actions to address systemic concerns, however, school personnel were required to address student-specific concerns identified in their IDEA Monitoring Summary Report.

### c. *Eleanor McMain Secondary Charter School*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Discipline Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for one of one applicable item (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for this applicable item. As previously mentioned in this status report, Eleanor McMain Secondary Charter School did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

4. <u>Status of Compliance</u>

After participating in the monitoring visits for the charter schools requiring targeted, follow-up monitoring visits in the area of Discipline and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(C)(5)(a-b) and Sections C(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2018 semester of the 2017-2018 school year.

**D. ENROLLMENT**

1. <u>Targeted Monitoring Activities for the Enrollment Stability</u>

Three schools were required to participate in targeted, on-site follow-up monitoring during the spring 2018 school semester to assess IDEA compliance after being place on Corrective Action Plans (CAPs) from spring 2017 through spring 2018 school terms to address issues related to IDEA Related Services (Enrollment Stability) requirements. The schools required to participate in targeted, on-site follow-up monitoring visits during the spring 2018 semester included Sophie B. Wright, McDonogh 42 Charter School and The Net Charter School. A review of findings for each school is presented below.

a. *Sophie B. Wright Charter School*

The targeted, on-site monitoring visit occurred on March 2, 2018. Two LDOE representative and two IMs were present during the entire on-site visit to conduct staff

interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. The staff of Sophie B. Wright Charter School clearly described the LEA's policies and procedures for determining the related service needs for current and/or newly enrolled students, various service delivery methods based on student need and schedules and the LEA's procedures for evaluating/documenting related service provisions in sufficient detail. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix B.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) on and B(2)(b) on page 3 of Addendum A of the CJ. The sample of students reviewed included the following exceptionalities: one student (10% of the sample) with an exceptionality of Autism, three students (30% of the sample) with an exceptionality of Other Health Impaired, two students (20% of the sample) with an exceptionality of Intellectual Disability (ID), one student (10% of the sample) with an exceptionality of Hearing Impaired (HI), one student (10% of the sample) with an exceptionality of Visually Impaired (VI), one student (10% of the sample) with an exceptionality of Traumatic Brain Injury (TBI) and one student (10% of the sample) with an exceptionality of Orthopedic Impairment (OI). Related Services provided included Speech Therapy (5 students), Social Work Services (3 students), Assistive Technology (1 student), Speech Language and Physical Therapy (1 student).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Sophia B. Wright Charter School in Appendix B for a list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that eight of ten applicable student files reviewed (80% of the sample) were judged to be in compliance regarding Related Service provisions. However, there was a single student- specific finding of noncompliance for two of the students reviewed. Specifically, these findings were related to (a) one students' ELA and Math Academic & Functional Goal as well as the short term objectives not including conditions under which the goal/objectives would be performed and failing to specify the criterion for successful performance in measurable terms and (b) the speech therapist failing to participate in one student's IEP meeting. This represents student-specific violations for IDEA §300.320(a)(2) and 300.160(5a)(b2ii)(c-9)-Measurable Goals and Objectives and IDEA §300.321(a)-(b)-IEP Team, respectively. Student-specific findings of noncompliance are listed on page 2 of the 2017-2018 IDEA monitoring results summary located in Appendix B.

### b. McDonogh 42 Charter School

The targeted, on-site monitoring visit occurred on March 7, 2018. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections

B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Staff for McDonogh 42 Charter School responded satisfactorily to all interview questions and clearly described in sufficient detail the LEAs policies and procedures for quickly identifying students in need of related services, methods of service delivery and processes for documenting services. A summary of staff responses is presented on page 3 of the LDOE monitoring report located in Appendix B.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)b on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities: two students (20% of the sample) with an exceptionality of Intellectually Disabled (ID), six students (60% of the sample) with an exceptionality of Other Health Impaired (OHI), one student (10% of the sample) with an exceptionality of Visually Impaired (VI), and one student (10% of the sample) with an exceptionality of Orthopedic Impairment (OI). Related Service provisions reviewed included Speech Therapy (4 students), Speech Therapy/Counseling Services (1 student), Speech/Language Therapy (2 students) and Speech Therapy and Social Work Services (2 students). It should be reported here that one student with a Visual Impairment exceptionality was not receiving formal related services. A review of the students' IEP indicated the student was receiving full inclusion services and achieving excellent grades with Large Print accommodations and tutorial special education supports weekly. As such, this student was excluded from the formal on-site review of Related Service provisions.

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for McDonogh 42 Charter School in Appendix B for a list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that nine of nine applicable student files reviewed (100% of the sample) were judged to be in compliance regarding Related Service provisions. Furthermore, no student-specific concerns were observed during the follow-up targeted monitoring visit.

c. *The Net Charter School*

The on-site targeted monitoring visit occurred on March 5, 2018. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B4 and B4 (b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. In general, staff participating in the interview clearly articulated the LEAs process for determining student need for Related Service provisions, various methods of service delivery and procedures for monitoring student progress. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report for the Net Charter School located in Appendix B.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in

section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten

students reviewed included the following exceptionalities: five students (50% of the

sample) with an exceptionality of Specific Learning Disability (SLD), four students

(40% of the sample) with an exceptionality of Other Health Impaired (OHI) and one

student (10% of the sample) with an exceptionality of Emotionally Disabled (ED).

Related Service provisions reviewed included Speech/Language Services and

Counseling Services (4 students), Counseling Services only (5 students) and

Speech/Language Services only (one student).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs

in a manner consistent with the requirements outlined in section B3(a) on page 3 of

Addendum A of the CJ and section D(2)(a-c) on page 6 of Addendum A using the

required Related Service protocol. Please refer to page 4 of the LDOE monitoring report

for The NET Charter School in Appendix B for a list of items that were reviewed to

complete the Related Services protocol for the sample of students. A review of student

records revealed that ten of ten student files reviewed (100% of the sample) were judged

to reflect compliance regarding Related Service provisions. In relation, there were also

no findings of student-specific noncompliance observed during the follow-up targeted

monitoring visit.

2. <u>Summary of LEAs Compliance for IDEA Related Services Regulations</u>

All LEAs participating in the required targeted monitoring activities to address

Enrollment Stability demonstrated systemic compliance for all IDEA Related Services

regulations reviewed with only minor student-specific IDEA Related Services violations

observed for one LEA. Therefore, after observing the current status of each LEAs

systemic compliance with IDEA Related Services regulations, verifying that all student-specific violations were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to Charter officials via email on May 2, 2018 indicating that no further corrective actions were warranted for Sophie B. Wright, McDonogh 42 Charter School and The Net Charter School in the area of Related Services at this time (See Appendix B for a copy of these documents).

     3. <u>Two Year Comparison of Compliance for Enrollment (Related Services) Provisions for the Fall 2016 and Spring 2018 Semesters</u>

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Related Services Protocol is presented in the tables in Appendix B for each LEA selected for initial, targeted monitoring during the fall 2016 semester and follow-up, targeted monitoring during the spring 2018 semester. In relation, the IMs evaluated the trend in compliance from the fall 2016 semester to the spring 2017 semester and status of compliance based on outcomes from the spring 2018 on- site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

    *a. Sophie B. Wright Charter School*

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eight of eight applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the

required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for nine applicable items. As previously mentioned in this status report, Sophie B. Wright Charter School did not require corrective actions to address systemic concerns, however, school personnel were required to address student-specific concerns identified in their IDEA Monitoring Summary Report.

### b. McDonogh 42 Charter School

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eight of eight applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eight applicable items. As previously mentioned in this status report, McDonogh 42 Charter School did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

### c. The NET Charter School

Based on a review of the data obtained during the protocol reviews conducting during the fall 2016 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for seven of seven applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the

required criterion (e.g., 80% or more of the student sample met the 100% individual student

compliance standard for any applicable regulation) for all seven applicable items. As

previously mentioned in this status report, the NET Charter School did not require corrective

actions due to experiencing no systemic or student-specific findings of noncompliance.

4. Status of Compliance

After participating in the targeted, on-site monitoring visits for the charter schools

required to undergo follow-up targeted monitoring to assess IDEA compliance in the area of

Related Services (Enrollment Stability) and reviewing documentation submitted by the

LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports,

2017-2018 IDEA monitoring results summaries, Intensive Corrective Action Plans-ICAPs,

technical assistance notifications) and discussing the targeted monitoring activities with

LDOE legal counsel and monitoring personnel during conference calls and on-site meetings

during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial**

**Compliance** with Section IV(D)(7)(a-b) of the CJ and Sections D(1)(a-c) and D(2)(a-c) of

Addendum A of the CJ for the spring 2018 semester of the 2017- 2018 school year.

III.     **TARGETED FOLLOW-UP MONITORING ACTIVITIES FOR THE
         SPRING 2018 SEMESTER OF THE 2017-2018 SCHOOL YEAR FOR
         SCHOOLS REQUIRING INTENSIVE CORRECTIVE ACTION
         PLANS**

The LDOE engaged in targeted, on-site follow-up monitoring activities for the six

schools required to implement intensive corrective action plans (i.e., ICAPs) during the

2017- 2018 school year to address specific findings of systemic noncompliance as

identified in the LDOE Monitoring Reports from the targeted, on-site follow-up monitoring

visits completed during the spring 2017 school term. The IMs report the activities and

decisions made by the LDOE as related to the required on-site, follow-up monitoring activities for each relevant provision of the CJ. All monitoring procedures (i.e., monitoring notifications, identification of student records, on-site monitoring visits, LDOE monitoring reports, ICAP closure notifications) were conducted in the same manner as previously described in this status report for the schools who required CAPs for the 2017-2018 school year. The documentation for the schools placed on ICAPs during the 2017-2018 school year and requiring targeted, on-site follow-up monitoring during the spring 2018 school term is located in Appendix C for review by the Parties.

**A. CHILD FIND**

1. <u>Targeted Follow-Up Monitoring Activities for the Child Find Provisions</u>

Three schools were required to participate in targeted, on-site follow-up monitoring during the spring 2018 school semester to assess IDEA compliance after being place on Intensive Corrective Action Plans (ICAPs) for the 2017-2018 school year. The LEAs requiring targeted, on-site follow-up monitoring during the spring 2018 semester included Joseph A. Craig Charter School, Lake Area New Tech Early College High School and Sophie B. Wright Learning Academy. A review of findings for each school is presented below.

*a.   Joseph A. Craig Charter School*

The targeted, on-site follow-up monitoring visit occurred on March 13, 2018. Two LDOE representative and two IMs were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members

who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Joseph A. Craig Charter School. Overall, results of staff interview indicated compliance in the area of Child Find. No specific areas of concern were identified from the interview as staff demonstrated comprehensive knowledge of state and federal policies and procedures. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix C.

A representative sample of 15 student files for students enrolled in Joseph A. Craig Charter School were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of six students (40% of the sample) who had current Section 504 Accommodation Plans, one student (7% of the sample) who was under consideration by the School Building Level Committee (SBLC), one student (7% of the sample) who was participating in the Response to Intervention (RTI) process, three students who were failing 2 or greater subjects and four students (27% of the sample) who previously received Section 504 accommodations and participated in the Response to Intervention (RTI) process who were recently classified under the IDEA.

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 5 of the LDOE monitoring report for Joseph A. Craig Charter School in Appendix C for a list of items that were reviewed to complete the Child Find protocol for the sample of students. A review of student records revealed that fifteen of fifteen student files (100% of the sample) were judged to be in compliance regarding required IDEA Child Find

regulations. In summary, no systemic or student-specific findings of noncompliance were identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2018 targeted, on- site follow-up monitoring visit.

       *b.   Lake Area New Technology Early College High School*

       The targeted, on-site follow-up monitoring visit occurred on March 12, 2018. Two LDOE representative and two IMs were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. In general, the results of the staff interview indicated compliance in the area of Child Find. No specific areas of concern were identified from the interview as staff demonstrated comprehensive knowledge of federal and state Child Find regulations. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix C.

       A representative sample of fifteen student files for students enrolled in Lake Area New Technology Early College High School were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of four students (27% of the sample) who had current Section 504 Accommodation Plans, five students (33% of the sample) who were participating in the Response to Intervention process (RTI), three students (20% of the sample) who were under consideration by the School Building Level Committee (SBLC), one student (6% of the sample) who previously

received Section 504 accommodations and participated in the Response to Intervention (RTI) process who were recently classified under the IDEA and two students (13% of the sample) who were failing 2 or more subjects.

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 5 of the LDOE monitoring report for Lake Area New Technology Early College High School in Appendix C for a list of items that were reviewed to complete the Child Find protocol for the sample of students. A review of student records revealed that fifteen of fifteen student files (100% of the sample) were judged to reflect compliance regarding Child Find activities. In summary, there were no systemic or student-specific findings of noncompliance identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2018 targeted, on-site follow-up monitoring visit.

*c. Sophie B. Wright Charter School*

The targeted, on-site follow-up monitoring visit occurred on March 1, 2018. Two LDOE representative and two IMs were present during the entire on-site visit to conduct staff interviews and review student files. The interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Overall, results of the interview indicated compliance in the area of Child Find. No specific areas of concern were identified from the interview as staff demonstrated comprehensive knowledge of Child Find policies and procedures. A detailed summary of

staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix C.

A representative sample of sixteen student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of five students (31% of the sample) who had Section 504 Accommodation Plans, four students (9% of the sample) who experienced two or greater course failures, two students (12% of the sample) who were under consideration by the School Building Level Committee (SBLC), five students (31% of the sample) who were participating in the Response to Intervention (RTI) process. Please refer to page 4 of the LDOE monitoring report for Sophie B. Wright Learning Academy in Appendix C for a list of items that were reviewed to complete the Child Find protocol for the sample of students.

A review of student records revealed that fifteen of sixteen student files (94% of the sample) were judged to be in compliance regarding Child Find activities. In summary, no systemic findings of noncompliance were identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2018 on-site follow-up targeted monitoring visit. However, there was a single student-specific finding of Child Find noncompliance observed during the monitoring visit. Specifically, this violation was related to the LEA's failure to consider the need for additional supports and/or specialized instruction for one student currently receiving Section 504 accommodations with a history of continued academic failure. This reflects a violation of **§104.35(b) – Section 504.** This student-specific finding of noncompliance is further described on page 2 of the 2017-2018 IDEA monitoring results summary located in Appendix C.

2. <u>Summary of LEA Compliance for IDEA Child Find Regulations</u>

All LEAs participating in the required targeted monitoring activities demonstrated systemic compliance for all IDEA Child Find regulations reviewed with a single student-specific finding of noncompliance observed for one school. Therefore, after observing the current status of each LEAs systemic compliance with IDEA Child Find regulations, verifying that all CAP activities were successfully completed and verifying that all observed student-specific findings of noncompliance were corrected in a timely fashion, the LDOE issued a "Notice of CAP Closure" to charter management officials via email at Joseph A. Craig Charter School on May 2, 2018; Sophie B. Wright Charter School on May 22, 2018; and Joseph A. Craig Charter School on May 30, 2018 indicating that no further corrective actions were warranted for these schools in the area of Child Find at this time (See Appendix C for a copy of these notifications).

3. <u>Three Year Comparison of Compliance for Child Find Provisions for the Spring 2016, Spring 2017 and Spring 2018 Semesters</u>

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Child Find Protocol is presented in the tables in Appendix C for each LEA selected for initial, targeted monitoring during the spring 2016 semester and follow-up targeted monitoring visits during the spring 2017 and spring 2018 semesters. In relation, the IMs evaluated the trend in compliance from the spring 2017 semester to the spring 2018 semester and status of compliance based on outcomes from the spring 2018 on-site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

### a. Joseph A. Craig Charter School

Based on a review of the data obtained during the protocol reviews conducting during the spring 2017 and spring 2018 semesters using the Consent Judgment Child Find Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eleven of eleven applicable items (100% of the applicable protocol items). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eleven applicable items. As previously mentioned in this status report, Joseph A. Craig Charter School did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

### b. Lake Area New Technology Early College High School

Based on a review of the data obtained during the protocol reviews conducting during the spring 2017 and spring 2018 semesters using the Consent Judgment Child Find Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eleven of eleven applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eleven applicable items. As previously mentioned in this status report, Lake Area New Technology Early College High School did not require corrective actions due to experiencing no systemic or student-specific findings of noncompliance.

*c. Sophie B. Wright Charter School*

Based on a review of the data obtained during the protocol reviews conducting during the spring 2017 and spring 2018 semesters using the Consent Judgment Child Find Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for four of four applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all four applicable items. As previously mentioned in this status report, Sophie B. Wright Charter School did not require corrective actions to address systemic concerns, however, school personnel were required to address student-specific concerns identified in their IDEA Monitoring Summary Report.

4. <u>Status of LDOE Compliance</u>

After participating in the monitoring visits for the charter schools requiring targeted, on-site follow-up monitoring visits in the area of Child Find and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(A)(3)(a-b) and Sections A(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2018 semester of the 2017-2018 school year.

B. **RELATED SERVICES**

1. Targeted Monitoring Activities for the Related Service Provisions

A single NOLA Charter LEA, International High School, was required to participate in targeted, on-site follow-up monitoring during the spring 2018 school semester to assess IDEA compliance after being placed on an Intensive Corrective Action Plan (ICAP) during the 2017-2018 school year to address issues related to IDEA Related Service requirements. A review of findings for this LEA is presented below.

*a. International High School of New Orleans*

The on-site targeted monitoring visit occurred on March 12, 2018. Two LDOE representatives and two IM were present during the entire on-site follow-up visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B (4)(b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at International High School of New Orleans clearly described the LEAs process for identifying students requiring Related Services, various service delivery methods, and the LEAs process for monitoring student progress. In summary, the findings of the staff interview indicated no concerns as staff demonstrated a satisfactory understanding of federal and state IDEA Related Service regulation. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in

section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten

students reviewed included the following exceptionalities: five students (50% of the

sample) with an exceptionality of Autism, two students (20% of the sample) with an

exceptionality of Multiple Disabilities (MD), one student (10% of the sample) with an

exceptionality of Hearing Impaired (HI), one student (10% of the sample) with an

exceptionality of Other Health Impaired (OHI) and one student (10% of the sample) with

an exceptionality of Intellectually Disabled (ID). Related Service provisions included

Speech Therapy only (3 students), Adaptive PE and Speech Therapy (4 students), Speech

Therapy and Occupational Therapy (one student), Occupational Therapy, Speech Therapy

and Adaptive PE (one student) and Speech Therapy and Orientation/Mobility Services

(one student).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a

manner consistent with the requirements outlined in section B(3)(a) on page 3 of

Addendum A of the CJ using the required Related Service protocol. Refer to page 4 of the

LDOE monitoring report for International High School of New Orleans in Appendix C

for a list of items that were reviewed to complete the Related Service protocol for the

sample of students. A review of student records revealed that nine of ten student files

(90% of the sample) were judged to be in compliance regarding IDEA Related Service

provisions indicating no systemic noncompliance. However, for one student file

reviewed, the monitoring team observed that a general education and special education

staff member failed to participate in the student's IEP meeting. As such, this reflects a

student-specific finding of noncompliance for IDEA §300.321(a)-(b)-IEP Team. This

single student-specific findings of noncompliance is listed on page 2 of the 2017-2018

IDEA monitoring results summary located in Appendix C.

2. Summary of LEAs Compliance for IDEA Related Service Regulations

International High School of New Orleans demonstrated systemic compliance for all IDEA Related Services regulations reviewed with only a single student-specific finding of noncompliance for IDEA Related Services provisions. Therefore, after observing the current status of each LEAs systemic compliance with IDEA Related Services regulations, verifying that all student-specific violations were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email on May 2, 2018 indicating that no further corrective actions were warranted for International High School in the area of Related Services at this time (See Appendix C for a copy of this notification).

3. Three Year Comparison of Compliance for Related Services Provisions for the Spring 2016, Spring 2017 and Spring 2018 Semesters

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Related Services Protocol is presented in the tables in Appendix B for each LEA selected for initial, targeted monitoring during the spring 2016 semester and follow-up, targeted monitoring visits during the spring 2017 and spring 2018 semesters. In relation, the IMs evaluated the trend in compliance from the spring 2017 semester to the spring 2018 semester and status of compliance based on outcomes from the spring 2018 on-site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

### a. International High School of New Orleans

Based on a review of the data obtained during the protocol reviews conducting during the spring 2017 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eight of eight applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eight applicable items. As previously mentioned in this status report, International High School of New Orleans did not require corrective actions to address systemic concerns, however, school personnel were required to address student-specific concerns identified in their IDEA Monitoring Summary Report.

### 4. Status of Compliance

After participating in the monitoring visits for the single charter school (i.e., International High School) requiring a follow-up targeted monitoring visit in the area of Related Services and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on- site meetings during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(B)(2)(a-b) of the CJ and Sections B(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2018 semester of the 2017-2018 school year.

**C.   DISCIPLINE**

1.   Targeted Monitoring Activities for the Discipline Provisions

There were no NOLA charter schools or OPSB LEAs requiring targeted, on-site follow-up monitoring during the spring 2018 school semester (i.e., third year monitoring reviews).

**D. ENROLLMENT**

1. Targeted Monitoring Activities for the Enrollment Stability Provisions

Two schools were required to participate in targeted, on-site follow-up monitoring during the spring 2018 school semester to assess IDEA compliance after being placed on Intensive Corrective Action Plans (CAPs) during the 2017-2018 school year to address issues related to IDEA Related Services (Enrollment Stability) requirements. The schools required to participate in targeted, on-site follow-up monitoring during the spring 2018 semester included Joseph A. Craig Charter School and Mildred Osborne Charter School. A review of findings for each school is presented below.

*a.   Joseph A. Craig Charter School*

The targeted, onsite follow-up monitoring visit occurred on March 13, 2018. Three LDOE representative and three IMs were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. The staff of Joseph A. Craig School clearly described the LEA's

policies and procedures for determining the related service needs for current and/or newly enrolled students, various service delivery methods based on student need and schedules and the LEA's procedures for evaluating/documenting related service provisions in sufficient detail. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix C.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) on and B(2)(b) on page 3 of Addendum A of the CJ. The sample of students reviewed included the following exceptionalities: three students (30% of the sample) with an exceptionality of Autism, five students (50% of the sample) with an exceptionality of Other Health Impaired (OHI) and two students (20% of the sample) with an exceptionality of Multiple Disabilities (MD).  Related Services provided included Speech/Language Therapy, Occupational Therapy and Physical Therapy (one student), Speech/Language Therapy only (3 students), Speech Therapy only (one student), Speech/Language Therapy and Health and Nursing Services (one student), Physical Therapy, Occupational Therapy and Adaptive PE (one student), Physical Therapy, Adaptive PE, Occupational Therapy and Speech/Language Therapy (one student), Speech Therapy, Adaptive PE and Physical Therapy (one student) and Speech/Language and Adaptive PE (one student).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Joseph A.

Craig Charter School in Appendix C for a list of items that were reviewed to complete the
Related Service protocol for the sample of students. A review of student records revealed
that eight of ten applicable student files reviewed (80% of the sample) were judged to be
in compliance regarding Related Service provisions. However, there were student-specific
findings of noncompliance for two of the students reviewed related to (a) the LEA's
failure to list Adaptive PE as a Related Service on the student's IEP and failure to ensure
that all appropriate team members attended the student's IEP meeting and (b) the LEA's
failure to describe a self-contained student's nonparticipation with nondisabled peers on
the IEP. These violations represent student-specific findings of noncompliance for IDEA
§300.320(a)(4) and (7)-Related Services and IDEA §300.321(a)-(b)-IEP Team,
respectively. These student-specific findings of noncompliance further described on page
2 of the 2017-2018 IDEA monitoring results summary located in Appendix C.

### b. Mildred Osborne Charter School

The targeted, on-site follow-up monitoring visit occurred on March 6, 2018. One
LDOE representative and one IM were present during the entire on-site visit to conduct
staff interviews and review student files. The staff interviews were conducted using a
standard bank of questions with staff members consistent with requirements outlined in
sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff
members who participated in the interview process are reported on page 3 of the LDOE
monitoring report. In summary, Mildred Osborne staff members clearly explained the
LEAs procedures for assessing the need for related services, securing, scheduling and
beginning service provisions in a timely manner and routinely assessing the impact of
service provisions on student progress toward achieving IEP goals in sufficient detail. A

summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in Appendix C.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)b on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities: one student (10% of the sample) with an exceptionality of Intellectually Disabled (ID), four students (40% of the sample) with an exceptionality of Other Health Impaired (OHI), one student (10% of the sample) with an exceptionality of Visually Impaired (VI), one student (10% of the sample) with an exceptionality of Orthopedic Impairment (OI) and three students (30% of the sample) with an exceptionality of Autism. Related Service provisions reviewed included Language Therapy only (one student), Physical Therapy, Occupational Therapy and Adaptive PE (one student), Language Therapy and Counseling Services (one student), Speech Therapy only (four students), Speech/Language Therapy and Adaptive PE (one student) and Speech Therapy, Occupational Therapy and Physical Therapy and Adaptive PE (one student) and Adaptive PE and Social Work Services (one student).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 3 of the LDOE monitoring report for Mildred Osborne Charter School in Appendix C for a list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that six of ten student files reviewed (60% of the sample) were judged

to be in compliance regarding Related Service provisions. However, there were student-specific findings of noncompliance observed for four students reviewed. Specifically, these concerns were related to (a) inadequate Present Levels of Academic and Functional Performance (PLAAFP) statement(s) for two students and (b) Annual IEP Goals and Short- Term Objectives that failed to include an objective method for measuring student progress for two students. This reflects student-specific findings of noncompliance for IDEA §300.320(a)(1)(i)(2)(i)-PLAAFP statements and IDEA §300.320(a)(2) and 300.160(5a)(b2ii)(c-9)-Measurable Annual Goals, respectively. These student-specific findings of noncompliance further described on page 2 of the 2017-2018 IDEA monitoring results summary located in Appendix C.

    2. <u>Summary of LEAs Compliance for IDEA Related Services Regulations</u>

Both LEAs participating in the required targeted monitoring activities to address Enrollment Stability demonstrated systemic compliance for all IDEA Related Services regulations reviewed with only student-specific IDEA Related Services violations being observed. Therefore, after noting the current status of both LEAs reviewed systemic compliance with IDEA Related Services (Enrollment Stability) regulations, verifying that all student-specific violations were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email on May 10, 2018 indicating that no further corrective actions were warranted for Joseph A. Craig Charter School and Mildred Osborne Charter School in the area of Enrollment (Related Services) at this time (See Appendix C for a copy of these notifications).

3. <u>Three Year Comparison of Compliance for Enrollment (Related Services) Provisions for the Spring 2016, Spring 2017 and Spring 2018 Semesters</u>

A comparison of the average percentage of compliance for each item (i.e., IDEA, Bulletin 1508 or Section 504 regulation) on the Consent Judgment Related Services Protocol is presented in the tables in Appendix B for each LEA selected for initial, targeted monitoring during the spring 2016 semester and follow-up, targeted monitoring visits during the spring 2017 and spring 2018 semesters. In relation, the IMs evaluated the trend in compliance from the spring 2017 semester to the spring 2018 semester and status of compliance based on outcomes from the spring 2018 on-site, follow-up monitoring visits that occurred from March 1-13, 2018. An overview of findings for each LEA is presented below.

   *a. Joseph A. Craig Charter School*

Based on a review of the data obtained during the protocol reviews conducting during the spring 2017 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eight of eight applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eight applicable items. As previously mentioned in this status report, Joseph A. Craig Charter School did not require corrective actions to address systemic concerns, however, school personnel were required to address student- specific concerns identified in their IDEA Monitoring Summary Report.

### b. *Mildred Osborne Charter School*

Based on a review of the data obtained during the protocol reviews conducting during the spring 2017 and spring 2018 semesters using the Consent Judgment Related Services Protocol, a positive trend (i.e., improvement in the provision of professional practices and/or submission of required documentation) was observed for eight of eight applicable items (100% of the applicable items on the protocol). In relation, outcomes were observed to be at or above the required criterion (e.g., 80% or more of the student sample met the 100% individual student compliance standard for any applicable regulation) for all eight applicable items. As previously mentioned in this status report, Mildred Osborne Charter School did not require corrective actions to address systemic concerns, however, school personnel were required to address student-specific concerns identified in their IDEA Monitoring Summary Report.

### 4. Status of Compliance

After participating in the on-site monitoring visits for the charter schools required to undergo follow-up targeted monitoring to assess IDEA compliance in the area of Related Services (Enrollment Stability) and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, Intensive Corrective Action Plans-ICAPs, technical assistance notifications) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2018 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(D)(7)(a-b) of the CJ and Sections D(1)(a-c) and

D(2)(a-c) of Addendum A of the CJ for the spring 2018 semester of the 2017- 2018 school year.

## IV. RECOMMENDATIONS

1.   As noted in previous IM status reports and this status report, the CJ specifies that the State Defendants shall be released from the terms of the CJ when they have 1) achieved Substantial Compliance with each provision of the Agreement for which they are assigned responsibility; 2) maintained Substantial Compliance for a period of two years; and 3) subject to Court approval (p. 18 of the CJ). As reported in previous IMs status reports, the LDOE was judged to establish "Substantial Compliance" with all targeted monitoring activities during the fall 2016 and spring 2017 school terms which represented the initial, full year of required substantial compliance. In relation, based on the findings reported here summarizing the spring 2018 targeted, on-site monitoring activities for LEAs requiring corrective action plans (CAPs) and intensive corrective action plans (ICAPs) plans during the 2017-2018 school year, the IMs suggest to the Court that the LDOE has successfully maintained "Substantial Compliance" for the first of two consecutive years of targeted monitoring reviews as required under the CJ. As such, the IMs recommend the LDOE shall continue to follow the targeted monitoring procedures as outlined in each substantive section of the CJ and on pages 1-12 of Addendum A of the CJ (i.e. continue to review charter school selection and verify LDOE calculations, select LEAs for targeted monitoring, perform staff interviews and student file reviews using the protocols as outlined in the CJ and Addendum A) until such time the LDOE achieves a second, full consecutive year of sustained "Substantial Compliance" with the required targeted monitoring activities specified in the CJ.

In relation, the IMs recommend to the Court that the LDOE shall continue to conduct initial and follow-up on-site targeted monitoring visits collaboratively with the IMs to obtain information from faculty and review student files to make compliance determinations in each area of the CJ. Based on comments and feedback provided by the Defendant's counsel on July 31, 2018, it should be reported that the Defendant's continue to have objections with the IMs interpretation of the CJ in relation to the timelines required for establishing and maintaining "Substantial Compliance" and maintain the LDOE has fulfilled these requirements of the CJ in this regard. Additionally, based on comments and feedback received from the Plaintiff's counsel on August 1, 2018, there continues be objection(s) to the IMs interpretation of the CJ as related to "Substantial Compliance" determinations (i.e. issuing compliance determinations prior to a LEA's successfully exiting CAPs and/or ICAPs). In addition, Plaintiff's counsel offered an additional objection to the IMs method for determining the status of "systemic compliance" for LEAs. As such, the IMs request that the Court schedule a status conference with all Parties as soon as practicable so these matters can be further discussed.

2.  As reported previously on page 50 of the IM status report to the court dated June 29, 2018, the IMs recommend to the Court that LDOE monitoring personnel and relevant OPSB personnel continue to provide the ongoing technical assistance and professional development necessary to ensure that LEAs requiring corrective actions during the 2018-2019 school year are afforded the resources necessary to adequately engage in the activities listed on the CAPs with adequate levels of fidelity to correct the identified areas of systemic noncompliance. In relation, the IMs continue to recommend that LDOE monitoring personnel and/or relevant OPSB personnel provide written updates of the status of compliance and progress for each

activity specified in each LEA's CAP to the IMs on a quarterly basis. The IMs agree to be available as requested by the LDOE to further assist in evaluating the status of compliance with the CAPs. Additionally, based on the transition of LEAs to the OPSB effective July 1, 2018, the IMs also recommend that the provision of specific professional development and technical assistance activities by the LDOE and OPSB be discussed during the status conference that will be scheduled by the Court as soon as practicable.

3.   As reported in this status update, positive trends were observed for the LEAs requiring CAPs or ICAPs during the 2017-2018 school year as 100% of the charter schools displayed no findings of systemic noncompliance during targeted, on-site follow-up monitoring visits during the spring 2018 school year. These findings of required systemic compliance with IDEA regulations are very encouraging. As such, all parties involved in making these improvements to ensure compliant and appropriate service provisions for students with disabilities should be commended. However, as noted in previous IM status reports, a consistent pattern with regard to findings of systemic noncompliance for LEAs identified for initial, on-site targeted monitoring continues to be observed. Specifically, 100% of the schools identified for targeted monitoring during the spring 2016 school term and fall 2016 school term required corrective actions to address findings of systemic noncompliance. In relation, 83% of the LEAs identified for targeted monitoring during the fall 2017 school term required formal corrective actions to address findings of systemic noncompliance. Therefore, when considering the ongoing concerns regarding systemic noncompliance identified in LEAs selected for initial onsite targeted monitoring since the formal initiation of targeted monitoring activities under the CJ, along with the fact that all NOLA charters that were previously under the jurisdiction of the Recovery School District have successfully

transitioned to the OPSB, the IMs continue to recommend the LDOE and OPSB work

together in a collaborative manner to develop a strategic and proactive action plan to address

each of the recommendations outlined by the IMs on pages 57-62 of the IM status reported

submitted to the Court on February 22, 2018 and pages 20-23 of the IM status report submitted

to the Court on February 23, 2018. The IMs also continue to agree to be available, if requested

by the LDOE and/or OPSB, to assist in the development of a strategic plan of action to

proactively address the issues mentioned above.