**Office of the Independent Monitors PB., et al., v. John White, et al**

**(Civil Case No. 2:10-cv-04049)**

**Status Report to the Court**

**October 20, 2020**

### INTRODUCTION

Pursuant to Section V(9) on page 16 of the Consent Judgment (CJ) filed with the Court on March 25, 2015, the Independent Monitor shall file with the Court and provide the Parties with reports describing the steps taken by the State Defendants and the Defendant-Intervenor to implement the Agreement and evaluate the extent to which the State Defendants and the Defendant-Intervenor have complied with each substantive provision of the Agreement.

The reports shall be provided to the Parties in draft form for comment at least 14 days prior to their issuance. The Monitor shall consider the Parties' responses and make appropriate changes, if any, before issuing the final report. Pursuant to Section V(9)(b) of the CJ, the Independent Monitor shall evaluate the status of compliance for each relevant provision of the Agreement using the following standards: (1) Substantial Compliance and (2) Noncompliance. The IM shall review a sufficient number of pertinent documents to accurately assess compliance. In relation, the IM shall be responsible for independently verifying representations from the State Defendants or Defendant-Intervenor regarding progress toward compliance and examining supporting documentation. Each Independent Monitor report shall describe the steps taken by the IM to assess compliance, including documents reviewed and the factual basis for each of the IM's findings. Pursuant to Section V(10) of the CJ, reports issued by the IM shall not be admissible against the State Defendants and the Defendant-Intervenor in any proceeding other than a proceeding related to the enforcement of this Agreement initiated and handled exclusively by the State Defendants, the Defendant-

1

Intervenor, or the Plaintiff's counsel.

The current IM bi-annual status report addresses activities completed by the State Defendants and Defendant-Intervenor during the 2019-2020 school term as required by the CJ. Specifically, the IMs provide a review and update regarding decisions of "Substantial Compliance" or "Noncompliance" as related to the annual development and dissemination of document and/or policy requirements outlined in the CJ as well as the provision of required professional development and technical assistance from the State Defendants, Defendant-Intervenor and/or approved consultants as outlined in the CJ. Finally, based on our review of the documentation provided by the State Defendants and Defendant-Intervenor, the IMs provide recommendations.

**DEVELOPMENT AND DISSEMINATION OF MODEL DOCUMENTS**

As reported in previous IM reports, the LDOE and/or OPSB previously developed several model documents designed to meet the specific requirements of the CJ (e.g., *Child Find Written Guidance* model template, *Special Education Program Description* model template, *Procedural Safeguards Checklist – Disciplinary Removal of Students with Disabilities* model template, model *Discipline Policy for Students with Disabilities*, *Undocumented Suspension Guidance* model template, *Parent FAQs: Special Education in Charter Schools* model template, *Enrollment Discrimination Policy Guidance* model template, *Disability Discrimination Complaint Procedures* model template).

The CJ requires that all Charter LEAs, whether under the direct jurisdiction of the OPSB or LDOE/RSD, provide evidence (i.e. administrator attestations) verifying these documents were reviewed or, when relevant, disseminated to staff and parents annually. The LDOE submitted updated model documents and related website links (e.g., 2019-2020 SY *Special*

2

*Education Program Description* model document) and signed attestations from school leaders or administrators regarding the review of model documents (e.g., *Child Find Written Guidance* model template, *Procedural Safeguards Checklist – Disciplinary Removal of Students with Disabilities* model template, model *Discipline Policy for Students with Disabilities*, *Undocumented Suspension Guidance* model template, *Parent FAQs: Special Education in Charter Schools* model template, *Enrollment Discrimination Policy Guidance* model template, *Disability Discrimination Complaint Procedures* model template) and related documents (e.g., LEA Student Codes of Conduct, LEA Parent Handbooks, LEA Student Handbooks) for six charter schools to the IMs for review from May 15, 2019 to June 18, 2019. It is important to note that that numerous NOLA/RSD Charter's (i.e. 3B Charters) transitioned to OPSB's jurisdiction during the 2019-2020 school term. Also, numerous NOLA/OPSB Charter Schools were closed prior to the beginning of the 2019-2020 school term.

In addition to evidence related to model document and dissemination requirements outlined in the CJ, LDOE legal counsel submitted a Power Point presentation entitled "Discipline of Students with Disabilities" designed to address the discipline professional development requirements outlined in (C)(3) of the CJ to the IMs for review on September 11, 2019. This information was presented by LDOE legal staff on September 19, 2019 and a make-up session was conducted on October 10, 2019. In relation, LDOE legal counsel submitted rosters and signatures of Charter school staff attending the discipline trainings to the IMs for review on October 15, 2019.

OPSB officials also submitted required documents (e.g., 2019-2020 attestations for the review of model documents by school leaders or administrators, school website links, PBIS model documents) for seventy-five charter and/or direct-run schools under the jurisdiction of OPSB to the IMs for review on September 5, 2019.  In relation, OPSB legal counsel also

submitted a Power Point presentation entitled "SPLC Mandatory Discipline Training" to address professional development requirements outlined in (C)(4) of the CJ to the IMs for review on September 18, 2019. Finally, OPSB officials provided the required discipline training to OPSB Charter school leaders on October 8, 2019. OPSB officials also submitted attendance rosters for the OPSB Discipline training to the IMs for review on October 24, 2019.

The following sections provide a status review or update for the State Defendants (LDOE) and Defendant-Intervenor (OPSB).

- Status Update for the State Defendants

    a. *Child Find Provisions (pp. 6-8 of the CJ)*

As reported in the IM status report submitted to the Court on August 20, 2020, the LDOE was judged to be in **Substantial Compliance** with Section IV (A)(1) (a-c) of the CJ for the 2015-2016, 2016-2017, 2017-2018 and 2018-2019 school terms based on the IMs annual review of the completed template entitled, *PB v White – Child Find Written Guidance.* In addition, based on the IMs review and verification that all required components were included in the 2019-2020 *PB v White – Child Find Written Guidance* document, the LDOE is also judged to be in **Substantial Compliance** for this CJ provision for the 2019-2020 school term.

In relation, the LDOE was previously judged to be in **Substantial Compliance** with Section IV(A)(2) for the 2015- 2016, 2016-2017, 2017-2018 and 2018-2019 school terms as all NOLA/OPSB Charter schools provided descriptions, through the *Special Education Program Description* template, of the school's staff and/or outside contractors providing pupil appraisal services. Based on completion of the 2019-2020 version of the S*pecial Education Program Description* template by all Charter schools under the jurisdiction of LDOE/OPSB, the LDOE is also judged to be in **Substantial Compliance** with Section IV (A)(2) of the CJ for the 2019-2020 school year.

Finally, in relation to the dissemination requirements for the *PB v White - Child Find Written Guidance* document under Section IV(A)(4)(a-e) of the CJ, the LDOE was previously judged to be in **Substantial Compliance** during the 2015-2016, 2016-2017, 2017-2018 and 2018-2019 school terms. Similarly, based on the receipt of signed attestations from each NOLA/OPSB Charter school verifying that each school leader or school administrator reviewed the *PB v White – Child Find Written Guidance* document and understand the legal requirements of the policy, the LDOE is also judged to be in **Substantial Compliance** with Section IV (A)(4)(a-e) for the 2019-2020 school year.

   b.  *Related Services Provisions (pp. 8-9 of the CJ)*

The LDOE, based on the annual submission of updated *Special Education Program Description* templates describing a full array of related service offerings across all NOLA/OPSB charter schools, was previously judged to be in **Substantial Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2015-2016, 2016-2017, 2017-2018 and 2018-2019 school terms. Based on the LDOE's submission of the updated *Special Education Program Description* templates to the IMs and placement of the templates on the required websites, the LDOE is also judged to be in **Substantial Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2019-2020 school year.

c. *Discipline Provisions (pp. 9-11 of the CJ)*

As reported in previous IM updates, the LDOE was judged to be in **Noncompliance** with the discipline provisions outlined in Section IV(C)(1)(a)(i-ii) of the CJ for the 2015-2016 school year as reported on page 41 of the IM status report dated June 3, 2016. However, the LDOE was subsequently judged to be in **Substantial Compliance** with Section IV(C)(1)(a)(i-ii) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. Based on the submission of the required documentation related to discipline regulations and safeguards for

students with disabilities (i.e., signed attestations regarding approved discipline policies for the 2019-2020 school year, updated Student Handbooks and policies related to school-wide and tiered positive behavior support provisions, etc.) the LDOE is also judged to be in **Substantial Compliance** with Section IV(C)(1)(a)(i-ii) for the 2019-2020 school year.

Also, as reported in previous IM updates, the LDOE was judged to be in **Substantial Compliance** with Technical Assistance provisions of Section IV (C)(3)(a-b) for the CJ for the 2015-16, 2016-2017, 2017-2018 and 2018-2019 school terms based on the IMs review of related technical assistance material including the *PB v White – Undocumented Suspension Guidance* template, the *Parent FAQs: Special Education in Charter Schools* template, and verification documents (e.g., signed attestations of dissemination of these documents) provided by each LEA. Based on the IMs review of the above-mentioned documents submitted by LDOE legal counsel, the LDOE is also judged to be in **Substantial Compliance** with the provisions outlined in Section IV (C)(3)(a-b) for the 2019-2020 school term.

As reported in previous IM updates with regard to the required annual training on IDEA Discipline regulations, the LDOE was previously judged to be in **Noncompliance** with the annual professional development provisions of Section IV(C)(3) for the CJ for the 2015-16 year. However, the LDOE was subsequently judged to be in **Substantial Compliance** with the technical assistance and annual professional development activities required in Section IV(C)(3)(a-b) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. Based on the evidence submitted to the IMs verifying signed attestations from all school principals or school leaders for the *PB v White– Undocumented Suspension Guidance* and *Parent FAQs: Special Education in Charter Schools* and verification that representatives from each LEA attended the professional development workshop entitled "Discipline of Students with Disabilities" on September 19, 2019 and/or October 10, 2019, the LDOE is also judged to be in **Substantial**

6

**Compliance** with the technical assistance and annual professional development activities required in Section IV(C)(3)(a-b) of the CJ for the 2019-2020 school year.

   c. *Enrollment Provisions (pp. 11-15 of the CJ)*

  As reported in the IM Status Report dated June 3, 2016, the LDOE policy document entitled, *Enrollment Discrimination Policy Guidance*, was approved by all parties and fully met the required guidelines as outlined in Section IV(D)(1)(a-b) of the CJ. However, as previously reported, the LDOE was judged to be in **Noncompliance** with this requirement of the CJ for the 2015-2016 school year. Subsequently, based on submission of the signed attestations (e.g., *Attestation of Review of Enrollment Discrimination Policy Guidance*), the LDOE was judged to be in **Substantial Compliance** with the completion of this implementation activity as required under Section IV (D)(1)(a-b) of the CJ for the 2016- 2017, 2017-2018 and 2018-2019 school terms. Similarly, based on the submission of signed attestations indicating that each school leader or school administrator reviewed the *Enrollment Discrimination Policy Guidance* document, the LDOE is also judged to be in **Substantial Compliance** with Section IV(D)(1)(a-b) of the CJ for the 2019-2020 school year.

  The LDOE was also judged to be in **Substantial Compliance** with the requirements of Section IV(D)(3) for the 2015-2016, 2016-2017, 2017-2018 and 2018-2019 school terms for submitting the revised, if applicable, *PB v White – Special Education Program Description* template for review by ensuring that all charter LEAs submitted completed program descriptions as required under the CJ. However, the LDOE was previously judged to be in **Noncompliance** for the 2015-2016 school year for failure to comply with the dissemination requirements outlined in Section IV(D)(3) of the CJ. As indicated in previous IM updates to the Court, the LDOE was subsequently judged to be in **Substantial Compliance** with this dissemination provision of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms.

7

Based on the submission of required documentation and NOLA Charter schools adherence to the dissemination requirements outlined in this section of the CJ, the LDOE is also judged to be in **Substantial Compliance** with the requirements of Section IV(D)(3) of the CJ for the 2019-2020 school term.

As reported in previous IM status reports to the Court, the LDOE has also been previously judged to be in **Substantial Compliance** with the adoption of *[LEA] Disability Discrimination Complaint Procedures* LEA complaint procedures and related dissemination requirements as outlined in Section IV(D)(5)(a-b) of the CJ for the 2015-2016, 2016-2017, 2017-2018 and 2018-2019 school terms. Finally, LDOE legal counsel submitted signed attestations to the IMs certifying that the LDOE received no formal allegations of enrollment discrimination arising under Section 504 of the Rehabilitation Act of Title II of the Americans with Disabilities Act during the 2019-2020 school term, As such, LDOE is also judged to be in **Substantial Compliance** with Section IV(D)(5)(a-b) of the CJ for the 2019-2020 school year.

Finally, LDOE legal counsel submitted signed attestations to the IMs certifying that the LDOE received no formal allegations of enrollment discrimination arising under Section 504 of the Rehabilitation Act of Title II of the Americans with Disabilities Act (Section 504) during the 2019-2020 school term. It should be noted that complaints under Section 504 are to be filed either with a Local Education Agency (LEA) or the federal Office of Civil Rights (OCR). Neither the federal law, state statutes, nor the LDOE's regulations require parents to file Section 504 complaints with the LDOE before exercising either the LEA or OCR complaint option.

Summary of the Status of Compliance Determinations for the State Defendants

As reported in previous IM updates submitted to the Court, The LDOE was previously

judged to be in **Substantial Compliance** with ten of fourteen (71%) substantive provisions of the CJ regarding the development, adoption, and dissemination of model documents and required professional development during the 2015-2016 school year. The LDOE has subsequently established and maintained substantial compliance for 100% the above-mentioned requirements outlined in the CJ for the 2016-2017, 2017-2018, 2018-2019 and 2019-2020 school terms. To date, the LDOE has achieved an initial year of compliance with all substantive provisions outlined in the CJ and has maintained compliance with these CJ provisions for three consecutive school terms.

 2. Status Update for the Defendant-Intervenor

  *a. Child Find Provisions (pp. 6-8 of the CJ)*

The OPSB initially adopted the *PB v White – Child Find Written Guidance* document for the 2016-2017 school year. As such, the IMs did not provide a judgment of compliance for the 2015-2016 school year as reported in previous IM status updates. However, based on the IMs subsequent reviews of the updated *PB v White - Child Find Written Guidance* document and receipt of signed attestations from each OPSB Charter school principal or school leader, the OPSB was judged to be in **Substantial Compliance** with Section IV (A) (1) (a-c) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. In relation, based on the IMs review indicating the 2019-2020 version of the Child Find Written Guidance document was reviewed appropriately by all Charter Schools under its jurisdiction, the OPSB is also judged to be in **Substantial Compliance** for this CJ provision for the 2019-2020 school term.

As reported in previous IM updates, with regard to the development and dissemination requirements under the CJ related to the *OPSB Special Education Program Description* document, the OPSB has been previously judged to be in **Substantial Compliance** with IV(A)(2) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. In relation, based on a review of updated

*Special Education Program Description* documents for the 2019-2020 school year and verification that all Charter schools under OPSB jurisdiction established a website link to the OPSB *Special Education Program Description* document and/or Charter LEAs *Special Education Program Description* document, the OPSB is also judged to be in **Substantial Compliance** with this section of the CJ for the 2019-2020 school year.

Finally, based on the IMs review and verification of signed attestations from OPSB Charter principals or school leaders indicating the dissemination of the *PB v White Child Find Written Guidance* document, was previously judged to be in **Substantial Compliance** Section IV (A) (4) (a-e) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. Further, based on the IMs review of required documentation (e.g., signed attestations from each school leader or school principal indicating their understanding of the legal and dissemination requirements of the *Child Find Written Guidance document*), the OPSB is also judged to be in **Substantial Compliance** with this section of the CJ for the 2019-2020 school year.

b. *Related Services Provisions (pp. 8-9 of the CJ)*

The OPSB was previously judged by the IMs to be in **Substantial Compliance** with Section IV(B)(1)(a-b) of the CJ for the 2015-2016, 2016-2017, 2017-2018 and 2018-2019 school terms as reported in previous IM updates. In relation, based on the IMs review of the completion of the required sections of the *Special Education Program Description* template describing the wide array of related services available across all OPSB Charter schools and placement of this information on each charter school website, the OPSB is also judged to be in **Substantial Compliance** Section IV(B)(1)(a-b) of the CJ for the 2019-2020 school year.

c. *Discipline Provisions (pp. 9-11 of the CJ)*

As reported in previous updates, compliance for Section IV (C) (2)(a)(i-ii) of the CJ could not be evaluated until each charter LEA provided written descriptions of the IDEA's

10

disciplinary procedural protections and procedural safeguards for students with disabilities, and their plan for supporting school behavior and discipline in compliance with the requirements of La. Rev. Stat. § 17:251- 252 (p. 10 of CJ). As such, the OPSB was judged to be in **Noncompliance** with this CJ requirement for the 2015- 2016 school year. Subsequently, as reported in the IMs draft status report submitted to the Court on July 14, 2019, based on the adoption of the LDOE *Discipline Policy & Procedures of Students with Disabilities* policy document and the IM's receipt of required documentation (e.g., signed attestations from all charter school principals under OPSB's jurisdiction, submission of the Student Assistant Team Handbook, Student Codes of Conduct), the OPSB was judged to be in **Substantial Compliance** with Section IV(C)(2)(a)(i-ii) for the 2016- 2017 2017-2018 and 2018-2019 school terms. In relation, based on the continued adoption of the LDOE *Discipline Policy & Procedures of Students with Disabilities* document and the IM's review of all required documentation, the OPSB is also judged to be in **Substantial Compliance** with Section IV (C) (2)(a)(i-ii) of the CJ for the 2019-2020 school year

As reported on in the IM status report submitted to the Court on June 3, 2016, OPSB was judged to be in **Noncompliance** with the technical assistance and professional development provisions of Section IV (C) (4)(a-b) for the CJ for the 2015-2016 school year. Subsequently, reported in previous IM updates, the OPSB was judged to be in **Substantial Compliance** with the technical assistance and professional development provisions of Section IV (C) (4)(a-b) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. Further, based on the IMs review of the required discipline training and the OPSB's submission of required documents (e.g., attendance rosters for discipline training, receipt of signed attestations regarding the dissemination of the *Parent FAQs: Special Education in Charter Schools* document and review of the *PB v White – Undocumented Suspension Guidance* document), the OPSB is also currently

11

judged to be in **Substantial Compliance** with the technical assistance and professional development activities required in this Section IV (C) (4)(a-b) of the CJ for the 2019-2020 school year.

 *d. Enrollment Provisions (pp. 11-15 of the CJ)*

 As reported in previous IM updates, the OPSB formally adopted the LDOE *Enrollment Discrimination Policy Guidance* document. However, as discussed in the June 3, 2016 IM status report, the OPSB was judged to be in **Noncompliance** with the attestation requirements under Section IV(D)(2)(a-b) of the CJ for the 2015-2016 school year.  Subsequently, after the IMs annual receipt and review of signed attestations from all of OPSB school administrators verifying the receipt and review of the annual *Enrollment Discrimination Policy Guidance* document, the OPSB was previously judged to be in **Substantial Compliance** with the provisions required under Section IV(D)(2)(a-b) for the 2016- 2017, 2017-2018 and 2018-2019 school terms. Further, based on the IMs receipt of require documentation (e.g., signed attestations from each school administrator verifying receipt and review of the *Enrollment Discrimination Policy Guidance* document, the OPSB is also currently judged to be in **Substantial Compliance** with Section IV(D)(2)(a-b) of the CJ for the 2019-2020 school term.

 As reported in previous IM updates, the OPSB adopted the LDOE *Special Education Program Description* template and submitted a completed program description template for OPSB for the 2015-2016 school year. As such, OPSB was judged to be in **Substantial Compliance** with this requirement outlined in Section IV (D) (4) of the CJ for the 2015-2016 school term. However, as a result of OPSB's failure to comply with the specific dissemination requirements of this section of the CJ, the OPSB was judged to be in **Noncompliance** for this CJ requirement for the 2015-2016 school year. Subsequently, as reported in the IM draft status report dated July 14, 2020, the OPSB was judged to be in Substantial Compliance with all requirements outlined in Section IV

(D) (4) for the 2016-2017, 2017-2018 and 2018-2019 school terms. Further, after the IMs receipt and review of all *Special Education Program Description* template across all OPSB Charter schools verifying the inclusion of all required components and appropriate descriptions of service provisions for students with disabilities as required in Section IV(D)(4) of the CJ, the OPSB is also currently judged to be in **Substantial Compliance** with the requirements outlined in this CJ requirement for the 2019-2020 school year. In relation, with regard to the dissemination requirements outlined in this Section IV(D)(4) of the CJ, the OPSB has been previously judged to be in **Substantial Compliance** with this provision of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. The IMs have verified that all Charter schools under OPSB's jurisdiction successfully established the required website link to the 2019-2020 updated version of the *OPSB Special Education Program Description* template. As such, the OPSB is also currently judged to be in **Substantial Compliance** with this requirement under IV(D)(4) of the CJ for the 2019-2020 school year.

In relation to enrollment discrimination on the basis of disabilities, as reported in previous IM updates, the OPSB was judged to be in **Noncompliance** with fulfilling the required implementation activities as outlined in Section IV(D)(6) of the CJ for the 2015-2016 school term. Subsequently, as reported in the IM draft update dated July 14, 2020, based on the IMs receipt and verification that all required complaint policies and procedures (e.g., adoption of the OPSB *Disability Discrimination Complaint Procedures* policy document), as well as, complaint dissemination requirements (e.g., establishment of the required website link to the document), the OPSB has been previously judged to be in **Substantial Compliance** with the requirements outlined in Section IV(D)(6) of the CJ for the 2016-2017, 2017-2018 and 2018-2019 school terms. Further, based on the IMs review of required documents and verification of dissemination requirements (i.e. website links), the OPSB is also currently judged to be in **Substantial**

**Compliance** with Section IV(D)(6) of the CJ for the 2019-2020 school year.

Finally, in relation to enrollment discrimination complaints under Section 504, OPSB officials reported receiving no complaints on behalf of individuals with disabilities during the 2019-2020 school term. It should be noted that OPSB's Section 504 grievance protocol only applies to the schools under the OPSB's LEA. It does not apply to the charter schools operating as independent LEAs.

Finally, in relation to enrollment discrimination complaints under Section 504, OPSB officials reported receiving no complaints on behalf of individuals with disabilities during the 2019-2020 school term. It should be noted that OPSB's Section 504 grievance protocol only applies to the schools under the OPSB's LEA and does not apply to the charter schools operating as independent LEAs. In relation, the OPSB also employs a formal complaint process for all parents of students with disabilities who attend charter schools operating as an independent LEA. Under this process, OPSB will investigate reports of disability discrimination that meet the criteria of a formal complaint under its Disability Discrimination Complaint Procedures (https://nolapublicschools.com/documents/disability-discrimination-compliant-procedures/downloadunder). While reports of misconduct that do not meet these criteria are not investigated as formal complaints, reports that do qualify are managed by the OPSB's Protfolio, Innovation, and Accountability Team. Finally, in addition to the formal complaint process for disability discrimination, all parents with children attending an OPSB LEA and/or a NOLA charter school operating as an independent LEA may visit the OPSB website (https://nolapublicschools.com/families/parents-resources/questions) where, under the Questions or Concerns tab, parents and/or community members are provided with detailed instructions on how to raise school level concerns.

14

<u>Summary and Status of Compliance Determinations for the Defendant-Intervenor</u>

As previously reported, the OPSB was judged to be in **Substantial Compliance** with four of fourteen (29%) substantive provisions of the CJ regarding the development, adoption, and dissemination of model documents and required professional development for the 2015-2016 school year. Subsequently, the OPSB has been judged to be in **Substantial Compliance** with fourteen of fourteen (100%) of the above-mentioned substantive provisions in the CJ for which they have assigned responsibility for the 2016-2017, 2017-2018, 2018-2019 and 2019-2020 school terms. To date, the OPSB has achieved an initial year of compliance with all substantive provisions outlined in the CJ and has maintained compliance with these CJ provisions for three consecutive school terms.

## B. RECOMMENDATIONS

The following recommendations pertain to the development, adoption, and dissemination of model documents and required professional development outlined in the CJ:

1. It is initially recommended the LDOE and OPSB continue to submit revisions to any of the approved documents (e.g., *Child Find Written Guidance* model template, *Special Education Program Description* model template, *Procedural Safeguards Checklist – Disciplinary Removal of Students with Disabilities* model template, model *Discipline Policy for Students with Disabilities*, *Undocumented Suspension Guidance* model template, *Parent FAQs: Special Education in Charter Schools* model template, *Enrollment Discrimination Policy Guidance* model template, *Disability Discrimination Complaint Procedures* model template) to the IMs for review annual for the entire duration of the CJ. The IMs will continue to verify that the content of these documents is consistent with the requirements outlined in the CJ.

15

2. The IMs also recommend the LDOE and OPSB continue to disseminate the required documents to Charter schools/LEAs annually and require administrators (e.g., school leaders, school principals) to submit the required documentation (e.g., signed attestations for the review of model documents, annual updates to all sections of the *Special Education Program Description* model template, website links to verify placement of model documents on LEA websites, updates to model positive behavior support and discipline policies including Codes of Conduct and Student Handbooks) annually for the entire duration of the CJ. The IMs will continue to verify that school principals or school leaders have submitted signed attestations indicating that they will adhere to the guidelines established in the CJ and these documents or submitted any revisions to model documents for review prior to final adoption and/or placement on school-based websites.

3. The LDOE and OPSB should continue to provide technical assistance and annual professional development activities required in Section IV(C)(3)(a-b) and Section IV(C)(4)(a-b) for the duration of the CJ. The LDOE and OPSB should also continue to submit evidence of professional development and technical assistance (e.g., training materials, attendance rosters) to the IMs annually for the entire duration of the agreement. Additionally, when considering the ongoing COVID-19 pandemic, it is likely that many NOLA/OPSB charter schools will be providing some measure of on-line or distance learning opportunities for students with disabilities at some point during the 2020-2021 school term. As such, the IMs recommend that OPSB and LDOE officials modify the annual discipline training materials to include guidance related to responding to discipline concerns with students with

16

disabilities within a remote or distance learning environment. The IMs will continue to verify that the provision of technical assistance and annual professional development is consistent with the requirements of the CJ. The LDOE should also continue to adhere to the requirements in Section IV(D)(5)(b) addressing formal disability discrimination complaints and provide updates to the IMs regarding the filing of any formal complaints annually by January 15th and July 15th for the entire duration of the CJ. The IMs will continue to monitor formal disability enrollment discrimination complaints filed with the LDOE/OPSB each school year to verify compliance with this section of the CJ and report these findings in future status updates.

4. Finally, in light of the ongoing COVID-19 pandemic, it is recommended that all NOLA/OPSB charter schools update their Special Education Program Descriptions for the 2020-2021 term to include a section specifying how students with disabilities will be provided with instruction (i.e. remote/distance and/or hybrid instruction) and the required instructional accommodations and/or modifications and related service provisions outlined in each students' IEP to ensure FAPE.