**Office of the Independent Monitors**
**P.B., et al., v. John White, et al. (Civil Case No. 2:10-cv-04049)**
**Status Report to the Parties**

**December 11, 2020**

## I. INTRODUCTION

Pursuant to Section V(9) on page 16 of the Consent Judgment (CJ) filed with the Court on March 25, 2015, the Independent Monitors shall file with the Court and provide the Parties with reports describing the steps taken by the State Defendants and the Defendant-Intervenor to implement the Agreement and evaluate the extent to which the State Defendants and the Defendant-Intervenor have complied with each substantive provision of the Agreement. Pursuant to Section V(9)(a), the Monitor shall issue a status report every 120 days after the first year of implementation of the Agreement. The reports shall be provided to the Parties in draft form for comment at least 14 days prior to their issuance. The Monitor shall consider the Parties' responses and make appropriate changes, if any, before issuing the report. These reports shall be written with due regard for the privacy interests of the students. Pursuant to Section V(9)(b) of the CJ, the Independent Monitors shall evaluate the state of compliance for each relevant provision of the Agreement using the following standards: (1) Substantial Compliance and (2) Noncompliance. In order to assess compliance, the Monitor shall review a sufficient number of pertinent documents to accurately assess compliance and interview any necessary staff or personnel. The Monitor shall also be responsible for independently verifying representations from the State Defendants or Defendant-Intervenor regarding progress toward compliance and examining supporting documentation. Each Monitor report shall describe the steps taken by the Monitor to

1

assess compliance, including documents reviewed and individuals interviewed, and the factual basis for each of the Monitor's findings. Pursuant to Section V(10) of the CJ, reports issued by the Monitor shall not be admissible against the State Defendants and the Defendant-Intervenor in any proceeding other than a proceeding related to the enforcement of this Agreement initiated and handled exclusively by the State Defendants, the Defendant- Intervenor, or the Plaintiff's counsel.

The current IM status report addresses follow up monitoring activities completed by the State Defendants during the 2018-2019 school year as required under the provisions outlined in the CJ. First, the IMs provide a summary of findings for targeted, on-site follow-up monitoring activities completed during the spring 2019 semester for NOLA/OPSB charter schools that were required to implement Corrective Action Plans (i.e., CAPs and/or ICAPs) during the 2018-2019 school year to address specific areas of previously identified systemic noncompliance in the areas of Child Find, Related Services, Discipline and Enrollment Stability. Second, the IMs provide a summary of "Substantial Compliance" or "Noncompliance" decisions as related to specific follow-up monitoring activities undertaken by the LDOE (e.g., student selection, completion of staff interviews and student file reviews, development and dissemination of LEA targeted monitoring reports and development and dissemination of Intensive Corrective Action Plans (ICAPs), when applicable). The sequence of information in this IM status report follows the general structure of the CJ. Language from each substantive provision of the Agreement or Addendum A (i.e., monitoring protocols) outlined in the CJ is incorporated into the IM status report, when appropriate.

II. **TARGETED FOLLOW-UP MONITORING ACTIVITIES CONDUCTED DURING THE SPRING 2019 SEMESTER FOR NOLA/OPSB CHARTER SCHOOLS REQUIRING CORRECTIVE ACTIONS TO ADDRESS PREVIOUSLY IDENTIFIED SYSTEMIC AND STUDENT-SPECIFIC NONCOMPLIANCE UNDER THE IDEA.**

The LDOE engaged in targeted, on-site follow-up monitoring activities for the ten NOLA/OPSB charter schools required to implement Corrective Action Plans (i.e., CAPs or ICAPs) during the spring 2018 and 2018-2019 school terms to address previously observed findings of systemic noncompliance as identified in the 2017-2018 LDOE regular and/or follow-up Monitoring Summary Reports. The IMs report the activities and decisions made by the LDOE as related to the required on-site, follow-up monitoring activities for each relevant provision of the CJ.

All NOLA/OPSB charter schools participating in on-site targeted follow-up monitoring reviews conducted during the spring 2019 school term were sent a notification email from LDOE Director of State-wide Monitoring on January 17, 2019 (see the Appendix for a copy of each email). This notification provided an overview of the requirements for follow-up, on-site targeted monitoring pursuant to the CJ, the specific areas in which the charter was being monitored, methods of monitoring (e.g., student file selection, staff interviews, student file reviews, etc.), LDOE contact personnel, the specific date of interviews with staff, instructions for the on-site monitoring visit, and copies of the staff interview questions and student file review protocols.

LDOE monitoring personnel submitted the targeted, on-site follow-up monitoring schedule for the spring 2019 school term to the IMs on 11-8-2018. In addition, the LDOE

3

also submitted the rosters of randomly-selected students from each NOLA/OPSB charter school requiring follow-up, on-site targeted monitoring on March 7, 2019. LDOE monitoring personnel and the IMs conducted on-site staff interviews and student file reviews from March 18-21, 2019 using documents required by the CJ. The IMs and LDOE monitoring personnel scored student file review protocols independently and reconciled any scoring differences at the end of each on-site monitoring visit. As mentioned in previously submitted IM status reports, based on agreements among all parties during a meeting held on September 22, 2016, compliance determinations for individual students shall be consistent with the 100% compliance standard outlined in the IDEA. That is, during all targeted monitoring activities, <u>any single finding</u> of noncompliance for any specific IDEA regulation being assessed for an individual student was judged to reflect noncompliance and required immediate individual corrective action (i.e., student-specific areas of noncompliance outlined in the IDEA Monitoring Summary and individual corrective actions as part of the LEA's Corrective Action Plan). Similarly, all parties agreed that systemic noncompliance would be determined when less than 80% of the student sample failed to meet the 100% individual student compliance standard for any IDEA requirement evaluated on the CJ protocol and would result in mandatory systemic corrective actions (i.e., Corrective Action Plan or Intensive Corrective Action Plan) for the NOLA/OPSB charter school monitored.

The LDOE monitoring personnel submitted draft reports to the IMs on April 26, 2019 for review and feedback. The IMs submitted recommended edits to the draft monitoring reports on May 11, 2019. The LDOE submitted cover letters and final monitoring reports to the IMs on May 28, 2019. These documents are provided in the

Appendix for review by all parties.

In addition to completing the targeted, on-site monitoring follow-up reviews and monitoring reports, LDOE officials held technical assistance meetings with all NOLA/OPSB charter schools placed on Corrective Action Plans (CAPs) during the spring 2018 and 2018-2019 school terms on May 8-17, 2018.  These technical assistance meetings focused on reviewing the monitoring report, results summary and the Corrective Action Plan (CAP) with each NOLA/OPSB charter school requiring corrective actions. In addition, LDOE officials reviewed/discussed specific activities, deliverables and timelines required under each of each NOLA/OPSB requiring corrective actions. Various resources were also provided to assist school officials with the implementation of CAP activities. In addition, other forms of technical assistance and professional services provided to school personnel by the LDOE to assist with complying with the requirements of the CAPs included (a) "hands on" on-site professional development meetings to address policies and procedures related to Child Find regulations, Discipline procedures and Related Service provisions, (b) a minimum of one on-site technical assistance visit with all schools placed on CAP to review appropriate Child Find, Discipline and/or Related Service practices and procedures and provide feedback to school staff on current practices and/or concerns and (c) ongoing technical assistance throughout the school year to via various forms of service delivery (e.g., weekly email correspondence, weekly or bi-weekly telephone conferences, face-to-face meetings with school personnel at school sites and/or at the LDOE building) to address specific issues relevant to appropriate Child Find, Discipline and Related Service activities and provisions to ensure compliance under the IDEA.

The IMs review of compliance with the targeted, on-site follow-up monitoring provisions of the CJ for the spring 2019 semester of the 2018-2019 school term consisted

5

of an evaluation of two components of the LDOE's monitoring activities. Specifically, the components being assessed for compliance included: (1) Completion of targeted monitoring activities by the LDOE as required by the CJ and Addendum A to the CJ (e.g., completion of appropriate monitoring activities by the LDOE, completion of staff interviews, appropriate selection of student files, appropriate completion of the monitoring protocols, and correct identification of systemic or individual compliance and/or noncompliance) and (2) the development of appropriate corrective actions "sufficient to remedy the noncompliance and to reasonably ensure that such noncompliance does not reoccur." (pp. 7, 9, 11, 14 of CJ), if warranted. As such, the current IM status report provides a review of monitoring activities and findings for each LEA requiring targeted follow-up monitoring under each area of the CJ (e.g., Child Find, Related Services, Discipline, and Enrollment Stability) along with IM determinations regarding compliance with the monitoring provisions of the CJ. Finally, the IMs professional recommendations are provided at the conclusion of this report.

### A. CHILD FIND

1. <u>Targeted Follow-Up Monitoring Activities for the Child Find Provisions</u>

Two NOLA/OPSB schools were required to undergo targeted, on-site follow-up monitoring visits during the spring 2019 school semester to assess IDEA compliance after being place on Corrective Action Plans (CAPs) during the spring 2018 and 2018-2019 school terms to address issues of IDEA noncompliance in the area of Child Find regulations. The NOLA/OPSB charter schools requiring targeted, on-site follow-up monitoring during the spring 2019 semester included Warren Easton Senior High Charter School and Mary Bethune Literature and Technology Elementary

Charter School. A review of findings for each school is presented below.

    *a. Warren Easton Senior High Charter School*

The on-site targeted follow-up monitoring visit for Warren Easton Senior High Charter School occurred on March 18, 2019. Two LDOE representatives and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Appropriate faculty representatives for Warren Easton Senior High Charter School clearly articulated their responses regarding the school's implementation of mandated state and federal Child Find policies and procedures. No specific areas of concern were identified from the interview. A detailed summary of staff responses is presented on pages 3 of the LDOE monitoring report located in the Appendix.

A representative sample of ten student files for students were reviewed by LDOE monitoring personnel and the IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of three students (30% of the sample) who had current Section 504 Accommodation Plans, three students (30% of the sample) who were failing two or greater subjects and under consideration by the School Building Level Committee (SBLC) and four students (40% of the sample) who were participating in the Response to Intervention (RTI) process.

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum

A of the CJ using the required Child Find protocol. Please refer to page 4 of the LDOE monitoring report for Warren Easton Senior High Charter School in the Appendix for a list of items that were reviewed to complete the Child Find protocol for the sample of students.

A review of student records revealed that ten of ten student files (100% of the sample) were judged to be in compliance regarding required IDEA Child Find regulations. In sum, no systemic or student-specific findings of noncompliance were identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2019 on-site, follow-up targeted monitoring visit.

   b. *Mary Bethune Literature and Technology Elementary Charter School*

The on-site targeted monitoring visit for Mary Bethune Literature and Technology Elementary Charter School occurred on March 19, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 2 of the LDOE monitoring report. Faculty representatives for Mary Bethune Literature and Technology Elementary Charter School clearly articulated their responses regarding the Child Find process and provided satisfactory answers to all interview questions. The monitoring team judged the interview team's comments to be comprehensive and indicative of a knowledgeable framework necessary to sufficiently implement the SBLC and IDEA Child Find processes in accordance with legal mandates. No specific areas of concern were identified from the interview as school

8

staff demonstrated thorough awareness of state policies and procedures. A detailed summary of staff responses is presented on pages 3 of the LDOE monitoring report located in the Appendix.

A representative sample of ten student files for students enrolled in Mary Bethune Elementary Charter School were reviewed by LDOE monitoring personnel and the IMs in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of three students (30% of the sample) who had current Section 504 Accommodation Plans, four students (40% of the sample) who were participating in the Response to Intervention (RTI process) and three students (30% of the sample) who were under consideration by the School Building Level Committee (SBLC).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 4 of the LDOE monitoring report for Mary Bethune Literature and Technology Elementary Charter School in the Appendix for a list of items that were reviewed to complete the Child Find protocol for the sample of students.

A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged to reflect compliance regarding Child Find activities. In sum, there were no systemic or student-specific findings of noncompliance identified for this LEA under IDEA, Part B program in the area of Child Find during the spring 2019 on-site, follow-up targeted monitoring visit.

2. Summary of Charter School Compliance for IDEA Child Find Regulations

The practices, policies and procedures observed during required on-site follow-up targeted monitoring revealed that both Warren Easton Senior High Charter School and Mary Bethune Literature and Technology Elementary Charter School demonstrated systemic compliance for all IDEA Child Find regulations reviewed. In addition, there were no student-specific IDEA violations observed during this follow-up targeted (Child Find) monitoring reviews. Therefore, after observing the current status of systemic compliance with all assessed IDEA Child Find regulations and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to Warren Easton Senior High Charter School and Mary Bethune Literature and Technology Elementary Charter School management officials via email on indicating that no further corrective actions were warranted.

3. Status of LDOE Compliance

After participating in the monitoring visits for the charter schools requiring follow-up targeted follow-up monitoring visits in the area of Child Find and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2018-2019 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2019 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(A)(3)(a-b) and Sections A(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2019 semester of the 2018-2019 school term.

10

**B. RELATED SERVICES**

1. <u>Targeted Monitoring Activities for Related Service Provisions</u>

Three NOLA/OPSB charter schools were required to participate in targeted, on-site follow-up monitoring during the spring 2019 school semester to assess IDEA compliance after being placed on Corrective Action Plans (CAPs) during the spring 2018 and 2018-2019 school terms to address systemic issues of noncompliance with IDEA Related Services requirements. The NOLA/OPSB charter schools requiring targeted follow-up monitoring during the spring 2019 semester included James M. Singleton Charter School, Cypress Academy and Livingston Collegiate Academy. A review of findings for each charter school is presented below.

*a. James M. Singleton Charter School*

The targeted, on-site follow-up monitoring visit for James M. Singleton Charter School occurred on March 21, 2019. Four LDOE representatives and three IMs were present during the entire on-site follow-up visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at James M. Singleton Charter School responded to all interview questions satisfactorily and clearly indicated their understanding of federal and state regulations related to IDEA compliance for Related Service provisions. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of fourteen student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of students reviewed included the following exceptionalities: one student (7% of the sample) with an exceptionality of Autism Spectrum Disorder (ASD), one student (7% of the sample) with an exceptionality of Multiple Disabilities (MD), four students (29% of the sample) with an exceptionality of Other Health Impaired (OHI), five students (36% of the sample) with an exceptionality of Intellectually Disabled (ID) and three students (21% of the sample) with an exceptionality of Specific Learning Disability (SLD). Documented Related Service provisions included Speech Therapy (ten students), Adaptive PE (two students), Occupational Therapy (six students), Orientation and Mobility Services (one student), Physical Therapy (one student) and Social Work Services (five students).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for James M. Singleton Charter School in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that eight of fourteen student files (57% of the sample) were judged to reflect some measure of noncompliance regarding numerous Related Service provisions under the IDEA. More specifically, systemic noncompliance was observed for the following IDEA Related Services mandates:

- IDEA §300.17(a.-d.)- Free Appropriate Public Education (FAPE)

- IDEA §300.320.(a)(2) and 300.160(5a)(b2ii)(c-9) – Definition of Individualized Education  Program (Measurable Goals);

- IDEA §300.320(a)(1)(2)(i) – Definition of Individualized Education Program (Present Levels of Academic and Functional Performance (PLAAFP);

- IDEA §300.320(a)(4) and (7) – Definition Individualized Education Program (Documentation of service delivery)

In addition to concerns with systemic IDEA noncompliance, there were also numerous student-specific findings of noncompliance observed for Related Services mandates under the IDEA. All student-specific findings of noncompliance are outlined on pages 5-7 of the 2018-2019 IDEA monitoring results summary located in the Appendix.

### b. Cypress Academy

 The targeted, on-site monitoring visit for Cypress Academy occurred on March 20, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in section B(4)(a) and B(4)(b) of page 3 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Cypress Academy demonstrated an adequate knowledge and understanding of federal and state regulations regarding related services provisions and clearly articulated the LEAs procedures for identifying, providing and monitoring the service delivery for all applicable students. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in the Appendix.

A sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on

page 3 of Addendum A of the CJ. The sample of students reviewed included ten students (100% of the sample) with an exceptionality of Autism Spectrum Disorder (ASD). Documented Related Services provided included Speech Therapy (ten students), Adaptive PE (five students) and Occupational Therapy (four students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Cypress Academy in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged reflect compliance regarding IDEA Related Service provisions. In relation, no student-specific findings of noncompliance were observed during the targeted follow-up monitoring visit.

c. Livingston Collegiate Academy

The targeted, on-site monitoring visit for Livingston Collegiate Academy occurred on March 19, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on page 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Livingston Collegiate Academy clearly articulated the LEA's process for related services provisions for students with disabilities and demonstrated an adequate knowledge of state and

14

federal mandates regarding related service provisions. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included five students (50% of the sample) with an exceptionality of Autism Spectrum Disorder (ASD), four students (40% of the sample) with an exceptionality of Intellectual Disability (ID) and one student (10% of the sample) with an exceptionality of Visually Impaired. Documented Related Service provisions included Speech Therapy (nine students), Adaptive PE (four students), Social Work Services (ten students), Occupational Therapy (six students), Physical Therapy (one student) and Orientation and Mobility Services (one student).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 5 of the LDOE monitoring report for Livingston Collegiate Academy in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged to be in compliance regarding IDEA Related Service provisions. In relation, there were no student-specific findings of noncompliance observed during the follow-up targeted monitoring visit.

2. Summary of LEAs Compliance for IDEA Related Service Regulations

Two of three NOLA/OPSB charter schools (Cypress Academy and Livingston Collegiate Academy) participating in the spring 2019 on-site follow-up monitoring were observed to demonstrate systemic compliance for all IDEA Related Services regulations reviewed. Therefore, after observing the current status of systemic compliance with IDEA Related Services regulations, verifying that all student-specific violations were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email indicating that no further corrective actions were warranted for Cypress Academy and Livingston Collegiate Academy in the area of Related Services.

As noted previously, one NOLA/OPSB charter school participating in the spring 2019 follow-up targeted monitoring (James M. Singleton Charter School) was observed to demonstrate continued systemic noncompliance for four IDEA Related Services regulations along with numerous student-specific IDEA violations.

3. Corrective Actions to Address Identified Areas of Noncompliance

Given the identified systemic and student-specific findings of noncompliance under IDEA, Part B, James M. Singleton Charter School required a formal ICAP to address identified concerns. Therefore, as required by the CJ, the LDOE developed an ICAP to address each area of continued systemic noncompliance or student-specific noncompliance listed in the LDOE monitoring reports and 2018-2019 IDEA monitoring summaries for James M. Singleton Charter School. A draft ICAP was developed for James M. Singleton Charter School and submitted to the IMs for review and potential edits on May 20, 2019. The LDOE submitted the final ICAP to James M. Singleton

16

Charter School on May 23, 2019, which included nine activities for remedy along with additional reporting requirements for corrective action. A summary of ICAP activities is provided below:

- Correct all student specific citations identified in the Results Summary report. NOTE: This activity represents an individual corrective action plan for providing remedies for all student specific IDEA citations;

- Provide training to special education staff (sped teachers and related service providers) on writing compliant IEPs;

- Provide training to related service providers on how to properly document provision of services to students;

- LEA will provide ongoing job-embedded mandatory training and support in the following areas: IEP writing, provision and documentation of accommodations, documenting special education services, progress monitoring of student data, student academic intervention needs, IEP revisions, and data driven decision making (reviewing LEAP scores, class grades/report cards/progress reports, class schedules, and evaluation results to help make appropriate instructional, services, placement, and program decisions to ensure students are provided services in the LRE;

- The SPED Coordinator or Lead Teacher will perform monthly consistency checks to ensure IEP fidelity by internally monitoring all IEPs before the IEP is submitted to SER;

- The SPED Coordinator or Lead Teacher will perform monthly consistency checks to ensure related service provider logs are completed with fidelity. Related service provider logs will be internally monitored for provision of services per the

17

time/frequency specified on the students IEP. School will use checklist provided by LDOE to document reviews;

- The SPED Coordinator or Lead Teacher will review a 10% sample of progress reports for students enrolled at the school every progress report (PR) grading period to ensure special education teachers and related service providers are filling out progress reports completely for students they service every grading period (6wks/9wks);

- Provide compensatory education to students whose files did not include documentation verifying they received related services;

- The SPED coordinator and either the special education lead teacher or a special education teacher selected by school principal/assistant principal will attend the Special Education Summer Training hosted by Orleans Parish School Board Exceptional Children's Services Department in July 2019.

A copy of the ICAP developed for staff at James M. Singleton Charter School to address areas of noncompliance for Related Service provisions is available in the Appendix for review by the parties. A review by the IMs revealed that the ICAP developed for James M. Singleton Charter School includes corrective actions consistent with requirements outlined on page 2 of *Bulletin 1922 (Louisiana Administrative Code March 2017 Part XCI. Compliance Monitoring Procedures)* and in section IV(C)(5) on pages 8-9 of the CJ.

4. Status of LDOE Compliance

After participating in the monitoring visits for the charter schools requiring follow-up targeted follow-up monitoring visits in the area of Related Services and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2018-2019 IDEA monitoring results summaries,

technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2019 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(B)(2)(a-b) of the CJ and Sections B(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2019 semester of the 2018-2019 school year.

## C. DISCIPLINE

1. Targeted Monitoring Activities for the Discipline Provisions

Two NOLA/OPSB charter schools were required to undergo targeted, on-site follow-up monitoring during the spring 2019 school semester to assess IDEA compliance after being place on Corrective Action Plans (CAPs) during the spring 2018 and 2018-2019 school terms to address issues related to IDEA Discipline requirements. The LEAs requiring targeted follow-up monitoring during the spring 2018 semester included Langston Hughes Academy and Joseph S. Clark Senior High School.  A review of findings for each charter school is presented below.

a. *Langston Hughes Academy*

The targeted, on-site monitoring visit for Langston Hughes Academy occurred on March 19, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on pages 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Langston Hughes Academy clearly

19

articulated their responses regarding the policies, procedures, and practices related to the provision of tiered behavioral supports and disciplinary actions for students. A detailed summary of staff responses is presented on page 3 of the LDOE monitoring report located in the Appendix.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 5 (a-b) on page 11 of the CJ and section 2(a-b) on page 5 of Addendum A of the CJ. Specifically, the sample consisted of one student (10% of the sample) with an exceptionality of Emotional Disability (ED), five students (50% of the sample) with an exceptionality of Other Health Impaired (OHI), two students (20% of the sample) with an exceptionality of Specific Learning Disability (SLD) and two students (20% of the sample) with an exceptionality of Intellectual Disability (ID).

A review of student records revealed that one student (10% of the sample) experienced from four days of exclusionary (i.e. out-of-school suspension). In addition, it should be noted that no students in the sample reviewed met the criteria for a change in placement or required a Manifestation Determination Review (MDR) based on federal or state regulations. Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 5 of Addendum A of the CJ using the required Discipline protocol. Please refer to page 4 of the LDOE monitoring report for Langston Hughes Academy in the Appendix for a list of items that were reviewed to complete the Discipline protocol for the sample of students. A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged to be in compliance regarding applicable IDEA Discipline

20

provisions. In relation, there were also no student- specific findings of noncompliance observed during the on-site targeted monitoring visit.

   b. *Joseph S. Clark Senior High School*

   The on-site targeted monitoring visit for Joseph S. Clark Senior High School occurred on March 18, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on pages 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Joseph S. Clark Senior High School provided information regarding the policies, procedures, and practices related to the provision of tiered behavioral supports and disciplinary actions for students. In relation, the staff provided thorough and detailed answers to all interview questions. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in the Appendix.

   A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 5(a-b) on page 11 of the CJ and section 2(a-b) on page 5 of Addendum A of the CJ. Specifically, the sample consisted of four students (40% of the sample) with an exceptionality of Specific Learning Disability (SLD), one student (10% of the sample) with an exceptionality of Emotional Disability (ED), two students (20% of the sample) with an exceptionality of Other Health Impairment (OHI), two students (20% of the sample) with an exceptionality of Intellectually Disabled (ID) and one student (10% of

the sample) with an exceptionality of Language Impaired (LI). A review of student records indicated that three students (30% of the sample) experienced a maximum of two cumulative days of in-school suspension (ISS) and/or out-of-school suspension (OSS). No students in the sample experienced ten or greater cumulative days of exclusionary removals requiring a Manifestation Determination Review (MDR) as the result of a change in placement. Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section 3(a) on page 5 of Addendum A of the CJ using the required Discipline protocol. Please refer to page 4 of the LDOE monitoring report for Joseph S. Clark Senior High School in the Appendix for a list of items that were reviewed to complete the Discipline protocol for the sample of students. A review of student records revealed that ten of ten student files (100% of the sample) were judged to be in compliance regarding the provision of disciplinary procedures and/or other IDEA requirements. There were also no student-specific findings of IDEA noncompliance observed.

2. Summary of LEAs Compliance for IDEA Discipline Regulations

Both NOLA/OPSB charter schools participating in the required targeted monitoring activities demonstrated systemic compliance for all IDEA Discipline regulations reviewed.  Therefore, after observing the current status of systemic compliance with IDEA Discipline regulations, verifying that any previously observed student-specific violation(s) were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email indicating that no further corrective actions were warranted for Langston Hughes Academy and Joseph S. Clark Senior High School in the

area of Discipline.

Status of Compliance

After participating in the monitoring visits for the charter schools requiring targeted, follow-up monitoring visits in the area of Discipline and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports, 2017-2018 IDEA monitoring results summaries, technical assistance notifications, etc.) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2019 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(C)(5)(a-b) and Sections C(1)(a-c) through 5(a) of Addendum A of the CJ for the spring 2019 semester of the 2018-2019 school year.

**D. ENROLLMENT**

1.  Targeted Monitoring Activities for the Enrollment Stability

Three schools were required to participate in targeted, on-site follow-up monitoring during the spring 2019 school semester to assess IDEA compliance after being place on Corrective Action Plans (CAPs) from spring 2018 through the spring 2019 school terms to address issues related to IDEA Related Services (Enrollment Stability) requirements. The schools required to participate in targeted, on-site follow-up monitoring visits during the spring 2019 semester included Encore Academy, Einstein Charter Middle School at Sarah Towles Reed and Edgar P. Harney Spirit of Excellence Academy. A review of findings for each charter school is presented below.

23

a.  *Encore Academy*

The targeted, on-site monitoring visit for Encore Academy occurred on March 20, 2019. Two LDOE representative and three IMs were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Encore Academy staff clearly described the LEA's policies and procedures for determining the related service needs for current and/or newly enrolled students, various service delivery methods based on student need and schedules and the LEA's procedures for evaluating/documenting related service provisions in sufficient detail. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in the Appendix.

A representative sample of sixteen-student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) on and B(2)(b) on page 3 of Addendum A of the CJ. The sample of students reviewed included the following exceptionalities: five students (31% of the sample) with an exceptionality of Autism, one student (6% of the sample) with an exceptionality of Other Health Impaired, four students (25% of the sample) with an exceptionality of Intellectual Disability (ID), one student (6% of the sample) with an exceptionality of Hearing Impaired (HI), one student (6% of the sample) with an exceptionality of Emotional Disability (ED), one student (6% of the sample) with an exceptionality of Developmentally Delayed (DD)  and four students (25% of the sample)

24

with an exceptionality of Specific Learning Disability (SLD). Related Services provisions included Speech Therapy (nine students), Social Work Services (four students), Interpretative Services (one student), Counseling Services (four students) and Occupational Therapy (five students).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Encore Academy in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that 12 of 16 seventeen student files reviewed (75% of the sample) were judged to reflect some measure of noncompliance regarding Related Service provisions under the IDEA. More specifically, systemic noncompliance was observed for the following Related Services mandates outlined under the IDEA:

- IDEA §300.17(a.-d.)- Free Appropriate Public Education (FAPE)

- IDEA §300.320.(a)(2) and 300.160(5a)(b2ii)(c-9) – Definition of Individualized Education  Program (Measurable Goals);

- IDEA §300.320(a)(1)(2)(i) – Definition of Individualized Education Program (Present Levels of Academic and Functional Performance (PLAAFP);

- IDEA §300.320(a)(4) and (7) – Definition Individualized Education Program (documentation of service delivery);

- IDEA §300.320(a)(1)(i)(2)(i)- Definition of Individualized Education Program- Appropriate Team Members;

- IDEA §300.501(b). IDEA – Parent Participation.

In addition to concerns with systemic IDEA noncompliance, there were also numerous student-specific findings of noncompliance observed for Related Services mandates under the IDEA. All student-specific findings of noncompliance are outlined on pages 6-11 of the 2018-2019 IDEA monitoring results summary located in the Appendix.

b. *Einstein Charter Middle School at Sarah Towles Reed*

The targeted, on-site monitoring visit for Einstein Charter Middle School was conducted on March 20, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Staff for Einstein Charter Middle School responded satisfactorily to all interview questions and clearly described in sufficient detail the LEAs policies and procedures for quickly identifying students in need of related services, methods of service delivery and processes for documenting services. A summary of staff responses is presented on page 3 of the LDOE monitoring report located in the Appendix.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)b on page 3 of Addendum A of the CJ. The sample of ten

students reviewed included the following exceptionalities: three students (30% of the sample) with an exceptionality of Intellectually Disabled (ID), three students (30% of the sample) with an exceptionality Autism Spectrum Disorder (ASD), two students (20% of the sample) with an exceptionality of Specific Learning Disability (SLD) and two students (20% of the sample) with an exceptionality of Emotional Disability (ED). Related Service provisions reviewed included Speech Therapy (five students), Social Work Services (eight students) and Adaptive Physical Education (three students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Einstein Charter Middle School in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students. A review of student records revealed that ten of nine applicable student files reviewed (100% of the sample) were judged to be in compliance regarding Related Service provisions. Furthermore, no student-specific concerns were observed during the follow-up targeted monitoring visit.

c. *Edgar P. Harney Spirit of Excellence Academy*

The on-site targeted monitoring visit for Edgar P. Harney Spirit of Excellence Academy occurred on March 18, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B4 and B4 (b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview

27

process are reported on page 3 of the LDOE monitoringreport. In general, staff participating in the interview clearly articulated the LEAs process for determining student need for Related Service provisions, various methods of service delivery and procedures for monitoring student progress. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report for the Net Charter School located in the Appendix.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities: nine students (90% of the sample) with an exceptionality of Intellectual Disability (ID) and one student (10% of the sample) with an exceptionality of Multiple Disabilities (MD). Related Service provisions reviewed included Speech Therapy (ten students), Social Work Services (three students), Adaptive Physical Education (three students) and Occupational Therapy (five students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B3(a) on page 3 of Addendum A of the CJ and section D(2)(a-c) on page 6 of Addendum A using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Edgar P. Harney Spirit of Excellence Academy in the Appendix for a list of items that were reviewed to complete the Related Services protocol for the sample of students.

A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged to reflect compliance regarding Related Service provisions.

In relation, there were also no findings of student-specific noncompliance observed during the follow-up targeted monitoring visit.

2. <u>Summary of LEAs Compliance for IDEA Related Services Regulations</u>

Two of three NOLA/OPSB charter schools (Einstein Charter Middle School at Sarah Towles Reed and Edgar P. Harney Spirit of Excellence Academy) participating in the spring 2019 on-site follow-up monitoring demonstrated systemic compliance for all IDEA Related Services regulations reviewed. Therefore, after observing the current status of systemic compliance with IDEA Related Services regulations, verifying that all student-specific violations were corrected in a timely fashion and verifying that all CAP activities were successfully completed, the LDOE issued a "Notice of CAP Closure" to charter management officials via email on indicating that no further corrective actions were warranted for Einstein Charter Middle School at Sarah Towles Reed and Edgar P. Harney Spirit of Excellence Academy in the area of Related Services.

As noted previously, one NOLA/OPSB charter school participating in the spring 2019 follow-up targeted monitoring (Encore Academy) was observed to demonstrate continued systemic noncompliance with IDEA Related Services regulations along with numerous student-specific IDEA violations.

3. <u>Corrective Actions to Address Identified Areas of Noncompliance</u>

Given the identified systemic and student-specific findings of noncompliance under IDEA, Part B, Encore Academy required a formal ICAP to address issues of continued noncompliance. As such, the LDOE developed a draft ICAP to address each area of identified systemic noncompliance or student-specific noncompliance and submitted to the IMs for review and potential edits on May 20, 2019. The final ICAP

29

was submitted to Encore Academy officials on May 23, 2019, which included nine activities for remedy along with additional reporting requirements for corrective action. A summary of ICAP activities is provided below:

- Correct all student specific citations identified in the Results Summary report. NOTE: This activity represents an individual corrective action plan for providing remedies for all student specific IDEA citations;

- Provide training to special education staff (sped teachers and related service providers) on writing compliant IEPs;

- Provide training to related service providers on how to properly document provision of services to students;

- LEA will provide ongoing job-embedded mandatory training and support in the following areas: IEP writing, provision and documentation of accommodations, documenting special education services, progress monitoring of student data, student academic intervention needs, IEP revisions, and data driven decision making (reviewing LEAP scores, class grades/report cards/progress reports, class schedules, and evaluation results to help make appropriate instructional, services, placement, and program decisions to ensure students are provided services in the LRE;

- The SPED Coordinator or Lead Teacher will perform monthly consistency checks to ensure IEP fidelity by internally monitoring all IEPs before the IEP is submitted to SER;

- The SPED Coordinator or Lead Teacher will perform monthly consistency checks to ensure related service provider logs are completed with fidelity. Related service provider logs will be internally monitored for provision of services per the

time/frequency specified on the students IEP. School will use checklist provided by LDOE to document reviews;

- The SPED Coordinator or Lead Teacher will review a 10% sample of progress reports for SPED students enrolled at the school every progress report (PR) grading period to ensure special education teachers and related service providers are filling out progress reports completely for students they service every grading period (6wks/9wks);

- Provide compensatory education to students whose files did not include documentation verifying they received related services;

- The SPED coordinator and either the special education lead teacher or a special education teacher selected by school principal/assistant principal will attend the Special Education Summer Training hosted by Orleans Parish School Board Exceptional Children's Services Department in July 2019.

A copy of the ICAP developed for staff at Encore Academy to address areas of continued noncompliance for Related Service provisions is available in the Appendix for review by the parties. A review by the IMs revealed that the ICAP developed for Encore Academy includes corrective actions consistent with requirements outlined on page 2 of *Bulletin 1922 (Louisiana Administrative Code March 2017 Part XCI. Compliance Monitoring Procedures)* and in section IV(C)(5) on pages 8-9 of the CJ.

4. Status of LDOE Compliance

After participating in the targeted, on-site monitoring visits for the charter schools required to undergo follow-up targeted monitoring to assess IDEA compliance in the area of Related Services (Enrollment Stability) and reviewing documentation submitted by the LDOE monitoring personnel (e.g., monitoring notifications, LDOE monitoring reports,

31

2018-2019 IDEA monitoring results summaries, Intensive Corrective Action Plans-ICAPs, technical assistance notifications) and discussing the targeted monitoring activities with LDOE legal counsel and monitoring personnel during conference calls and on-site meetings during throughout the spring 2019 semester, the LDOE is judged to be in **Substantial Compliance** with Section IV(D)(7)(a-b) of the CJ and Sections D(1)(a-c) and D(2)(a-c) of Addendum A of the CJ for the spring 2019 semester of the 2018- 2019 school year.

## II.  RECOMMENDATIONS

1.   As reported above, based on the required monitoring activities and required documentation of corrective actions as outlined in the CJ, the IMs judged the LDOE to be in Substantial Compliance for the spring 2019 school term. However, it should be reported again here that Plaintiff's counsel continues to object to the IMs parameters for making such determinations. Plaintiff's counsel continues to assert that the IMs judgement of the LDOE's demonstrating substantial compliance with the substantive requirements outlined in the CJ were made prematurely and should be delayed until such time the individual charter schools that have undergone on-site targeted monitoring and were placed on corrective action plans have resolved any findings of noncompliance. Again, as noted in previous IM updates, the objections made by the plaintiff's counsel are certainly important to the overall objective(s) of the CJ in terms of improving the identification of students with suspected disabilities and proper delivery of instructional and related service supports. However, based on the IMs interpretation of the provisions outlined in the CJ, the judgement of "substantial compliance" is not contingent upon an individual charter school's demonstration of IDEA compliance during an on-site targeted monitoring visit. Instead, the IMs interpretation of the provisions of the CJ are made based on a required series of "actions" or "procedures" that must be clearly demonstrated, rather than specific data-based performance outcomes, to achieve a judgement of "substantial compliance"

for each substantive provision outlined in the CJ. In relation, the IMs interpretation is also shared by the Court (See Order in the Appendix - Case 2:10-cv-04049-JCZ-KWR Document 387). All parties should be again be reminded that all parents of students with known and/or suspected disabilities have due process rights, procedural safeguards, as well as the opportunity to file a formal complaint at the local and/or state level to remedy any concerns.

2.   The IMs recommends the LDOE continue to follow the targeted monitoring procedures as outlined in each substantive section of the CJ and on pages 1-12 of Addendum A of the CJ (i.e., continue to review charter school selection and verify LDOE calculations, select LEAs for targeted monitoring, perform staff interviews and student file reviews using the protocols as outlined in the CJ and Addendum A) until such time the CJ is terminated.

3.   In relation, the IMs also recommend the LDOE continue to conduct initial and follow-up on-site targeted monitoring visits collaboratively with the IMs to obtain information from faculty and review student files to make compliance determinations in each area outlined in the CJ until such time the agreement is terminated.