**Office of the Independent Monitors**
**Berry et al v. Pastorek et al (Civil Case No. 2:10-cv-04049)**

**Final Status Report to the Court**

**June 9, 2021**

## A. INTRODUCTION

Pursuant to Section V(9) on page 16 of the Consent Judgment (CJ) filed with the Court on March 25, 2015, the Independent Monitors shall file with the Court and provide the Parties with reports describing the steps taken by the State Defendants and the Defendant-Intervenor to implement the Agreement and evaluate the extent to which the State Defendants and the Defendant-Intervenor have complied with each substantive provision of the Agreement. In relation, these reports shall be written with due regard for the privacy interests of the students. Pursuant to Section V(9)(a), the Monitor shall issue a status report every 120 days after the first year of implementation of the Agreement. The reports shall be provided to the Parties in draft form for comment at least 14 days prior to their issuance. The Monitor shall consider the Parties' responses and make appropriate changes, if any, before issuing the report. In addition, pursuant to Section V(9)(b) of the CJ, the Independent Monitors shall also evaluate the state of compliance for each relevant provision of the Agreement using the following standards: (1) Substantial Compliance and (2) Noncompliance. To assess compliance, the Monitor shall review a sufficient number of pertinent documents to accurately assess compliance and interview any necessary staff or personnel. The Monitor shall also be responsible for independently verifying representations from the State Defendants or Defendant-Intervenor regarding progress toward compliance and examining supporting documentation. Each Monitor report shall describe the

1

steps taken by the Monitor to assess compliance, including documents reviewed and individuals interviewed, and the factual basis for each of the Monitor's findings.

However, in contrast to summarizing the data outcomes of on-site targeted monitoring visits and related activities as traditionally outlined in the CJ, the current IM status report here addresses supplemental targeted monitoring activities completed by the State Defendants during the fall 2019-2020 school term. This supplementary targeted monitoring cycle was recommended by the state defendant as an initial remedy for addressing the inadvertent school selection errors that were discovered for the fall 2017 and fall 2018 initial monitoring cycles to assess the status of Child Find, Related Services and Enrollment Stability (see the IMs summary of school selection errors in the Appendix for more information).

It should be noted that all supplemental monitoring activities completed in the fall 2019 term were consistent with the targeted monitoring practices mandated under the CJ. However, as previously mentioned, based on each charter presumed school site's risk status using the school selection criteria outlined in the CJ, the NOLA/OPSB charter schools participating in the fall 2019 supplemental monitoring should have been originally selected for targeted monitoring during the fall 2017 and/or fall 2018 initial monitoring cycles. As such, the NOLA/OPSB charter schools participating in the fall 2019 supplemental monitoring were selected solely on the basis that each of these respective charter school sites originally met the selection criteria for initial monitoring during the fall 2017 and/or fall 2018 initial monitoring cycles. However, based on the school selection criteria as outlined in the CJ, it should be noted that the school selection data reviewed (i.e., Child Find rates, Related Service provision rates, etc.) for the charter schools participating in the fall 2019 (supplemental) targeted monitoring visits indicated no presumed risk that would have resulted in their being selected for targeted

monitoring. Therefore, after considering the supplemental nature of these on-site reviews and the departure from the school selection procedures outlined in the CJ that are presumably designed to identify NOLA/OPSB charters demonstrating the highest level of presumed risk required initial targeted monitoring, the IMs will refrain here from issuing any formal judgements related to the LDOEs demonstration of substantial compliance and/or noncompliance in relation the fall 2019 supplemental monitoring activities.

Instead, as required under the CJ, the IMs provide a summary of the specific supplemental monitoring activities undertaken by the LDOE (e.g., appropriate selection of student samples, completion of staff interviews and student file reviews, development and dissemination of LEA monitoring reports and the development and dissemination of corrective action plans, etc.). In addition, the IMs also provide an overview of the specific findings observed for each NOLA/OPSB charter school participating in supplemental monitoring with regard to each charter school's status of IDEA compliance in the areas of Child Find, Related Services and/or Enrollment stability. The sequence of information presented in the current IM status report follows the general structure of the CJ. In relation, the language from each substantive provision of the Agreement or Addendum A (i.e., monitoring protocols) outlined in the CJ is incorporated into the IM status report, when appropriate.

**SUPPLEMENTAL TARGETED MONITORING ACTIVITIES COMPLETED IN THE FALL 2019 TERM OF THE 2019-2020 SCHOOL YEAR**

Overview of Supplemental Targeted Monitoring Activities for the Fall 2019 Semester

Summarized below are the activities conducted by the LDOE in relation to supplemental monitoring activities conducted during the fall 2019 school term for identified NOLA/OPSB

charter schools for each relevant provision of the CJ. In relation, an overview of the targeted monitoring procedures used by the LDOE is also provided here to assist readers in understanding the process that was followed to complete supplemental targeted monitoring consistent with the regular monitoring requirements as outlined in the CJ.

School selection for each area of supplemental targeted monitoring was finalized by LDOE monitoring personnel and the IMs using calculation rates outlined in Addendum A of the CJ (p. 1 for Child Find, p. 3 for Related Services, p. 4 for Discipline, p. 6 for Enrollment Stability) via conference call on August 13, 2019.

Each NOLA/OPSB charter school was selected for supplemental targeted monitoring by the LDOE based on a follow-up analysis of relevant data (i.e., initial IDEA evaluations, rates of related service provisions and enrollment stability rates) for the 2015-2016, 2016-2017 and 2017-2018 school terms. Selected charter schools were sent an initial monitoring notification email from LDOE Director of State-wide Monitoring on August 22, 2019-September 5, 2019 (see the Appendix for a copy of each email). This notification also provided an outline and rational for monitoring, notice that monitoring would be on conducted on-site, the area in which the LEA would be monitored, LDOE contact personnel, format and criteria for monitoring, a notation of conference call to discuss monitoring activity, copy the staff intervention questions, and file review protocols. Planning phone calls were conducted by LDOE monitoring personnel on August 27, 2019-September 10, 2019, for selected charter schools with school leaders to assist school personnel in understanding the CJ requirements for targeted monitoring and to answer any questions or address any concerns. The protocols along with the relevant IDEA or Bulletin 1508 legal citations used during all supplemental targeted monitoring activities are provided in the Appendix for review.

4

LDOE monitoring personnel submitted the monitoring schedule and contact information for charter schools selected for supplemental monitoring during the fall 2019 school term to the IMs on September 23, 2019. In addition, the LDOE also submitted the rosters of randomly selected students from each charter school selected for supplemental targeted monitoring on September 18, 2019. LDOE monitoring personnel and the IMs conducted on-site staff interviews and student file reviews from September 25-27, 2019, using documents required by the CJ (see staff interview questionnaires and student file review protocols in the Appendix). The IMs and LDOE monitoring personnel evaluated student file review protocols independently and reconciled any scoring differences each day after completing the on-site monitoring visits.

Based on agreements among all parties during a meeting held on September 22, 2016, compliance determinations for individual students shall be consistent with the 100% compliance standard outlined in the IDEA. That is, during all targeted monitoring activities conducted under the CJ, any single finding of noncompliance for any specific IDEA regulation being assessed for an individual student judged to reflect noncompliance would require immediate individual corrective action (i.e., student-specific areas of noncompliance outlined in the IDEA Monitoring Summary and individual corrective actions as part of the LEA Corrective Action Plan). Similarly, all parties agreed that systemic noncompliance would be determined when less than 80% of the student sample failed to meet the 100% individual student compliance standard for any IDEA requirement evaluated on the CJ protocol and would result in mandatory systemic corrective actions (i.e., Corrective Action Plan or Intensive Corrective Action Plan) for the LEA.

LDOE monitoring personnel submitted Draft monitoring reports for each charter school targeted for supplemental monitoring to the IMs on November 15-16, 2019. The IMs reviewed

the monitoring reports and provided feedback regarding specific findings of noncompliance in relation to IDEA regulations and student-specific findings of noncompliance on November 26, 2019. LDOE personnel submitted final monitoring reports and monitoring summary results to NOLA/OPSB charter schools participating in the fall 2019 supplemental targeted monitoring visits on December 12-16, 2019.  Final monitoring reports and specific finding of non-compliance for IDEA regulations are located in the Appendix for review by all parties.

In relation, the LDOE monitoring personnel developed Draft Corrective Action Plans (CAPs) for each NOLA/OPSB with observed noncompliance for IDEA mandates and submitted to the IMs on February 7, 2020, for review.  The IMs reviewed all Draft CAPs and also provided feedback to LDOE personnel on February 7, 202 and February 12, 2020. In addition, the IMs offered feedback focused on ensuring the corrective strategies outlined in the CAPS were reasonably sufficient to lead to overall sustained improvements and compliance for IDEA and/or Bulletin 1508 practices in the areas of Child Find, Related Services and Enrollment across selected charter schools requiring corrective actions to address observed noncompliance for IDEA mandates. Specifically, the IMs reviewed all submitted CAPs to ensure that the professional development and technical assistance activities strategically addressed each finding of systemic or student-specific noncompliance. In relation, the IMs evaluated the CAPs to ensure that on-going corrective and supportive feedback would be provided by LDOE monitoring personnel to assist in promoting skill development of faculty in a developmental nature across time. Finally, the IMs reviewed the CAPs to ensure that the identified NOLA/OPSB charter schools would be providing appropriate documentation to assist LDOE monitoring personnel in evaluating both the compliance and quality of their practices in relation to completing prescribed

CAP activities. LDOE personnel submitted cover letters and final CAPs to NOLA/OPSB charter schools participating in the fall 2019 supplemental monitoring visits on February 21, 2019. The final CAPs are located in the Appendix for review by all parties.

The LDOE also submitted notification emails for technical assistance meetings to all NOLA/OPSB requiring CAPs to review the results of the monitoring reports, results summaries, and corrective action plans during February 21, 2020. Finally, LDOE monitoring personnel held technical assistance meetings with charter schools selected for supplemental targeted monitoring to review the findings of systemic noncompliance and student-specific noncompliance and to discuss the structure and activities of the CAPs on March 3, 2020.

Consistent with regular targeted monitoring as required under the provisions of the CJ, the IMs review of compliance with the supplemental targeted monitoring activities during the fall semester of the 2019-2020 school year consisted of an evaluation of three components of the LDOE's monitoring activities. Specifically, the components being assessed for compliance included: (1) Correct identification of the charter schools selected for targeted monitoring (e.g., determination of the annual new identification rate for each LEA, and evaluation of the LDOE calculations); (2) Completion of targeted monitoring activities by the LDOE as required by the CJ and Addendum A to the CJ (e.g., completion of appropriate monitoring activities by the LDOE, completion of staff interviews, appropriate selection of student files, appropriate completion of the monitoring protocols, and correct identification of systemic or individual compliance and/or noncompliance) and (3) Development of appropriate corrective actions "sufficient to remedy the noncompliance and to reasonably ensure that such noncompliance does not reoccur." (pp. 7, 9, 11, 14 of CJ). As such, the IM status report provides a review of these monitoring activities for each NOLA/OPSB charter school selected for supplemental targeted

7

monitoring under each area of the CJ (e.g., Child Find, Related Services, Discipline, and Enrollment) along with IM determinations regarding compliance with the monitoring provisions of the CJ. An overall summary regarding supplemental targeted monitoring activities and professional recommendations are provided at the conclusion of this report.

**A. CHILD FIND**

1. Supplemental Targeted Monitoring Activities for the Child Find Provisions

Three charter schools were selected for supplemental targeted monitoring during the fall 2019 school term based on a follow-up analysis of the 2018-2019 Child Find data across all NOLA/OPSB Charter schools. The IMs reviewed the documentation and calculations performed by LDOE monitoring personnel and confirmed that the schools were selected for targeted monitoring in a manner consistent with the requirements outlined on page 7 of the CJ and page 1 of Addendum A of the CJ. The schools selected for supplemental targeted monitoring during the fall 2019 school term included Alice Hart Elementary Charter School, KIPP Central City Academy, and Benjamin Franklin Charter High School. A review of target monitoring findings for each charter school is presented below.

*a. Alice Harte Elementary Charter School*

The on-site targeted monitoring visit occurred on September 26, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members participating in the interview process are

8

reported on page 3 of the LDOE monitoring report. There were no specific areas of concern identified during the interview as the faculty at Alice Hart Elementary Charter School clearly articulated an accurate understanding and working knowledge of mandated Child Find, RTI/MTSS, and Section 504 policies and procedures. A detailed summary of staff responses is presented on page 3 of the LDOE monitoring report located in the Appendix.

A representative sample of thirteen files for students enrolled in first through fifth grades were reviewed by the LDOE monitoring personnel and the IM in a manner consistent with the requirements outlined in section 2 (a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of four students (31% of the sample) who were participating in the Response to Intervention/Multi-Tiered System of Supports (RTI/MTSS) process), four students (31% of the sample) with active Section 504 Accommodation Plans, two students (15% of the sample) who were currently being reviewed and considered by the School Building Level Committee (SBLC) as the result of their poor response to interventions (RTI), one student (8% of the sample) who was failing two or more core academic subjects, and two students (15% of the sample) who were recently ruled eligible to receive services and supports under the IDEA.

Student file reviews were conducted by LDOE monitoring personnel and IM in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 4 of the LDOE monitoring report for Alice Harte Elementary Charter School in the Appendix for a list of items that were reviewed to complete the Child Find protocol for the selected sample of students.

A review of student records revealed that all thirteen student files reviewed (100% of

9

the sample) were judged to be in <u>compliance</u> regarding mandated Child Find activities. No systemic or student-specific noncompliance was identified for this LEA under IDEA, Part B program during the fall 2019 on-site supplemental targeted monitoring visit.

### b) Kipp Central City Academy

The on-site targeted monitoring visit occurred on. September 27, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3-4 of the LDOE monitoring report. Faculty at KIPP Central City Academy clearly articulated their knowledge regarding IDEA and Bulletin 1508 Child Find policies and procedures.  No specific areas of concern were identified from the interview as school staff demonstrated a thorough knowledge of federal and state mandates, policies and procedures as related to IDEA Child Find activities, RTI/MTSS and Section 504. A detailed summary of staff responses is presented on pages 3-4 of the LDOE monitoring report located in the Appendix.

A representative sample of 14 student files for students enrolled in sixth through eighth grades were reviewed by LDOE monitoring personnel and the IM in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of eight students (57% of the sample) who were participating in the RTI/MTSS process, three students (21% of the sample) who had active Section 504 Accommodation Plans, two students (14% of the sample) who had active

10

Section 504 Accommodation Plans and were also failing two or more core academic subjects, and one student (7% of the sample) who had an active Section 504 Accommodation plan, was currently failing two or more core academic subjects and had experienced greater than ten days of suspension.

Student file reviews were conducted by LDOE monitoring personnel and IM in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 5 of the LDOE monitoring report for KIPP Central City Academy in the Appendix for a list of items that were reviewed to complete the Child Find protocol for the sample of students.

As noted previously, school officials participating in the interview process clearly articulated a working knowledge of both state and federal Child Find mandates and procedures. However, a review of student records revealed that 11 of 14 student files reviewed (79% of the student sample) were judged to reflect some measure of noncompliance for IDEA Child Find regulations reviewed. Both systemic and student-specific noncompliance was identified for this LEA under IDEA, Part B program during the fall 2019 on-site supplemental targeted monitoring visit.

More specifically, the findings of the fall 2019 on-site supplemental targeted monitoring for KIPP Central City Academy revealed the following systemic IDEA violations for Child Find provisions mandated under IDEA, Part B program and/or Bulletin 1508 (Pupil Appraisal Handbook):

- *Bulletin 1508: §303. School Building Level Committee*:  The SBLC is a general education, data driven, decision making committee whose standing members consist of at least the principal/designee, a classroom teacher, and the referring teacher… the student's parent or

11

guardian is an invited participant. The SBLC shall review and analyze all screening data, including RTI results, to determine the most beneficial option for the student.

- *Bulletin 1508: § 301. Response to Intervention*: Essential components of the process include three tiers of instruction and intervention, use of standard protocols and/or problem-solving methods, and an integrated data collection/assessment system to inform decisions at each tier of instruction/intervention. Embedded in each tier is a set of unique support structures that help teachers implement with fidelity research-based curricula, instructional practices, and interventions designed to improve student achievement.

- *Bulletin 1508: §305 Screening Activities:* Through the RTI process the SBLC shall coordinate and document results of all screening activities.  RTI and screening activities for enrolled students are conducted by general education personnel with assistance from other school personnel. The screening of a student by a teacher or specialist to determine appropriate instructional strategies for curriculum implementation shall not be considered to be an evaluation for eligibility for special education and related services.

- *IDEA: §300.304(a):*  The LEA must provide notice to the parents of a child with a disability that describes any evaluation procedures the agency proposes to conduct.

- *IDEA: §300.300(a)***:** The LEA proposing to conduct an initial evaluation must obtain informed consent from the parent of a child before conducting an evaluation.

Specific IDEA, Bulletin 1508 and/or Section 504 systemic violations are also reported on page 5-6 of the LDOE monitoring report for KIPP Central City Academy and pages 1-2 of the 2019-2020 IDEA monitoring results summary located in the Appendix. In relation, student-specific findings of noncompliance are listed on pages 3 of the 2019-2020 IDEA

12

monitoring results summary for KIPP Central City Academy.

       *c. Benjamin Franklin Charter High School*

The on-site targeted monitoring visit occurred on September 27, 2019.  One LDOE representatives and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections 4(a) and 4(b) on page 2 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Staff provided a comprehensive description of the Child Find processes and procedures implemented at Benjamin Franklin High School. There were no potential concerns identified during the interview as faculty and staff clearly demonstrated a working knowledge of relevant federal and state Child Find, RTI/MTSS and Section 504 mandates, policies and procedures. A detailed summary of staff responses is presented on page 3 of the LDOE monitoring report located in the Appendix.

A representative sample of 14 student files for students in grades nine through twelve were reviewed by the LDOE monitoring personnel and IM in a manner consistent with the requirements outlined in section 2(a) on page 1 of Addendum A of the CJ. Specifically, the sample consisted of seven students (50% of the sample) who had active Section 504 Accommodation Plans and seven students (50% of the sample) who were participating in the RTI/MTSs process. Student file reviews were conducted by LDOE monitoring personnel and IM in a manner consistent with the requirements outlined in section 3(a) on page 2 of Addendum A of the CJ using the required Child Find protocol. Please refer to page 4 of the LDOE monitoring report in the Appendix for a list of items that were reviewed to complete the Child Find protocol for the sample of students enrolled in

13

Benjamin Franklin Charter High School who were selected for review.

A review of student records revealed that all 14 of 14 student files reviewed (100% of the student sample) were judged to reflect compliance for all IDEA Child Find regulations reviewed. No findings of systemic and/or student-specific noncompliance were identified under IDEA, Part B program for Benjamin Franklin Charter High School during the fall 2019 on-site supplemental targeted monitoring visit.

2.  <u>Corrective Actions to Address Identified Areas of Noncompliance</u>

Overall, systemic noncompliance was identified for one of three NOLA/OPSB Charter Schools selected for supplemental targeted monitoring during the fall 2019 school term. As previously noted, systemic noncompliance for IDEA and/or Bulletin 1508 mandates was observed for KIPP Central City Academy. As such, given the identified systemic and student-specific findings of noncompliance observed under IDEA, Part B, and Bulletin 1508, this LEA required a formal Corrective Action Plan (CAP) to address all findings of systemic and student-specific noncompliance. Therefore, as required by the CJ, LDOE staff developed a CAP to address each area of identified systemic and student-specific noncompliance listed in the LDOE monitoring report and 2019-2020 IDEA monitoring summary for KIPP Central City Charter School. Specifically, the CAP for this Charter school includes the following activities for corrective action:

- Correct all student specific citations identified in the Results Summary report. NOTE: This activity represents an individual corrective action plan for providing remedies to address all student specific IDEA citations.

- SBLC forms must be filled out in their entirety including all required components (i.e., all

14

required participants name, title and signature, referral concern, Team meeting date, data/documents reviewed for referred student (e.g., academic/behavior screeners, assessment scores, behavior checklist, behavior referrals, academic checklist, etc.), decision of team/actions taken. If placed in RTI/MTSS specify the type of intervention (**must be research based);** time/frequency of intervention and length of time student will be in intervention (6wk, 8wk, etc.).

- Students placed in RTI intervention tiers must be progress monitored on deficit skills on a weekly/bi-weekly basis for a specified period of intervention time determined by SBLC committee (6wks, 8wks, 10wks, etc.). Teachers will keep record of progress monitoring for each student in a RTI tier in a binder for each intervention group (Tier 2/Tier 3). The 504/SBLC chairperson will monitor teacher's binders monthly to ensure students are progress monitored according to the time/frequency and intervention period documented during SBLC meeting. Must have the same time/frequency and intervention time period documented on the SBLC meeting form.

- SBLC team will conduct follow-up meetings after specified intervention period for students in RTI/MTSS to determine whether or not the student is making progress in interventions and what are next steps if making progress or not making progress. SBLC team will review all student progress monitoring data collected during intervention period and any other pertinent data. This meeting and outcomes will be documented on SBLC meeting form.

Please refer to the Appendix for a detailed description of CAP activities required by KIPP Central City Academy for addressing all areas of identified student-specific and

systemic noncompliance with federal and state Child Find mandates. The IMs review of the CAP for KIPP Central City Charter School revealed that the documents include corrective actions consistent with requirements outlined on page 2 of *Bulletin 1922 (Louisiana Administrative Code March 2017 Part XCI. Compliance Monitoring Procedures)* and in section IV(A)(3) on page 7 of the CJ and are sufficient for addressing all IDEA violations observed during the fall 2019 supplemental on-site targeted monitoring review.

## B.  RELATED SERVICES

1. Supplemental Targeted Monitoring Activities for the Related Services Provisions

Five NOLA/OPSB charter schools were selected for supplemental targeted monitoring during the fall 2019 school term based on a follow-up analysis of 2017-2018 and 2018-2019 related service provision rates reported for NOLA/OPSB charter schools. The IMs reviewed the documentation and calculations performed by LDOE monitoring personnel and confirmed that the schools were selected for supplemental targeted monitoring in a manner consistent with the requirements outlined on page 8-9 of the CJ and pages 2-3 of Addendum A of the CJ. The NOLA/OPSB charter schools selected for supplemental targeted monitoring during the fall 2019 school term included Lake Forest Elementary Charter School, New Orleans Math and Science Charter High School, Eleanor McMain Secondary Charter School, ReNew Accelerated High School, and Benjamin Franklin Charter High School.

*a. Lake Forest Elementary Charter School*

The on-site targeted supplemental monitoring visit occurred on September 26, 2019. One LDOE representatives and one IM were present during the entire on-site visit to

16

conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B (4)(b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. The staff at Lake Forest Elementary Charter School clearly articulated the LEAs procedures for determining whether a student requires related services, including securing appropriate service providers, options for service delivery and procedures for documenting and frequently monitoring student progress. In general, no potential concerns were indicated during the interview. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IM in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities under the IDEA: Other Health Impaired (four students), Autism (two students), Developmentally Delayed (one student), Hearing Impaired (one student) and Speech/Language Impaired (two students). Related Service provisions included Speech/ Language Therapy (six students), Adaptive Physical Education (one student), School Social Work Services (two students), Occupational Therapy Services (three students) and Counseling Services (one student).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Refer to page 4 of the LDOE monitoring report for Lake Forest Elementary Charter School in the Appendix for a

17

list of items that were reviewed to complete the Related Service protocol for the sample of students.

Although staff demonstrated a working knowledge of IDEA Related Service provision mandates, policies and procedures during the on-site interview, a review of student records revealed that eight of ten student files (80% of the sample) were judged to reflect some measure of both systemic and student-specific noncompliance for IDEA, Part B Related Services provisions assessed. More specifically, the findings of the fall 2019 on-site supplemental targeted monitoring for Lake Forest Elementary Charter School revealed the following systemic IDEA violations for mandated Related Service provisions:

- *§300.17(a.-d.) Free Appropriate Public Education (FAPE):* Free appropriate public education or FAPE means special education and related services that:

  (a) Are provided at public expense, under public supervision and direction, and without charge;

  (b) Meet the standards of the SEA, including the requirements of this part;

  (c) Include an appropriate preschool, elementary school, or secondary school education in the State involved; and

  (d) Are provided in conformity with an individualized education program (IEP) that meets the requirements of §Sec. 300.320 through §300.324.

- *§300.501(b). IDEA – Parent Participation***:** If parent cannot participate in meeting, other methods must be used to ensure participation.

- *§300.321(a)-(b)-IEP Team:* IEP team must include not less than one regular education teacher, special education teacher or special education provider of the child.

- *§300.320(a)(1)(i)(2)(i)- Definition of an Individualized Education Program***:** IEP must

18

include a statement of the child's present levels of academic achievement and functional performance, including how the student's disability affects involvement and progress in the general education curriculum.

- *§300.320.(a)(2) and 300.160(5a)(b2ii)(c-9): Individualized Education Program*: A statement of measurable annual goals, including academic and functional goals designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and meet each of the child's other educational needs that result from the child's disability.

- *§300.320(a)(4) and (7). Definition of an Individualized Education Program*: IEP include data for beginning of services, modifications, and anticipated frequency, location, and duration of services and modifications.


Specific IDEA, Part B systemic violations for Related Services provisions are also reported on pages 4-5 of the LDOE monitoring report for Lake Forest Elementary Charter School and pages 1-3 of the 2019-2020 IDEA monitoring results summary for this LEA located in the Appendix. In relation, student-specific findings of noncompliance are listed on pages 4-5 of the 2019-2020 IDEA monitoring results summary for Lake Forest Elementary Charter School.


b. *New Orleans Charter Math and Science High*

The on-site supplemental targeted monitoring visit occurred on September 26, 2019. Two LDOE representatives and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a

19

standard bank of questions with staff members consistent with requirements outlined in section B(4)(a) and B(4)(b) of page 3 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at New Orleans Charter Math and Science High School clearly articulated the procedures routinely followed for appropriately determining the related services needs of students, including options for service delivery, service documentation, staff/parent collaboration, and frequent monitoring of student progress. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities under the IDEA: Autism (four students), Intellectually Disabled (two students), Other Health Impaired (one student), Multiple Disabilities (one student) and Emotional Disability (two students). Related Services provided included Speech/Language Therapy (ten students) and School Social Work Services (four students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for New Orleans Charter Math and Science High School in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

Although no potential concerns with regard to noncompliance with IDEA Related Services provision mandates were indicated during the staff interview, a review of student

20

records revealed that six of ten student files (60% of the sample) were judged to reflect a single instance of systemic as well as student-specific noncompliance for IDEA, Part B Related Services provisions assessed. More specifically, the findings of the fall 2019 on-site supplemental targeted monitoring for New Orleans Math and Science Charter High School revealed the following systemic IDEA violation for mandated Related Service provisions:

- *§300.320(a)(1)(i)(2)(i)- Definition of an Individualized Education Program:* IEP must include a statement of the child's present levels of academic achievement and functional performance, including how the student's disability affects involvement and progress in the general education curriculum.

- *§300.320(a)(1)(i)(2)(i)- Definition of an Individualized Education Program:* IEP must include a statement of the child's present levels of academic achievement and functional performance, including how the student's disability affects involvement and progress in the general education curriculum.

Specific IDEA, Part B systemic violations for Related Services provisions are also reported on page 5 of the LDOE monitoring report for New Orleans Charter Math and Science High School and pages 1-2 of the 2019-2020 IDEA monitoring results summary for this LEA located in the Appendix. In relation, student-specific findings of noncompliance are listed on pages 3-4 of the 2019-2020 IDEA monitoring results summary for New Orleans Charter Math and Science High School.

*c. Eleanor McMain Charter School*

The on-site supplemental targeted monitoring visit occurred on September 25, 2019. two LDOE representatives and one IM were present during the entire on-site visit to conduct

21

staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on page 4-5 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. Faculty at Eleanor McMain Charter School clearly described the processes and procedures routinely implemented to ensure appropriate related services provisions for students with disabilities. There were no potential concerns indicated as school staff clearly indicated having a well-developed working knowledge of all IDEA Related Services mandates, policies and procedures. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities under the IDEA: Autism (seven students) and Intellectually Disabled (ID) (three students). Related Service provisions included Language/Speech Therapy (ten students) and Adaptive Physical Education (seven students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Eleanor McMain Charter School in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that ten of ten student files reviewed (100% of the sample) were judged to be in compliance with all IDEA, Part B Related Service

provisions assessed. In relation, there were also no student-specific findings of noncompliance observed in the area of Related Services for Eleanor McMain Charter School during the fall 2019 on-site targeted monitoring visit.

### d. ReNew Accelerated High School

The on-site targeted supplemental monitoring visit occurred on September 26, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B (4)(b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. In general, the staff at ReNew Accelerated High School clearly articulated the LEAs procedures for securing appropriate service providers, options for service delivery and procedures for documenting and frequently monitoring student progress. However, some concern was indicated with regard to how a determination is made regarding whether a student requires Related Service provisions. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities under the IDEA: Autism (three students), Emotional Disability (one student), Other Health Impaired (two students), Multiple Disabilities (two students), Orthopedically Impaired (one student) and Speech/Language Impaired (one

23

student). Related Service provisions included Speech/ Language Therapy (seven students), Adaptive Physical Education (seven students), Occupational Therapy Services (six students), School Social Work Services (four students) and Physical Therapy (three students).

Student file reviews were conducted by LDOE monitoring personnel and IM in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A of the CJ using the required Related Service protocol. Refer to page 4 of the LDOE monitoring report for ReNew Accelerated High School in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that ten of ten student files (100% of the sample) were judged to reflect some measure of systemic and/or student-specific noncompliance for Related Services provisions assessed.  Specifically, the following systemic Related Services violations under IDEA, Part B were observed for Renew Accelerated Charter High School during the fall 2019 supplemental monitoring visit:

- *§300.17(a.-d.) Free Appropriate Public Education (FAPE):* Free appropriate public education or FAPE means special education and related services that:

  (a) Are provided at public expense, under public supervision and direction, and without charge;

  (b) Meet the standards of the SEA, including the requirements of this part;

  (c) Include an appropriate preschool, elementary school, or secondary school education in the State involved; and

24

(d) Are provided in conformity with an individualized education program (IEP) that meets the requirements of §Sec. 300.320 through §300.324.

- *§300.321(a)-(b)-IEP Team:* IEP team must include not less than one regular education teacher, special education teacher or special education provider of the child.

- *§300.320(a)(1)(i)(2)(i)- Definition of an Individualized Education Program:* IEP must include a statement of the child's present levels of academic achievement and functional performance, including how the student's disability affects involvement and progress in the general education curriculum.

- *§300.320.(a)(2) and 300.160(5a)(b2ii)(c-9)-Individualized Education Program:* A statement measurable annual goals, including academic and functional goals designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and meet each of the child's other educational needs that result from the child's disability.

Specific IDEA, Part B systemic violations for Related Services provisions are also reported on page 5-6 of the LDOE monitoring report for ReNew Accelerated High School and pages 1-3 of the 2019-2020 IDEA monitoring results summary for this charter school located in the Appendix. In relation, student-specific findings of noncompliance are listed on pages 4-8 of the 2019-2020 IDEA monitoring results summary for ReNew Accelerated High School.

*e. Benjamin Franklin Charter High School*

The on-site targeted supplemental monitoring visit occurred for Benjamin Franklin

Charter High School on September 27, 2019. Two LDOE representatives and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B (4)(b) on page 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. The staff at Benjamin Franklin Charter High School clearly articulated the LEAs procedures for determining if a student requires related services, including securing appropriate service providers, options for service delivery and procedures for documenting and frequently monitoring student progress. No concerns for potential noncompliance with regard to IDEA mandates for Related Service provisions were indicated during the on-site staff interview. A summary of staff responses is presented on pages 3-4 of the LDOE monitoring report.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)(b) on page 3 of Addendum A of the CJ. The sample of ten students reviewed included the following exceptionalities under the IDEA: Autism (one student), Hearing Impaired (one student), Emotional Disability (one student), Orthopedically Impaired (one student) and Language/Speech Impaired (five students). Related Service provisions included Speech/ Language Therapy (seven students), Adaptive Physical Education (one student), School Social Work Services (two students), Occupational Therapy Services (three students) and Physical Therapy Services (one student).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of

Addendum A of the CJ using the required Related Service protocol. Refer to page 4 of the LDOE monitoring report for Benjamin Franklin Charter High School in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that ten of ten student files (100% of the sample) were judged to reflect <u>compliance</u> for all applicable Related Services provisions assessed. As such, there was no measure of student-specific or systemic noncompliance observed for Benjamin Franklin Charter High School under IDEA, Part B during the fall 2019 supplemental on-site targeted monitoring visit.

2.  <u>Corrective Actions to Address Identified Areas of Noncompliance</u>

Overall, systemic noncompliance was identified for three of five NOLA/OPSB charter schools reviewed during the fall 2019 supplemental targeted monitoring visits. As previously noted, Lake Forest Charter Elementary School, New Orleans Math and Science Charter High School and ReNew Accelerated Charter High School each demonstrated various levels of systemic and student-specific noncompliance for IDEA, Part B Related Service regulations. Therefore, based on the systemic and student-specific concerns observed, each of the abovementioned NOLA/OPSB charter schools required a formal Corrective Action Plan (CAP) to address all areas of noncompliance with IDEA Related Services provision mandates. Subsequently, as required by the CJ, the LDOE developed a CAP for addressing each area of identified systemic noncompliance or student-specific noncompliance listed in the LDOE 2019-2020 Monitoring Reports and the LDOE IDEA Monitoring Summaries for Lake Forest Elementary Charter School, New Orleans Math and

Science Charter High School and ReNew Accelerated Charter High School.

The CAPs developed for the abovementioned NOLA/OPSB charter schools included the following activities and corrective remedies for addressing all identified systemic and student-specific noncompliance for IDEA, Part B Related Service provisions:

- Correct all student specific citations identified in the Results Summary report. NOTE: This activity represents an individual corrective action plan for providing remedies for all student specific IDEA citations.

- Provide training to special education staff (e.g., special education teachers and related service providers) on writing compliant IEPs.

- Train staff on forms created by LDOE. Included in this training will be how to correctly use the: IEP evaluation rubric, IEP goal and PLAFF templates, and IEP Checklist. Special education staff will be required to use the rubric and IEP checklist when reviewing and writing IEPs.

- Provide training to related service providers on how to properly document provision of services to students. The training will include filling out services log, documenting student progress on logs and documenting delivery of services. The school will use the components of a service log provided by LDOE to document provision of related services and the services log checklist provided by LDOE to document log reviews.

- LEA will provide ongoing training in the following areas: IEP writing (e.g., measurable goals and PLAAFP statements), provision and documentation of accommodations, documenting special education services, and progress monitoring of student data.

- The Special Education Coordinator or Lead Teacher will perform monthly consistency checks to ensure IEP fidelity by internally monitoring all IEPs before the IEP is

submitted to SER to make it official with a focus on monitoring goals/objectives, PLAFF statements and other IEP components using the IEP Evaluation rubric and IEP checklist.

- The SPED Coordinator or Lead Teacher will perform monthly consistency checks to ensure related service provider logs are completed with fidelity. Related service provider logs will be internally monitored for provision of services per the time/frequency specified on the student's IEP. School will use checklist provided by LDOE to document reviews.

- Staff will view the IEP Training Modules on the LDOE website provided by the Human Development Center – LSUHSC group with a particular focus on Module 2 (Data Driven Present Levels of Performance) and Module 3 (Measurable Goals). Staff will sign a form verifying they have viewed the training.

  http://www.louisianabelieves.com/resources/library/academics

- Provide compensatory education to students whose files did not include documentation verifying they received related services. These students did not have evidence of service provider logs and/or had incomplete service provider logs in their files.

A copy of the CAPs developed for addressing student-specific and systemic noncompliance identified for Lake Forest Elementary Charter School, NOLA Math and Science Charter High School and ReNew Accelerated Charter High are available in the Appendix for review by the parties. The IMs review of the CAPs developed for these NOLA/OPSB charter schools indicated that the document includes corrective actions that are consistent with requirements outlined on page 2 of *Bulletin 1922 (Louisiana Administrative Code March 2017 Part XCI. Compliance Monitoring Procedures)* and in section IV(C)(5) on pages 8-9 of the CJ and sufficiently addresses all findings of student-

specific and systemic noncompliance observed during the fall 2019 on-site supplemental targeted monitoring visit.

## C. DISCIPLINE

There were no NOLA/OPSB charter schools identified as being selected in error during the process of previous school selections. As such, no supplemental monitoring was required to assess IDEA Discipline provisions.

## D. ENROLLMENT

1. Targeted Monitoring Activities for the Enrollment Stability Provisions

Two NOLA/OPSB charter schools were selected for supplemental targeted monitoring during the fall 2019 school term based on a follow-up analysis of 2017-2018 enrollment rates for NOLA/OPSB charter schools. The IMs reviewed the documentation and calculations performed by LDOE monitoring personnel and confirmed that the schools were selected for supplemental targeted monitoring in a manner consistent with the requirements outlined on page 14-15 of the CJ and page 6 of Addendum A of the CJ. The schools selected for supplemental targeted monitoring during the fall 2019 school term semester included Einstein Charter School at Village de' L'Est and Dr. Martin Luther King Charter School for Science and Technology. A review of findings for each charter school is presented below.

*a. Einstein Charter School at Village de' L'Est*

The on-site targeted monitoring visit for Einstein Charter School at Village de' L'est occurred on September 25, 2019. One LDOE representative and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were

conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the interview process are reported on page 3 of the LDOE monitoring report. It is important to note that Einstein Charter School at Village D' L'Est was without a special education leader due to a recent resignation. Although school staff members were able to discuss IDEA mandates and procedures for Related Service provisions in general terms, school personnel provided limited explanations related to the procedures and policies routinely implemented in the building to ensure proper service provision (i.e. determining a student's need for related services, procedures for ensuring related services are provided to students upon enrollment, and processes for identifying related service personnel when a provider may not be available, etc.).  A summary of staff responses is presented on page 3 of the LDOE monitoring report located in the Appendix.

A representative sample of nine student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) on and B(2)(b) on page 3 of Addendum A of the CJ. It should be reported here that one student selected for review had recently relocated to another LEA and was not reviewed. The sample of students reviewed included the students with the following exceptionalities under the IDEA: Intellectual Disability (two students), Autism (three students), Developmentally Delayed (one student), Other Health Impaired (two students) and Emotional Disability (one student). Related Service provisions included Adaptive PE (two students), Language/Speech Therapy (eight students), Occupational Therapy (one student) and Social Work Services (four students).

Student file reviews were conducted by LDOE monitoring personnel and IMs in a

31

manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for Einstein Charter School at Village D' L'Est n the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students.

A review of student records revealed that six of nine student files reviewed (67% of the sample) were judged to reflect some measure of systemic and/or student-specific noncompliance for IDEA Related Services provisions assessed.  Specifically, the following systemic Related Services violations under IDEA, Part B were observed for Einstein Charter School at Village D' L'Est during the fall 2019 supplemental monitoring visit:

- *§300.17(a.-d.) Free Appropriate Public Education (FAPE):* Free appropriate public education or FAPE means special education and related services that:

   (a) Are provided at public expense, under public supervision and direction, and without charge,

   (b) Meet the standards of the SEA, including the requirements of this part,

   (c) Include an appropriate preschool, elementary school, or secondary school education in the State involved, and

   (d) Are provided in conformity with an individualized education program (IEP) that meets the requirements of §Sec. 300.320 through §300.324.

- *§300.320(a)(1)(i)(2)(i)- Definition of an Individualized Education Program:* IEP must include a statement of the child's present levels of academic achievement and functional performance, including how the student's disability affects involvement and progress in the general education curriculum.

32

- *§300.320.(a)(2) and 300.160(5a)(b2ii)(c-9)-Individualized Education Program:* A statement measurable annual goals, including academic and functional goals designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and meet each of the child's other educational needs that result from the child's disability.

- *§300.320(a)(4) and (7). Definition of an Individualized Education Program* IEP include data for beginning of services, modifications, and anticipated frequency, location, and duration of services and modifications.

Specific IDEA, Part B systemic violations for Related Services provisions are also reported on pages 4-5 of the LDOE monitoring report for Einstein Charter School at Village D' L'Est and pages 1-3 of the 2019-2020 IDEA monitoring results summary for this charter school located in the Appendix. In relation, student-specific findings of noncompliance are listed on pages 4-7 of the 2019-2020 IDEA monitoring results summary for Einstein Charter School at Village D' L'Est.

   *b. Martin Luther King Charter School for Science and Technology*

The on-site targeted monitoring visit for Martin Luther King Charter School for Science and Technology occurred on September 27, 2019. One LDOE representatives and one IM were present during the entire on-site visit to conduct staff interviews and review student files. The staff interviews were conducted using a standard bank of questions with staff members consistent with requirements outlined in sections B(4)(a) and B(4)(b) on pages 3-4 of Addendum A of the CJ. The specific staff members who participated in the

33

interview process are reported on page 3 of the LDOE monitoring report. Faculty and staff participating in the on-site interview demonstrated a general working knowledge of IDEA Related Services provision mandates. However, staff responses during the interview process did reveal potential concerns with regard to the procedures routinely followed by staff for determining the specific related service needs of students. A summary of staff responses is presented on page 3 of the LDOE monitoring report located in the Appendix.

A representative sample of ten student files were reviewed by the LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(2)(a) and B(2)b on page 3 of Addendum A of the CJ. The sample of students reviewed included the following exceptionalities under the IDEA: Other Health Impaired (three students), Visually Impaired (one student), Intellectual Disability (four students) and Emotional Disability (two students). Related Service provisions reviewed included Language/Speech Therapy Services (three students), Social Work Services (three students), Orientation/Mobility Services (one student) and Counseling Services (four students).

Targeted file reviews were conducted by LDOE monitoring personnel and IMs in a manner consistent with the requirements outlined in section B(3)(a) on page 3 of Addendum A and section D(2)(a-c) on page 6 of Addendum A of the CJ using the required Related Service protocol. Please refer to page 4 of the LDOE monitoring report for the Martin Luther King Charter School for Science and Technology in the Appendix for a list of items that were reviewed to complete the Related Service protocol for the sample of students selected for monitoring.

A review of student records revealed that nine of ten student files reviewed (90% of the sample) were judged to reflect some measure of systemic and/or student-specific

34

noncompliance for IDEA Related Services provisions assessed.  Specifically, the following systemic Related Services violations under IDEA, Part B were observed for Dr. Martin Luther King Charter School for Science and Technology during the fall 2019 supplemental monitoring visit:

- *§300.17(a.-d.) Free Appropriate Public Education (FAPE):* Free appropriate public education or FAPE means special education and related services that:

   (a) Are provided at public expense, under public supervision and direction, and without charge,

   (b) Meet the standards of the SEA, including the requirements of this part,

   (c) Include an appropriate preschool, elementary school, or secondary school education in the State involved, and

   (d) Are provided in conformity with an individualized education program (IEP) that meets the requirements of §Sec. 300.320 through §300.324.

- *§300.320(a)(1)(i)(2)(i)- Definition of an Individualized Education Program:* IEP must include a statement of the child's present levels of academic achievement and functional performance, including how the student's disability affects involvement and progress in the general education curriculum.

- *§300.320.(a)(2) and 300.160(5a)(b2ii)(c-9)-Individualized Education Program:* A statement measurable annual goals, including academic and functional goals designed to meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and meet each of the child's other educational needs that result from the child's disability.

- *§300.320(a)(4) and (7). Definition of an Individualized Education Program*

35

IEP include data for beginning of services, modifications, and anticipated frequency, location, and duration of services and modifications.

Specific IDEA, Part B systemic violations for Related Services provisions are also reported on pages 4-5 of the LDOE monitoring report for Dr. Martin Luther King Charter School for Science and Technology and pages 1-3 of the 2019-2020 IDEA monitoring results summary for this LEA located in the Appendix. In relation, student-specific findings of noncompliance are listed on pages 4-8 of the 2019-2020 IDEA monitoring results summary for Dr. Martin Luther King Charter School for Science and Technology.

*2.* Corrective Actions to Address Identified Areas of Noncompliance

Systemic noncompliance was identified for each of the NOLA/OPSB charter schools (i.e., Einstein Charter School at Village D' L'Est and Dr. Martin Luther King Charter School for Science and Technology) selected for the fall 2019 supplemental targeted monitoring in the area of Enrollment. Consistent systemic IDEA violations were observed across both of these LEAs in relation to the (a) provision of FAPE, development of appropriate and meaningful description of students' present levels of academic and functional performance, development of meaningful and measurable annual goals and objectives and appropriately documenting that related services are provided with the types and frequency as specified in student IEP's.

Given the identified systemic and student-specific findings of noncompliance under the IDEA, Part B, the abovementioned NOLA/OPSB charter schools required a formal CAP to address identified concerns both systemic and student-specific findings of

36

noncompliance for IDEA Related Service provisions. Therefore, as required by the CJ, the LDOE developed a CAP to address each area of identified systemic or student-specific noncompliance listed in the 2019-2020 LDOE monitoring reports and 2019-2020 monitoring summaries for Einstein Charter School at Village D' L'Est and Dr. Martin Luther King Charter School for Science and Technology.

Specifically, the CAP developed for these NOLA/OPSB charter schools contain the following activities and corrective remedies for addressing identified concerns in the area of Related Service provisions:

- Correct all student specific citations identified in the Results Summary report.

- Provide training to special education staff (e.g., special education teachers and related service providers) on writing compliant IEPs.

- Train staff on forms created by LDOE. Included in this training will be how to correctly use the: IEP evaluation rubric, IEP goal and PLAFF templates, and IEP Checklist. Special education staff will be required to use the rubric and IEP checklist when reviewing and writing IEPs.

- Provide training to related service providers on how to properly document provision of services to students. The training will include; filling out services log, documenting student progress on logs and documenting delivery of services. The school will use the components of a service log provided by LDOE to document provision of related services and the services log checklist provided by LDOE to document log reviews.

- LEA will provide ongoing training in the following areas: IEP writing (e.g., measurable goals and PLAAFP statements), provision and documentation of accommodations, documenting special education services, progress monitoring of student data.

37

- The Special Education Coordinator or Lead Teacher will perform monthly consistency checks to ensure IEP fidelity by internally monitoring all IEPs before the IEP is submitted to SER to make it official with a focus on monitoring goals/objectives, PLAFF statements and other IEP components using the IEP Evaluation rubric and IEP checklist.

- The SPED Coordinator or Lead Teacher will perform monthly consistency checks to ensure related service provider logs are completed with fidelity. Related service provider logs will be internally monitored for provision of services per the time/frequency specified on the student's IEP. School will use checklist provided by LDOE to document reviews.

- Staff will view the IEP Training Modules on the LDOE website provided by the Human Development Center – LSUHSC group with a particular focus on Module 2 (Data Driven Present Levels of Performance) and Module 3 (Measurable Goals). Staff will sign a form verifying they have viewed the training.

  http://www.louisianabelieves.com/resources/library/academics.

- Provide compensatory education to students whose files did not include documentation verifying they received related services. These students did not have evidence of service provider logs and/or had incomplete service provider logs in their files.

A copy of the CAPs developed for addressing all areas of observed systemic and student–specific noncompliance for Related Service provisions for Einstein Charter School at Village D' L'Est and Dr. Martin Luther King Charter School for Science and Technology are available in the Appendix for review by the parties. A review of the CAPs by the IMs revealed that the documents include corrective actions consistent with requirements outlined on page 2 of *Bulletin 1922 (Louisiana Administrative Code March 2017 Part XCI.*

*Compliance Monitoring Procedures)* and in section IV(C)(7) on page 14 of the CJ and sufficiently address all findings of student-specific and systemic noncompliance observed during the fall 2019 supplemental targeted monitoring reviews.

**RECOMMENDATIONS**

As noted in previous IM status updates, a relatively consistent pattern of systemic noncompliance has been observed for NOLA/OPSB charter schools undergoing initial, on-site targeted monitoring. More specifically, 12 of 12 (100%) of the schools identified for initial targeted monitoring during the spring 2016 and fall 2016 school terms required corrective action (CAPs) to address findings of systemic IDEA noncompliance. Similarly, 10 of 12 (83%) of the charter schools identified for initial targeted monitoring during the fall 2017 school term also required formal corrective actions (CAPs) to address findings of systemic IDEA noncompliance. In contrast, 4 of 12 (33%) NOLA/OPSB charter schools participating in the fall 2018 initial targeted monitoring cycle demonstrated issues of systemic IDEA noncompliance. Although still somewhat concerning, when comparing the percentage of charter schools demonstrating systemic levels of IDEA noncompliance during the spring 2016 to fall 2017 targeted monitoring cycles (i.e. 100%, 100% and 83% of charter schools, respectively) to the percentage of charter schools demonstrating systemic IDEA noncompliance during the fall 2018 monitoring cycle (33%), a promising decrease in trend was observed in relation to the percentage of NOLA/OPSB charter schools demonstrating systemic IDEA noncompliance upon an initial targeted monitoring review. However, as discussed in the current IM status report, some measure of systemic noncompliance for IDEA Child Find and Related Services provisions was observed for 6 of 10 (60%) NOLA/OPSB

charter schools participating in the fall 2019 supplemental monitoring reviews. In contrast to the promising findings observed for the fall 2018 monitoring cycle, these findings indicate a meaningful and concerning increase in the trend for the percentage of NOLA/OPSB Charter schools demonstrating systemic noncompliance upon an initial targeted monitoring review.

To address this relatively consistent pattern of systemic IDEA noncompliance among NOLA/OPSB charter schools, the OPSB should continue their proactive efforts and provide all Charter LEAs with ongoing training and technical assistant required for addressing ongoing compliance with IDEA mandates and regulations. In relation, the IMs also recommend that LDOE and OPSB school officials also conduct focused trainings targeted at improving the compliance rates for specific items on the targeted monitoring protocol that are consistently observed to reflect noncompliance (i.e., writing meaningful and measurable PLAAFP statements and annual/short term goals/objectives, accurately documenting service provisions, properly conducting/documenting SBLC meetings, etc.).

Additionally, LDOE monitoring personnel should continue to provide relevant, ongoing technical assistance and professional development to ensure that NOLA/OPSB charter schools successfully engage and implement all CAP activities with adequate levels of fidelity to correct the identified areas of systemic and student-specific noncompliance.